**UNITED STATES DISTRICT COURT**
Northern District of Illinois – Eastern Division
Case Number: 1:08-cv-00179
Honorable Virginia M. Kendall

OPTIONSXPRESS, INC.,

    Petitioner,

v.

LINDA HALE,

    Respondent.
_____/

**RESPONDENT'S BRIEF IN SUPPORT OF HER MOTION TO TRANSFER**

Respondent Linda Hale ("Ms. Hale") hereby submits her Brief In Support of Her Motion to Transfer Petitioner's Amended Application to Vacate to the Southern District of Florida.

**INTRODUCTION**

On September 12, 2007, Petitioner filed its <u>initial</u> application to vacate the arbitration award at issue ("Ms. Hale's Award") in Illinois state court. Pursuant to Illinois Supreme Court Rule 102, Petitioner was required to "promptly place" for service its initial application to vacate Ms. Hale's Award. Illinois Supreme Court Rule 102 further required that Petitioner's serve its initial application to vacate within thirty (30) days of filing it. It is undisputed that Petitioner **<u>never</u>** served its initial application to vacate.

Petitioner never served its initial application to vacate as it was required to do by Illinois Supreme Court Rule 102 – despite undersigned counsel's offer to accept service and despite Petitioner's promise to FINRA Dispute Resolution that it would comply with Illinois Supreme Court Rule 102:

> "As a licensed member of the Illinois Bar, Mr. Solomon [undersigned counsel] should be aware of the Illinois Supreme

>Court Rules as they apply to service of summons, *and Hale will be served in due course pursuant to those rules."*

*See* Exhibit A to Ms. Hale's Response to Petitioner's Motion to Stay or Dismiss (emphasis added).[1]

Petitioner lied to FINRA. It is undisputed that Petitioner did not serve its initial application vacate within the 30-day deadline imposed by Illinois Supreme Court Rule 102 – or ever. Had Petitioner lived up to its promise to timely serve its initial application to vacate *or* accepted undersigned counsel's immediate offer to accept service *or* complied with Illinois Supreme Court Rule 102 -- this dispute would have already been decided in the one Federal forum where the final disposition of Ms. Hale's Award was to be made.

Exactly as she did with respect to Petitioner's Amended Application to Vacate Ms. Hale's Award, Ms. Hale would have removed to the Northern District of Illinois the initial application to vacate and immediately moved to transfer it to the Southern District of Florida. Whatever the ruling on the motion to transfer, Ms. Hale would have not have filed her Application to Confirm until she responded to the initial application to vacate in the *one* Federal forum where it would have been pending.

In short, the *only* reason that two Federal Courts are involved in this dispute is because Petitioner inexcusably failed to serve its initial application to vacate. As such, Petitioner should not be allowed to have its choice of which Federal forum will make a final disposition on Ms. Hale's Award.

Petitioner's inexcusable failure to ever serve its initial application to vacate was not its first attempt to delay payment of Ms. Hale's Award or a final disposition thereon. Like its Amended Application to Vacate, Petitioner should never have filed its initial application to vacate in the first place. Any reasonable attorney could not have objectively believed that it

---

[1] Ms. Hale's Response to Petitioner's Motion to Stay or Dismiss is attached hereto as Exhibit 1.

would be granted. Put another way, the Amended Application to Vacate is frivolous -- falling woefully short of meeting any of the few and strict legally-recognized standards to vacate an arbitration award.

The *only* case cited by Petitioner in its Amended Application to Vacate -- to support what Petitioner characterizes as "the standard applied to an Application to vacate an arbitration award" -- states that "[w]henever possible a court must construe an award so as to uphold its validity and *gross errors of judgment in law or a gross mistake of fact* **will not** *serve to vitiate an award* unless those errors appear on the face of the award." *Garver v. Ferguson,* 76 Ill.2d 1, 10-11 (Ill. 1979) (emphasis added).[2] A copy of this opinion is attached as Exhibit D to Exhibit 1.

Based on *Garver*, the sole basis argued by Petitioner in its Amended Application to Vacate is that "*it is apparent on the face of the award* that the Arbitration Panel made a gross error of judgment in law and/or gross mistake of fact". Petitioner's argument is nonsensical.

It is undisputed that Ms. Hale's Award *contains no rationale or opinion* as to why the arbitrators decided to hold Petitioner liable for the damages it caused Ms. Hale. As such, it is impossible that any alleged errors can be "apparent" from "the face of" Ms. Hale's Award. Therefore, pursuant to Petitioner's *own case*, even if the arbitrators made gross errors of law or

---

[2] Based on this rationale, the court did not vacate the arbitration award at issue because a "long line of cases has established that an arbitrator's award will not be set aside because of errors in judgment, or mistakes of law or fact". *Id.* at 7, 10-11. As support for its conclusion to uphold the award at issue, the court quoted a 157 year-old case which stated: the "fact that arbitrators have made an erroneous decision will not vitiate their award. If they have acted in good faith, the award is conclusive upon the parties; neither party is permitted to avoid it, by showing the arbitrators erred in their judgment, either respecting the law or the facts of the case." *Id.* at 7-8.

It is clear from reading *Garver* that the "apparent on the face of the award" language was meant to address the fact that the arbitration loser there moved to *modify* the award in addition to vacating it. *Id.* at 4 (emphasis added). In addition to this critical fact, the opinion contains the following quote from another case: "Nor will a mistake of law or fact by the arbitrators be grounds for setting aside the award, *but a mistake in the draft of the award may be reformed so as to conform to the award actually made by the arbitrators.*" *Id.* at 8 (emphasis added). This language clearly refers to "modification" of an arbitration award, and has nothing to do with vacatur of an arbitration award.

3

fact (they did not) in finding Petitioner liable for the damages it caused Ms. Hale, Ms. Hale's Award should be confirmed and the Amended Application to Vacate should be denied because such purported errors do not appear "on the face of" the Award.

By filing a patently frivolous application to vacate in the first place, and then never serving it -- despite its promise (and duty) to comply with Illinois Supreme Rule 102 -- Petitioner has accomplished its obvious purpose: to delay payment of, and a final disposition on, Ms. Hale's Award. Petitioner's delay tactics are contrary to the goals of arbitration and are "compelling circumstances" which should prevent Petitioner from having its choice of Federal forum. As such, Ms. Hale's Motion to Transfer should be granted (again).

**A.  Petitioner's Action to Vacate Ms. Hale's Award Did Not "Commence" On September 12, 2007 – And Petitioner's Actions Shows That It Knows It.**

Petitioner states that this action "commenced" on September 12, 2007 when it filed its initial application to vacate. Petitioner knows this false. Indeed, Petitioner's actions speak much louder than its self-serving words.

If Petitioner truly believed that its action to vacate Ms. Hale's Award "commenced" on September 12, 2007, why did Petitioner use a process server to serve its Amended Application to Vacate on December 14, 2007? Of course, there is no legitimate answer to this question. If the Illinois Action "commenced" when Petitioner filed its initial application to vacate, Petitioner would have served the Amended Application to Vacate via U.S. Mail or other acceptable means used after an action has "commenced" – and not incurred the expense and uncertainty of using a process server.

In light of the undisputed fact that Petitioner used a process server to serve its Amended Application to Vacate, stating that this action "commenced" on September 12, 2007 is Petitioner's attempt to mislead the Court.

4

B.   **Ms. Hale Was Not Required To Wait Indefinitely To Be Served.**

In its latest pleading with this Court, like with several of its pleadings in the Southern District of Florida, Petitioner makes much of the fact that undersigned counsel is an Illinois lawyer and therefore should have known how to retrieve, from the internet, docket information from the Illinois state court system. As he has been since first trying to understand Petitioner's puzzling argument, undersigned counsel is still perplexed what Petitioner is suggesting.

Petitioner is apparently suggesting that undersigned counsel could have confirmed his assumption that the initial application to vacate was filed in Illinois state court, and therefore Ms. Hale should have waited indefinitely until Petitioner got around to serving – despite Illinois Supreme Court Rule 102 which required Petitioner to serve it within 30 days of filing. If Petitioner's theory was correct, then an arbitration loser could postpone payment of an arbitration award *forever* by never serving an application to vacate that it purportedly filed.

To avoid such an unfair result and to further the purpose of arbitration, the Federal Arbitration Act (the "FAA") requires an arbitration loser to "serve" – not file – an application to vacate within the three (3) months of receiving an arbitration award. Petitioner concedes this. It undisputed that Petitioner did not serve any application to vacate until December 14, 2007 -- more than four (4) months after it received the Award. As such, to avoid the devastating effect of the FAA's statute of limitations for service, Petitioner argues the FAA does not apply to this dispute. Petitioner is wrong. And Petitioner knows it, as it has been repeatedly advised of binding caselaw that holds that the FAA applies to this dispute.

C.   **The FAA Applies To ALL Arbitrations Involving Interstate Commerce – And Petitioner Knows It.**

The FAA applies to all arbitrations that "involve interstate commerce." *See e.g.* FAA § 2. Common sense dictates that interstate commerce was involved in the parties' dispute. The

5

sole issue in the underlying arbitration related to the propriety of buying options contracts by a Florida investor through an Illinois broker-dealer on "national" securities exchanges that provide a marketplace for buyers and sellers of options from every state in the United States. Indeed, it is difficult to imagine a dispute that involves "interstate commerce" more than this one.

Binding case law confirms this obvious truism. The Northern District of Illinois has stated that "[i]t is axiomatic that the purchase and sale of securities relates to interstate commerce." *Prudential Securities Inc. v. Hornsby*, 865 F. Supp. 447, 449-50 (N.D. Ill. 1994) (holding that federal arbitration law governs where an arbitration "arises from a securities brokerage account"); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (applying the FAA to arbitration conducted pursuant to brokerage account).

The Seventh Circuit has held that the FAA applies even if an arbitration clause has a choice of law provision that specifies state law, as is the case here. "[*N*]*otwithstanding the parties' choice of law provision in their contract calling for the application of Illinois law*, and irrespective of the fact that this a diversity case, *federal arbitration law governs … a transaction involving interstate commerce*." *See Northern Illinois Gas Co. v. Airco*, 676 F.2d 270 (7th Cir. 1982) (emphasis added).

Furthermore, the United States Supreme Court has held that the FAA also applies even if the Amended Application to Vacate were to be decided in state court. The FAA "creates a body of federal law … that is applicable in state and federal courts." *See Southland Corp. v. Keating*, 465 U.S. 1, 14-16 (1984) *quoting Moses H. Cone v. Mercury Construction*, 460 U.S. 1 (1983); *see also Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994) ("the FAA governs judicial review of arbitration proceedings notwithstanding any choice of law provision or state law to the contrary") *quoting* WRIGHT AND COOPER, FEDERAL PRACTICE AND

PROCEDURE, § 3569 (2d Ed. 1984) ("even in a diversity suit or an action in state court if … interstate commerce is involved, the rules in the [FAA], based as it is on the commerce powers, are to be applied regardless of state law").  Certainly, if the FAA would apply in state court it would apply in Federal Court.

Petitioner has been repeatedly provided by undersigned counsel with the citations to the case law discussed above and Petitioner is therefore aware that the Northern District of Illinois, the Seventh Circuit and the United States Supreme Court require the FAA to apply to this dispute This binding case law directly contradicts Petitioner's statements to this Court -- *with no citation to any authority* -- that the Illinois Arbitration Act applies to the final disposition of Ms. Hale's Award, irrespective of the fact that there is a choice of law provision.  Petitioner's blatant misstatements and omissions of the law are an attempt to mislead this Court.

**D.**     **Ms. Hale Was Forced By Petitioner To Wait To File Her Application to Confirm.**

Ms. Hale filed her Application to Confirm her Award on November 16, 2007 – just a few days after the expiration of the FAA's three-month statute of limitations for service.  At that time she filed her Application to Confirm, Petitioner had never served Ms. Hale with any application to vacate.  Further, Petitioner never gave Ms. Hale or undersigned counsel any indication that it would ever serve the initial – or any other -- application to vacate.

Indeed, Petitioner's actions and inactions led Ms. Hale to believe just the opposite:  that Petitioner would *never* serve her with the initial or any application to vacate her Award.  Instead of waiting forever, Ms. Hale took matters into her own hands and filed her Application to Confirm almost immediately after she was legally allowed to do so.

Petitioner attempts to assign an evil motive to the fact that Ms. Hale filed her Application to Confirm approximately two months after Petitioner filed its initial application to vacate.  The

truth is that Petitioner *forced* Ms. Hale to wait because it never served its initial application to vacate. In any event, the only two applications that have been served and are pending are Ms. Hale's Application to Confirm and Petitioner's Amended Application to Vacate.[3]

Petitioner filed its Amended Application to Vacate on November 27, 2007 in Illinois state court. It is undisputed that Ms. Hale filed her Application to Confirm eleven (11) days prior to Petitioner filing its Amended Application to Vacate. Put another way, Ms. Hale's Application to Confirm was "first-filed."

Even if Ms. Hale desired to litigate this dispute in Illinois state court, she could not have filed an application to confirm (or a response to the initial application to vacate) until she was actually served with the initial application to vacate – which Petitioner never did. To the extent that she desired to exercise her right to litigate the final disposition of her Award in Federal Court, Ms. Hale could not have removed to Federal court the Amended Application to Vacate until she was served with it – on December 14, 2007– and therefore could not have filed her Application to Confirm in Federal court until after that date. In addition, if Ms. Hale filed her Application to Confirm prior to the expiration of the FAA's three-month statute of limitations to serve a motion to vacate, both Federal Courts would have denied it as untimely.

In sum, despite Petitioner's arguments to the contrary, Ms. Hale could not have filed her Application to Confirm sooner than she did. The only reason that Ms. Hale supposedly "waited" is because she was *forced* to wait by Petitioner because it refused to accept the offer to service and because Petitioner failed to comply with Illinois Supreme Court Rule 102 by never serving

---

[3] Petitioner attempts to mislead the Court when it argues that Ms. Hale could have served her Application to Confirm sooner than she did. The truth is that Ms. Hale attempted to serve this pleading immediately upon filing it. In contrast to Petitioner's failure to ever place for service its initial pleading, Ms. Hale "promptly placed" for service her Application to Confirm. Indeed, the *same day* she filed her Application to Confirm -- November 16, 2007 -- Ms. Hale placed it for service with the U.S. Marshal. *See* Exhibit 2. Pursuant to Section 9 of the FAA, Ms. Hale was required to use the U.S. Marshal for service rather than a private process server.

8

its initial application to vacate.

### E. Petitioner's Argument That It Would Be More Inconvenient For Petitioner To Litigate in Florida Than For Ms. Hale To Litigate in Illinois Is Absurd.

According to it SEC's filings, Petitioner's *net* income in 2006 was more than $71,000,000. It is cannot be legitimately disputed that the "relative" inconvenience to Ms. Hale is far greater than for Petitioner, to extent that either is required to litigate this dispute 1,300 miles from their homes.

Petitioner has argued that if this dispute remains in Illinois it will be actually less costly to Ms. Hale because undersigned counsel could always appear telephonically and, therefore, because he will not be required to drive to the courthouse, his fees will be less. Evidently, Petitioner's counsel charges its client for travel time. Undersigned counsel does not. In any event, Petitioner's argument ignores that undersigned counsel may be required by the Court to appear in-person which would force Ms. Hale to pay his travel expenses. Petitioner also ignores that whether or not Ms. Hale or her attorney are required to appear in court, they may desire to. Both Ms. Hale and her counsel believe that to extent hearings (on motions or otherwise) are required it would be unfair to not at least have the option to appear in person.

In addition, Ms. Hale may desire to testify in person regarding how Petitioner's delay tactics have caused her emotional distress which has affected her health when she seeks sanctions over-and-above the significant attorney's fees that she has incurred for no other reason than Petitioner's filing of a frivolous application to vacate in the first place – and Petitioner's inexcusable delay tactics in serving it.[4] Petitioner has been previously informed of the possibility that Ms. Hale may desire to appear in-person. As such, Petitioner's statement to this

---

[4] Petitioner is under the impression that since undersigned counsel took the arbitration on a contingency fee basis that Ms. Hale is not required to pay for the substantial amount of time he has been unnecessarily forced to expend by Petitioner to defend and collect Ms. Hale's Award. Of course, Petitioner is wrong.

9

Court that no in-person appearances are possible is misleading.

**F.    The Factors To Be Considered By This Court To Decide Ms. Hale's Motion to Transfer Are Identical To Those That Have Been Fully Briefed With Respect to Petitioner's Motion to Stay or Dismiss Confirm Pending In the Southern District of Florida.**

On January 22, 2008, Petitioner filed in the Southern District of Florida its Motion to Stay or Dismiss Ms. Hale's Application to Confirm Arbitration Award. Ms. Hale's Application to Confirm Arbitration Award has been pending before the Honorable Kenneth Ryskamp of the West Palm Beach Division of the Southern District of Florida since November 16, 2007.

Like Ms. Hale's Motion to Transfer Petitioner's Amended Application to Vacate recently granted by this Court, the *sole* issue in Petitioner's Motion to Stay or Dismiss Ms. Hale's Application to Confirm Arbitration Award is: whether the Southern District of Florida or the Northern District of Illinois should be the Federal Court to make a final disposition of the Ms. Hale's Award?[5]

Petitioner admits that the factors to be considered in deciding Ms. Hale's Motion to Transfer and Petitioner's Motion to Stay or Dismiss are the same. Indeed, Petitioner attached as an exhibit its Motion to Stay or Dismiss as support for its Motion to Reconsider This Court's Order. Not attached as in exhibit is Ms. Hale's Response thereto. Petitioner also attached as an exhibit its Reply to Ms. Hale's Response as support for its Motion to Reconsider This Court's Order.

Of these three pleadings, Ms. Hale's is only one which tells the full story of the tortured and long procedural history with respect to the final disposition of the Award. Such history is a critical factor in deciding which Federal Court should make a final disposition on Ms. Hale's Award.

---

[5] Jurisdiction and venue are proper in both Courts.

10

In her Response to Petitioner's Motion to Stay or Dismiss Ms. Hale's Application to Confirm her Award, Ms. Hale has previously addressed all of Petitioner's arguments regarding which Federal Court should make the final disposition on the Award. As such, Ms. Hale hereby incorporates by reference her Response to Petitioner's Motion to Stay or Dismiss Ms. Hale's Application to Confirm her Award as support for her Motion to Transfer. *See* Exhibit 1 (with exhibits A-G) at pp. 10-22.

As stated therein, the reason that the Petitioner's Motion to Stay or Dismiss should be denied and Ms. Hale's Motion to Transfer should be granted are: 1) Ms. Hale's Application to Confirm was "commenced" prior to Petitioner's Amended Application to Vacate; and 2) even if Petitioner's initial application to vacate is considered "first-filed" (despite the undisputed fact that is was never served and the undisputed fact that Petitioner used a process server to serve its Amended Application to Vacate), the "compelling circumstances" exception to the first-filed rule allows the Court to exercise its broad discretion to retain jurisdiction to make a final disposition on Ms. Hale's Award.

As discussed herein and in Ms. Hale's Response to Petitioner's Motion to Stay or Dismiss, the compelling circumstances are: 1) by never serving its initial application to vacate, Petitioner is the *sole* reason that this dispute is pending in two different Federal forums and, therefore Petitioner should not be allowed to litigate this dispute in its preferred Federal forum; 2) Petitioner's filing of a blatantly frivolous application to vacate, and its inexcusable delay in serving it, was Petitioner's purposeful attempt to delay payment of, and a final disposition on, Ms. Hale's Award, and Petitioner should therefore not be allowed to have any say in which Federal Court will make a final disposition on Ms. Hale's Award; and 3) given the huge disparity

11

in the parties' financial wherewithal it would be unjust to force Ms. Hale to litigate this dispute more than 1,300 miles from her home.

## **CONCLUSION**

For the reasons set forth herein and in Ms. Hale's Response to Petitioner's Motion to Stay or Dismiss Ms. Hale's Application to Confirm her Award, the Court should: 1) re-grant Ms. Hale's Motion to Transfer; 2) Order the Clerk of the Northern District of Illinois to transfer Petitioner's Amended Application to Vacate to the Honorable Kenneth Ryskamp, rather than the Southern District of Florida generally; and 3) state in its Order that the Federal Arbitration Act applies to the final disposition of Ms. Hale's Award rather than Illinois law or, in the alternative, make no reference to which law applies.

Respectfully submitted,

NEIL B. SOLOMON, P.A.

By: /s/ Neil B. Solomon
    Neil B. Solomon -- IL Bar No.: 6243930
    4174 St. Lukes Lane
    Jupiter, FL 33458
    Tel: 561-762-4991
    Fax: 561-626-2721
    Email: neilbsolomonesq@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via transmission of Notice of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, this 29th day of February 2008 to:

Jeffry M. Henderson, Esq.
Robert Christie, Esq.
Henderson & Lyman
175 West Jackson, Suite 240
Chicago, IL 60604
Phone:  312-986-6960
Fax:  312-986-6961
Email:  rchristie@henderson-lyman.com
        jhenderson@henderson-lyman.com

/s/ Neil B Solomon
Neil B. Solomon