# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case Number No. 07-81085-CIV-RYSKAMP/Vitunac

LINDA HALE,

      Petitioner,

v.

OPTIONSXPRESS, INC.,

      Respondent.

_____/

## PETIITIONER'S RESPONSE TO RESPONDENT'S MOTION TO STAY OR DISMISS ACTION AND PETITIONER'S MOTION FOR SANCTIONS

      Petitioner, LINDA HALE ("Ms. Hale"), files this Response to Respondent's Motion to Stay or Dismiss Action (the "Motion"). For the reasons discussed below, Respondent's Motion should be denied; Respondent should be ordered to immediately comply with the Court's previous Order to respond to Ms. Hale's Application to Confirm Arbitration Award (the "Application to Confirm"); and Respondent should be sanctioned.

## INTRODUCTION

> *"As a licensed member of the Illinois Bar, Mr. Solomon [undersigned counsel] should be aware of the Illinois Supreme Court Rules as they apply to service of summons, and Hale will be served in due course pursuant to those rules."*

Respondent made its pledge to timely serve its initial application to vacate in compliance with Illinois Supreme Court Rules to FINRA Dispute Resolution and undersigned counsel in a letter to FINRA on September 25, 2007. *See* Exhibit A at p. 3 – section "C. Conclusion".[1]

_____

[1] In its Motion, Respondent refers to this letter as its September 28, 2007 letter. Respondent has recently confirmed that this was a typographical error and that the correct date is September 25, 2007. *See* Exhibit B. Respondent also states in this letter: "As to Hale's other objections, such as the alleged

Respondent lied. The *truth* is that Respondent <u>never</u> served its initial application to vacate -- timely, or otherwise -- despite its promise to do so <u>and</u> despite undersigned counsel's immediate offer to accept service thereof. [2] Prior to Respondent's lie and thereafter, undersigned counsel expended substantial time to prepare Ms. Hale's response to Respondent's initial application to vacate (and other pleadings) as he was, in fact, aware of the relevant Illinois Supreme Court Rule and therefore expected service of same within thirty days of filing of the initial application to vacate. [3]

In addition to lying to FINRA and undersigned counsel, Respondent has lied to this Court in a baseless and convoluted effort to excuse its failure to ever serve its initial application

---

failure of optionsXpress to serve either Mr. Solomon or her with a copy of its Application, optionsXpress will comply with the Illinois Supreme Court Rules as they apply to service of summons, and Hale will be served in due course pursuant to those rules." *Id.* at section "B".

[2] Until very recently, Ms. Hale and her counsel had never seen the initial application to vacate. Finally, on January 14, 2008 -- four (4) months after it was filed -- Respondent was gracious enough to forward a "courtesy" copy but only in response to Ms. Hale's repeated requests. *See* Exhibit C.

[3] As soon as he received Respondent's September 12, 2007 letter (which is discussed below) indicating that Respondent had filed its initial application to vacate, undersigned counsel searched the Northern District of Illinois and the Southern District of Florida on PACER, and determined that the initial application to vacate was not filed in Federal court. He therefore assumed that it was filed in Illinois state court and offered to accept service. As such, undersigned counsel assumed that Respondent would serve the initial application within thirty day of filing it pursuant to Illinois Supreme Court Rule 102. As stated previously, neither undersigned counsel nor Ms. Hale had never even seen the initial application to vacate until mid-January, 2008.

Because he expected the initial application to be timely served, undersigned counsel immediately: (1) began to research the applicable law regarding removal and prepare a draft notice of removal of the state court action, (2) began to research the applicable law and draft a motion to transfer to this Court Respondent's initial application to vacate, (3) reviewed the arbitration tapes, (4) reviewed the documentary evidence admitted at the arbitration, (5) researched the applicable law in the Northern District of Illinois, the Southern District of Florida, the Seventh Circuit and Eleventh Circuit (in the event that the motion to transfer was denied) regarding the statutory and non-statutory bases and standards to vacate an arbitration award, and (6) drafted a preliminary response to the initial application to vacate based on the aforementioned research (as soon as the initial application to vacate was served, undersigned counsel planned to immediately apply the "facts" therein to the law in the preliminary response and soon thereafter file a response to the initial application to vacate).

to vacate:

> In that [September 25, 2007 letter to FINRA], Hale's attorney was specifically advised of the caption and docket number for [Respondent's] Application to Vacate filed in the Circuit Court of Cook County, Illinois. As an attorney licensed to practice law in the State of Illinois, Hale's attorney knew, or should have known how to retrieve docket information regarding the state court action through the internet. *See* Motion at p. 9.

Contrary to Respondent's false assertion to this Court, the *truth* is undersigned counsel was <u>not</u> "specifically advised of the caption and docket number" for Respondent's initial application to vacate in Respondent's letter – or ever. The only "docket" information in that letter is the FINRA Dispute Resolution case number for the underlying arbitration. *See* Exhibit A (at "re" line). Based on its lie that the letter contained the caption and case number for its initial application to vacate, Respondent seems to be suggesting that undersigned counsel should have retrieved the initial application to vacate from the internet and then served his own client. As "an attorney licensed to practice law in the State of Illinois", undersigned counsel is certain that he was not required to do this.

In any event, it is undisputed that the only application to vacate that Respondent ever served was the one that supposedly "amended" its initial application to vacate arbitration award (the "Amended Application to Vacate"). Respondent filed it on November 27, 2007 in Illinois state court. This was eleven (11) days <u>after</u> Ms. Hale filed her Application to Confirm in this Court. Respondent served its Amended Application to Vacate on December 14, 2007 -- more than four (4) months after it received the Award in violation of the three (3) month service deadline imposed by the Federal Arbitration Act (the "FAA").[4]

---

[4] Once the Amended Application to Vacate was finally (and untimely) served, undersigned counsel resumed his efforts to defend and confirm the arbitration award at issue (the "Award") including, but not limited to: (1) finalizing and filing the notice of removal, (2) finalizing and filing the motion to transfer, (3) re-reviewing the arbitration tapes, (4) re-reviewing the evidence admitted at the arbitration, (5) further research of Northern District of Illinois, Southern District of Florida, Seventh Circuit, and

Had Respondent lived up to its promise to timely serve its initial application to vacate -- or accepted undersigned counsel's immediate offer to accept service -- this dispute would have already been decided in the *one* Federal forum that ended up with jurisdiction.  Exactly as she did with respect to the Amended Application to Vacate, Ms. Hale would have removed to the Northern District of Illinois the initial application to vacate and simultaneously moved to transfer it to this Court.  Whatever the ruling on the motion to transfer, Ms. Hale would have not have filed her Application to Confirm until she responded to the initial application to vacate in the *one* Federal forum where it was pending.  Of course, Ms. Hale would have filed her Application to Confirm in the same Federal court that was to decide whether to grant or deny Respondent's initial application to vacate.

The two bases to deny Respondent's Amended Application to Vacate are that it was not timely served under the FAA and that it falls woefully short of the few and strict legally-recognized bases to vacate an arbitration award.  The basis for Ms. Hale's Application to Confirm is that Respondent did not serve an application to vacate the Award within the FAA's three-month statute of limitations for service, and therefore does not address the "merits" of the Amended Application to Vacate.

Respondent argues in its Motion that this Court should stay its ruling on Ms. Hale's Application to Confirm because the Amended Application to Vacate is pending in the Northern District of Illinois and that court will be able to decide the "broader issue" of "whether grounds exist to vacate an arbitration award" – i.e., the merits of the Amended Application to Vacate.  It

---

Eleventh Circuit case law (in the event that the motion to transfer was denied), and (6) supplementing Ms. Hale's draft response to the Amended Application to Vacate by addressing the specific issues raised in the Amended Application to Vacate.  Despite the fact that he was confident that Ms. Hale's Application to Confirm would be granted based on the undisputed fact that it was served past the FAA's three-month statute of limitations for service, it was necessary to prepare a response to the Amended Application to Vacate in the event that Ms. Hale was required to respond to the "merits" thereof.

is unlikely, however, that either Federal Court will be required to determine whether grounds exist to vacate, as the Amended Application to Vacate should be denied -- and the Award confirmed -- for no other reason than the Amended Application to Vacate was not timely served pursuant to service deadline imposed by Section 12 of the FAA.

To the extent that either Federal Court needs to determine "whether grounds exist to vacate" the Award, this Court should be the one to do so. Respondent <u>alone</u> is to blame that two forums are involved in this dispute. Specifically, the sole reason that the final disposition of the Award is still pending -- and in two different forums -- is that Respondent never served its initial application to vacate -- despite its promise to do so and despite undersigned counsel's immediate offer to accept service of same. As such, Respondent should have absolutely no say regarding which Federal forum will make the final disposition regarding the Award.

Before addressing Respondent's Motion, it is important to understand that the Amended Application to Vacate should never have been filed in the first place. Any reasonable attorney could not have objectively believed that it would be granted. Put another way, the Amended Application to Vacate is frivolous -- falling woefully short of meeting any of the few strict legally-recognized standards to vacate an arbitration award.

The *only* case cited by Respondent in its Amended Application to Vacate -- to support what Respondent characterizes as "the standard applied to an Application to vacate an arbitration award" -- states that "[w]henever possible a court must construe an award so as to <u>uphold</u> its validity and *gross errors of judgment in law or a gross mistake of fact* **<u>will</u>** **<u>not</u>** *serve to vitiate an award* unless those errors appear on the face of the award." *Garver v. Ferguson,*

76 Ill.2d 1 at 10-11 (Ill. 1979) (emphasis added).[5]  A copy of this opinion is attached as Exhibit D.

Based on *Garver*, the <u>sole</u> basis argued by Respondent in its Amended Application to Vacate is that "*it is apparent on the face of the award* that the Arbitration Panel made a gross error of judgment in law and/or gross mistake of fact".  Unfortunately for Respondent, nothing is "apparent" from "the face of" the Award because the Award contains no rationale or opinion as to why the arbitrators decided to hold Respondent liable for the damages it caused Ms. Hale.  *See* Exhibit A of Ms. Hale's Application to Confirm.

Therefore, pursuant to Respondent's own "standard' to vacate an arbitration award, even if the arbitrators made gross errors of law or fact (they did not) in finding Respondent liable for the damages it caused Ms. Hale, the Award should be confirmed and the Amended Application to Vacate should be denied because such purported errors do not appear "on the face of" the Award.[6]

---

[5] Based on this rationale, the court did <u>not</u> vacate the arbitration award at issue because a "long line of cases has established that an arbitrator's award will not be set aside because of errors in judgment, or mistakes of law or fact".  *Id.* at 7, 10-11.  As support for its conclusion to uphold the award at issue, the court quoted a 157 year-old case which stated:  the "fact that arbitrators have made an erroneous decision will not vitiate their award.  If they have acted in good faith, the award is conclusive upon the parties; neither party is permitted to avoid it, by showing the arbitrators erred in their judgment, either respecting the law or the facts of the case."  *Id.* at 7-8.

It is clear from reading *Garver* that the "apparent on the face of the award" language was meant to address the fact that the arbitration loser there moved to *modify* the award in addition to vacating it.  *Id.* at 4 (emphasis added).  In addition to this critical fact, the opinion contains the following quote from another case:  "Nor will a mistake of law or fact by the arbitrators be grounds for setting aside the award, *but a mistake in the draft of the award may be reformed so as to conform to the award actually made by the arbitrators.*"  *Id.* at 8 (emphasis added).  This language clearly refers to "modification" of an arbitration award, and has nothing to do with vacatur of an arbitration award.

[6] Given that nothing appears on the face of the Award, pursuant to the one case that Respondent cites for its self-proclaimed "standard" to vacate an arbitration award, it is not necessary to address the purported arbitrator' "errors".  But even a quick review of the purported "errors" reveals that Respondent blatantly mischaracterizes the evidence at the arbitration and that the arbitrators did not make any errors.  Even worse, but not surprisingly, Respondent lies in its Amended Application to Vacate.

As such, Respondent's Amended Application to Vacate is frivolous on *its* face and therefore sanctionable. Respondent's inexcusable failure to ever serve its initial application to vacate and Respondent's untimely service of its frivolous Amended Application to Vacate further frustrates the goals of arbitration and is an additional basis for sanctions.

Now, Respondent continues its delay tactics by defying this Court's Order to respond to Ms. Hale's Application to Confirm, seeking to dismiss or stay it without responding to the merits thereof. Rather than comply with the Court's Order to respond to Ms. Hale's Application to Confirm, Respondent has added an unnecessary additional layer to what is supposed to be a simple and speedy summary proceeding.

Incredibly, Respondent argues that it would be more "inconvenient" for it to litigate in Florida that for Ms. Hale to litigate in Illinois. As discussed below, Respondent's position is, of course, ludicrous. Respondent also argues that it should prevail on it Motion because what Respondent refers to as the Illinois Action was "commenced" when it filed its initial application to vacate. If this were true, why did Respondent enlist a process server to serve its Amended Application to Vacate? Of course, there is no legitimate answer to this question. If Respondent truly believed that the Illinois Action "commenced" when it filed its initial application to

---

Respondent states that "[i]n light of the fact that the ***undisputed*** evidence confirmed, and the Panel had been informed, that there were virtually no losses, the Panel made a gross mistake of fact in awarding $175,000 in compensatory damages to Ms. Hale." Without including any evidence from the arbitration in its Amended Application to Vacate to support this false statement, Respondent evidently expects a reviewing court to believe that the evidence was "undisputed" that Ms. Hale had no damages. Of course, the *truth* is that Ms. Hale hotly disputed the amount of her damages throughout this case. Moreover, Ms. Hale proved her damages almost to the penny.

Undersigned counsel offered into evidence Respondent's own documents to support a large portion of Ms. Hale's damages. Additional evidence was adduced through testimony of Respondent's own witnesses. In his closing, undersigned counsel presented to the Panel an exhibit based on the evidence that broke down Ms. Hale's compensatory damages into several mutually-exclusive categories. The total was $246,546.18. One of these categories was amounted to $72,275.79. If this is subtracted from the total, the result is $174,270.39 – within 99.58% of the $175,000 rightfully awarded to Ms. Hale.

vacate, it would have served the Amended Application to Vacate via U.S. Mail or other acceptable means used after an action has "commenced" – and not incurred the expense and uncertainty of using a process server.

Respondent further argues that the Northern District of Illinois is the preferable forum because "in the Illinois Action the court will have to apply the Illinois Uniform Arbitration Act" and that "the Illinois forum may be more familiar with the application of that act than this Court." Respondent makes these arguments despite that fact that binding case law from Respondent's home forum holds that the FAA applies to this dispute because it involves "interstate commerce." These cases hold that the FAA applies even if there is a choice of law provision in the parties' arbitration agreement as is the case here. Indeed, according to the United States Supreme Court, the FAA would apply to this dispute even if it were to be decided in state court.

Finally, Respondent argues that this Court should stay its ruling on Ms. Hale's Application to Confirm because her filing of same was "reactive, if not vexatious." Respondent's audacity is shocking. The only reactive and vexatious -- and sanctionable -- circumstances here are Respondent's filing of a blatantly frivolous application to vacate and its improper delay tactics in serving it. At the time she filed her Application to Confirm, Respondent had not served any application to vacate. Rather than wait indefinitely to be served, Ms. Hale filed her Application to Confirm just a few days after the expiration of the three-month statute of limitations for service imposed by Section 12 of the FAA. At the time she filed her Application to Confirm, Ms. Hale did not know if Respondent would ever serve its initial application to vacate and was not on notice that Respondent was "amending" it. As such,

contrary to Respondent's specious claims, Ms. Hale's filing of her Application to Confirm was neither reactive nor vexatious. Rather, it was proactive.

In sum, it is undisputed that Respondent inexplicably and inexcusably <u>never</u> served its initial application to vacate – despite its: (a) promise to do so, (b) legal obligation to do so, and (c) undersigned counsel's immediate offer to accept service. Respondent's failure to ever serve its initial application to vacate is the only reason that two forums are involved in this dispute. Had Respondent accepted the immediate offer to accept service -- or lived up to its promise to serve its initial application to vacate to within the deadline imposed by the Illinois Supreme Court Rules -- there would have been only be *one* Federal forum involved in this dispute. Moreover, had Respondent accepted the immediate offer to accept service -- or lived up to its promise to serve its initial application to vacate within the deadline imposed by the Illinois Supreme Court Rules  -- that *one* Federal forum would likely have already made a final disposition regarding the Award.

Respondent's delay tactics lead to only one conclusion:  Respondent has purposely delayed a final disposition regarding the Award.  By employing these improper and sanctionable tactics, Respondent has already frustrated -- and continues to frustrate -- the goals of arbitration. *See e.g.*, *B.L. Harbert Int'l, LLC v. Hercules Steel*, 441 F.3d 905, 906 (11th Cir. 2006) (internal citations omitted) (stating that the goals of arbitration are "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation").  Accordingly, Respondent should not be rewarded for its antics by being allowed to litigate this dispute in its preferred Federal forum, and Respondent should be sanctioned.

I.   **MS. HALE'S ACTION TO CONFIRM "COMMENCED" BEFORE RESPONDENT'S ACTION TO VACATE "COMMENCED".**

Ms. Hale's Application to Confirm was filed on November 16, 2007. Respondent's Amended Application to Vacate was filed on November 27, 2007. In other words, Ms. Hale's Application to Confirm was first-filed. Respondent attempts to "relate back" its November 27, 2007 filing to its September 12, 2007 filing of the initial application to vacate to argue that it should prevail under the "first-filed" rule. The September 2007 filing date, however, is not relevant here because Respondent <u>never</u> served its initial application to vacate – despite its promise and legal obligation to do so and undersigned counsel's immediate offer to accept service.

Respondent argues that it should prevail because "the Illinois Action was *commenced* [before] the Florida Action." *See* Motion at p. 5 (emphasis added). By making this argument, Respondent admits that the "first-filed" rule is a misnomer under certain circumstances (such as those present here) and should be interpreted to mean that the "first-commenced" action should have priority. Respondent's own actions show that Ms. Hale's action to confirm "commenced" before Respondent's action to vacate commenced.

The undisputed fact that Respondent used a process server to serve the Amended Application to Vacate fully defeats its argument that the Illinois Action was commenced first. If Respondent truly believed that its efforts to vacate the Award "commenced" when it filed its initial application to vacate on September 12, 2007, then Respondent would have served the Amended Application to Vacate by mail, or other allowable means of service used after an action has "commenced".

Instead, Respondent incurred the expense of using a process server to serve the Amended Application to Vacate. By doing so, Respondent concedes that its action to vacate the

10

Award did not "commence" until November 27, 2007 at the earliest (assuming it immediately placed for service the Amended Application to Vacate) – eleven (11) days after Ms. Hale's Application to Confirm was commenced.

Rule 102(a) of the Illinois Supreme Court Rules of Civil Proceedings states that "*[p]romptly* upon issuance, summons (together with copies of the complaint as required by Rule 104) *shall be placed for service* with the sheriff or other officer or person authorized to serve process" (emphasis added). Respondent did not "promptly" -- or, ever -- "place for service" the initial application to vacate with the sheriff or any person authorized to serve process. If it had, it would have stated so in its Motion. In any event, it is undisputed that the initial application to vacate was never served.

In contrast to Respondent's failure to ever place for service its initial pleading, Ms. Hale "promptly placed" for service her Application to Confirm. Indeed, the *same day* she filed her Application to Confirm -- November 16, 2007 -- Ms. Hale placed it for service with the U.S. Marshal. *See* Exhibit A of Ms. Hale's Response to the Court's Order to Show Cause. Pursuant to Section 9 of the FAA, Ms. Hale was required to use the U.S. Marshal for service rather than a private process server. In any event, the earliest that Respondent could have placed the Illinois Action for service was November 27, 2007. As such, this Court should rule on Ms. Hale's Application to Confirm pursuant to the first-filed (first-commenced) rule. Similarly, to the extent that a ruling on the "merits" of Respondent's Amended Application to Vacate is to be made, this Court should be the one to do so.

Respondent attempts to excuse it failure to timely serve its initial application to vacate by stating that it "provided the state court with notice in the [initial application to vacate that it] would likely be amended upon full record of the evidentiary hearing in the FINRA arbitration."

*See* Motion at pp. 2-3. The "notice" that Respondent refers to is in a footnote. More importantly, Respondent never put Ms. Hale on "notice" that it planned to amend its initial application to vacate because Respondent <u>never</u> served it. Moreover, Respondent's intent to amend its initial application does not in any way excuse Respondent from serving it.

Respondent could have timely served its initial application to vacate if it wanted to – if Respondent "promptly placed" it for service as it was required to by Illinois Supreme Court Rule 102. Respondent served the Amended Application to Vacate and an "alias" summons within seventeen (17) days of filing it. If Respondent was able to serve the Amended Application and "alias" summons within the 30-day time limit of Illinois Supreme Court Rule 102 it has no valid reason for not serving the original summons and initial application to vacate within 30 days of September 12, 2007 – especially in light of the immediate offer to accept service. If it desired to "amend" its initial application to vacate, Respondent could have and should have attempted to do so thereafter.

Another excuse offered by Respondent is that it exercised "due diligence" in filing Application to Vacate is on November 27, 2007. *See* Motion at p. 3. Respondent did not come close to being duly diligent by taking four (4) months and two (2) weeks after it received the Award to file the Amended Application to Vacate. This is especially true in light of the utter frivolous nature of the Respondent's Amended Application to Vacate.

Respondent argues that "immediately following the receipt of the tape recordings of the four days of evidentiary hearings in that arbitration, [Respondent] caused those tapes to be transcribed." *See* Motion at p. 3. Curiously absent from Respondent's Motion is when Respondent requested the tapes, when Respondent received the tapes and how soon after it received the tapes Respondent "caused" the tapes to be transcribed. In any event, Respondent

also claims to have "exercised *further* due diligence in reviewing the [transcript] before amending its application" on November 27, 2007. *Id.*

Because it does not state when it requested the tapes; received the tapes; or when it "caused" the tapes to be transcribed there is no basis to determine whether Respondent exercised due diligence in obtaining the transcript of the arbitration. However, Respondent received the Award on August 13, 2007. It states that it received the arbitration transcript on October 9, 2007. *Id.* Given that this time span is fifty seven (57) days, it is likely that Respondent did not immediately request the tapes and did not immediately "cause" them to be transcribed.[7] Put another way, Respondent could not have exercised "due diligence" in taking 57 days to have the tapes transcribed. In addition, Respondent did not exercise *further* due diligence in "amending" the initial application to vacate.

Respondent states that it received the arbitration transcript on October 9, 2007. *Id.* At that time, Respondent had at least three (3) attorneys of record in this case.[8] It took these three attorneys forty nine (49) days to "amend" the initial application to vacate. Given these undisputed facts, Respondent can hardly been deemed to have exercised "due diligence". In any event, if Respondent believed that it was unable to comply with the Illinois Supreme Court's thirty-day-service-after-filing deadline as it was approaching, Respondent should have requested that Ms. Hale agree to a reasonable extension of time. Of course, Respondent never did so.

---

[7] Ms. Hale received the arbitration tapes from FINRA's authorized transcription service within a few days after requesting them. As she cannot afford to have had them transcribed, she does not know if it takes more than fifty (50) days for the transcription service to transcribe the tapes after it copies them. This length of time certainly seems highly unlikely, especially in light of the significant decrease in the number of FINRA arbitrations, and assuming that Respondent requested a "rush" job as Respondent must have done so, to state under the penalty of sanctions that it exercised "due diligence" in causing the tapes to be transcribed.

[8] Respondent now has at least five (5) attorneys currently assigned to this case. *See* Exhibit B.

In sum, Ms. Hale's action to confirm was "commenced" before Respondent's action to vacate. Despite its arguments to the contrary and despite its "excuses", Respondent's use of a process server to serve the Amended Application to Vacate mandates this conclusion. As such, this Court should be the Federal forum to rule on Ms. Hale's Application to Confirm. Similarly, to the extent that a ruling on the "merits" of Respondent's Amended Application to Vacate is to be made, this Court should be the one to do so.

## II. EVEN IF MS. HALE'S ACTION TO CONFIRM WAS NOT "FIRST COMMENCED" THIS COURT SHOULD EXERCISE ITS "BROAD DISCRETION" TO RETAIN JURISDICTION TO MAKE A FINAL DETERMINING REGARDING THE AWARD.

Respondent concedes that this Court has "broad discretion" to decide whether to stay or dismiss Ms. Hale's Application to Confirm. *See* Motion at p. 4. Even if the Court were to strictly construe the "first-filed" rule to determine that Respondent's Amended Application to Vacate should relate back to the filing of its initial application to vacate, the Court should exercise its broad discretion to retain jurisdiction over the final disposition of the Award under the "compelling circumstances" exception to the first-filed rule. *See Merrill Lynch v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (stating that "compelling circumstances" justify an exception to the first-filed rule).

The compelling circumstances exception has been articulated in the Southern District of Florida to mean that "judicial and litigant economy, and the just and effective disposition of disputes" permit this Court to retain jurisdiction to make a final determination regarding the Award, irrespective of whether Ms. Hale's Application to Confirm was first-filed. *See Supreme Intern., Corp v. Anheuser-Busch*, 972 F. Supp. 604, 606-07 (S.D. Fla. 1997). Given the compelling circumstances here, it would be unjust to force Ms. Hale to litigate this dispute in a Federal forum more than one thousand three hundred (1,300) miles from her home.

Pursuant to FINRA Rule 10330(h), as the arbitration loser, Respondent was required to pay the Award or file a motion to vacate within thirty (30) days of delivery of the Award. On September 12, 2007 -- the thirtieth (30th) day after receipt of the Award -- Respondent indicated to FINRA that it had filed an initial application to vacate the Award. *See* Exhibit E (September 12, 2007 letter from Respondent to FINRA Dispute Resolution). In its September 12, 2007 letter to FINRA, Respondent also indicated that the initial application to vacate was an "enclosure" to that letter. *Id.* For whatever reason, Respondent sent its September 12, 2007 letter to undersigned counsel "*w/o enclosure*". *Id*. Respondent sent its September 12, 2007 letter to FINRA via facsimile and FedEx. *Id*. For whatever reason, Respondent sent it to undersigned counsel via U.S. Mail. *Id.*

Due to the different service methods, undersigned counsel did not receive Respondent's September 12, 2007 letter until September 15, 2007 – "w/o" enclosure, i.e., the purported initial application to vacate. In the interim, as he did not know whether Respondent paid the Award or filed an application to vacate the Award by the September 12, 2007 deadline, undersigned counsel sent an email to Respondent on September 13, 2007 in which he offered to accept service of a motion to vacate, to the extent that one was filed. *See* Exhibit F. Respondent never responded to this email, thereby rejecting the offer to accept service of the purported initial application to vacate. Having never heard from Respondent, undersigned counsel revoked his offer to accept service on September 18, 2007. In any event, it is undisputed that Respondent received the email in which undersigned counsel offered to accept service.

If Respondent had accepted undersigned counsel's immediate offer to accept service -- which was made **one day** after the initial application to vacate was filed **--** and/or lived up to its promise to comply with Illinois Supreme Court Rule 102 by serving the initial application

15

within 30 days of filing it -- both Respondent's application to vacate and Ms. Hale's Application to Confirm would have been decided in one Federal forum.

Exactly as she did when the Amended Application to Vacate was finally (and untimely) served, Ms. Hale would have immediately removed the application to vacate to the Northern District of Illinois and simultaneously moved to transfer it to this Court. Notwithstanding which Federal court maintained jurisdiction of the initial application to vacate, Ms. Hale would have filed her Application to Confirm Arbitration in that Federal court in conjunction with, or soon after, her response to the initial application to vacate.

Respondent's above-described delay and "hide-the-ball" tactics caused an unnecessary and improper delay of a final disposition of the Award. Respondent's tactics are "compelling circumstances" which should prevent it from litigating this dispute in its preferred Federal forum.

In addition to Respondent's blatant delay tactics, the following are additional compelling circumstances which justify the Court to exercise its broad discretion to retain jurisdiction to make a final determination regarding the Award. Ms. Hale and undersigned counsel reside in the Southern District of Florida. Ms. Hale has virtually no income and is living off her credit cards, and therefore cannot afford to travel to and/or pay her counsel to travel to Chicago, Illinois to argue the merits of the Amended Application to Vacate or otherwise appear in person in the Northern District of Illinois. On the other hand, according to its SEC filings, Respondent's net income in 2006 was greater than $71,000,000. As such, it would not be a burden for Respondent to litigate a final disposition regarding the Award in the Southern District of Florida.

Despite these undisputed facts, Respondent has the audacity to argue that it would be more "inconvenient" for it to litigate this dispute in Florida than for Ms. Hale to litigate in Illinois. *See* Motion at p. 7. Specifically, Respondent states that it would be "inconvenient" for it litigate in Florida because it "would have to retain and pay a local attorney to interface with its Illinois attorneys if this action was not stayed or dismissed." *Id.* Evidently, the attorney who signed Respondent's Motion has never heard of the concept of *pro hac vice*. Further, the parties' respective abilities to afford to pay for their attorney(s) speaks for themselves and therefore Respondent's argument that it would "inconvenient" to pay its attorney deserves no additional comment.

Respondent also argues that it "would be highly unlikely" that Ms. Hale would be required to be present in Illinois. *Id.* This ignores that, whether or not Ms. Hale is required to appear in court, she may desire to. For example, she may desire to testify regarding how Respondent's delay tactics have caused her emotional distress which has affected her health when she seeks sanctions over-and-above the significant attorney's fees that she has incurred for no other reason than Respondent's filing of a frivolous application to vacate and Respondent's inexcusable delay tactics in serving it. Of course, Respondent's blithe statement also ignores the fact that Ms. Hale will have to pay her attorney to personally appear in Illinois, even if she does not. Respondent argues that this is "highly unlikely". The truth is that this is a certainty (if Ms. Hale's Application to Confirm is stayed or dismissed). Indeed, as Respondent hypocritically admits, the "parties have been ordered by the Court in the Illinois Action … to appear before the court." *See* Motion at p. 3.

In sum, Ms. Hale's Application to Confirm was filed before Respondent's Amended Application to Vacate. In addition, Ms. Hale's action to confirm the Award was "commenced"

before Respondent's action to vacate the Award. As such, this Court should retain jurisdiction to make a final determination regarding the Award. Even if Respondent's action to vacate is deemed to have been first-filed, compelling circumstances are present here which allows the Court to exercise its broad discretion to retain jurisdiction to make a final determination regarding the Award.

**III. MS. HALE'S FILING OF HER APPLICATION TO CONFIRM WAS NEITHER REACTIVE NOR VEXATIOUS.**

Respondent argues that "on its face, Hale's commencement of the Florida Action was reactive, if not vexatious." *See* Motion at p. 9-10. Respondent's so-called support for this accusation is baseless. The truth is that Respondent's filing of a blatantly frivolous application to vacate and its improper delay and "hide-the-ball" tactics in serving its blatantly frivolous application to vacate are the only vexatious -- and sanctionable -- circumstances here.

Ms. Hale's basis to confirm the Award is that it was not timely served pursuant to Section 12 of the FAA. At the time that Ms. Hale's Application to Confirm was filed, Respondent had not served either the initial application to vacate or the Amended Application to Vacate. Almost immediately after the expiration of the three-month statute of limitations for service had expired, Ms. Hale filed her Application to Confirm.

Respondent argues that Ms. Hale "could have filed her Application to Confirm at any time prior to September 21, but did not." *See* Motion at p. 10. Respondent further argues that Ms. Hale "waited nearly two months, and then filed her Application to confirm in a federal forum to obtain a more favorable venue." *Id.* Respondent's arguments are specious, to say the least.

First, Ms. Hale could not have removed to Federal court the Amended Application to Vacate until she was served with it – on December 14, 2007– and therefore could not have filed

her Application to Confirm in Federal court until after that date. Even if Ms. Hale desired to litigate this dispute in Illinois state court, she could not have filed an application to confirm (or a response to the initial application to vacate) until Respondent "commences" its action to vacate.

Second, while it is true that Ms. Hale "waited" to file her Application to Confirm, she did not wait "nearly two months." The truth is that is she was <u>forced</u> by Respondent to wait longer than that. Because Respondent inexcusably failed to timely serve the initial application to vacate -- despite its promise to do so and despite undersigned counsel's immediate offer to accept service -- Respondent forced Ms. Hale to wait <u>three</u> months after delivery of the Award to file her Application to Confirm. If Ms. Hale filed her Application to Confirm prior to the expiration of the FAA's three-month statute of limitations to serve a motion to vacate, this Court (or any other) could not have confirmed the Award pursuant to the FAA.

Third, Respondent lies to this Court when it falsely asserts that, in Respondent's September 25 letter referenced above, "Hale's attorney was specifically advised of the caption and docket number for [Respondent's] Application to Vacate filed in the Circuit Court of Cook County, Illinois." *See* Motion at p. 9. The *truth* is that undersigned counsel was never advised -- specifically or otherwise -- of the caption and/or docket number of the initial application to vacate. Based on Respondent's lie, it argues that as "an attorney licensed to practice law in the State of Illinois, Hale's attorney knew, or should have known how to retrieve docket information regarding the state court action through the internet." It is unclear what Respondent is suggesting with its snarky comment but if it is suggesting that undersigned counsel was required to obtain Respondent's initial application to vacate from the internet and then serve his own client, such a suggestion is obviously ridiculous.[9]

---

[9] Perhaps Respondent is suggesting that undersigned counsel could have confirmed his assumption that the initial application to vacate was filed in Illinois state court, and therefore Ms. Hale should have

Finally, Ms. Hale did not wait to file her Application to Confirm to "obtain a more favorable venue." As discussed above, although she did wait – she was <u>forced</u> by Respondent to wait due to Respondent's failure to ever serve its initial application to vacate. In any event, it is more accurate to say that this Court is a more "convenient" -- not "favorable" -- venue for Ms. Hale for the reasons discussed above. Moreover, whichever venue makes the final disposition of the Award would be no more or less "favorable" to Ms. Hale given the blatant frivolousness of the Amended Application to Vacate. Arbitration losers who file frivolous applications to vacate are treated equally harshly in both the Southern District of Florida and the Northern District of Illinois. *See e.g., B.L. Harbert Int'l, LLC v. Hercules Steel*, 441, F.3d 905, 906 (11th Cir. 2006); *Levy v. Citigroup Global Markets, Inc.,* Case No. 1:06-cv-21802 at p. 17 (S.D. Fla. October 17, 2006); *Halim v. Great Gatsby's,* 2007 WL 773286 (N.D. Ill. March 12, 2007).

## IV. THE FAA APPLIES TO THE FINAL DISPOSITION OF THE AWARD.

Respondent concedes that the FAA requires an arbitration loser to <u>serve</u> an application to vacate within three (3) months of delivery of an arbitration award. *See* Motion at p. 2. It is undisputed that Respondent did not serve any application to vacate until more than four (4) months of delivery of the Award. To avoid the devastating effect of the FAA's three-month statute of limitations for service, Respondent argues that the Illinois Arbitration Act (the "IAA") applies rather than the FAA. *See* Motion at p. 8. Respondent is wrong.

The FAA applies to all arbitrations that "involve interstate commerce." *See e.g.* FAA § 2. Common sense dictates that interstate commerce was involved in the parties' dispute. The sole issue in the underlying arbitration related to the propriety of buying options contracts by a

---

waited indefinitely until Respondent got around to amending it and then got around to serving it. If Respondent's theory was correct, then an arbitration loser could postpone payment of an arbitration award *forever* by <u>never</u> serving an application to vacate that it purportedly filed.

Florida investor through an Illinois broker-dealer on "national" securities exchanges that provide a marketplace for buyers and sellers of options from every state in the United States. Indeed, it is difficult to imagine a dispute that involves "interstate commerce" more than this one.

Binding case law in Respondent's home and preferred Federal forum confirms this obvious truism. The Northern District of Illinois has stated that "[i]t is axiomatic that the purchase and sale of securities relates to interstate commerce." *Prudential Securities Inc. v. Hornsby*, 865 F. Supp. 447, 449-50 (N.D. Ill. 1994) (holding that federal arbitration law governs where an arbitration "arises from a securities brokerage account"); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (applying the FAA to arbitration conducted pursuant to brokerage account).

The FAA applies even if an arbitration clause has a choice of law provision that specifies state law as is the case here. Again, a court in Respondent's home and preferred Federal forum, mandates the conclusion that because "interstate commerce" is involved the FAA applies. "[N]otwithstanding the parties' choice of law provision in their contract calling for the application of Illinois law, and irrespective of the fact that this a diversity case, *federal arbitration law governs* … a transaction involving interstate commerce." *See Northern Illinois Gas Co. v. Airco*, 676 F.2d 270 (7th Cir. 1982) (emphasis added).

Furthermore, the United States Supreme Court has held that the FAA also applies even if the Amended Application to Vacate were to be decided in state court. The FAA "creates a body of federal law … that is applicable in state and federal courts." *See Southland Corp. v. Keating*, 465 U.S. 1, 14-16 (1984) *quoting Moses H. Cone v. Mercury Construction*, 460 U.S. 1 (1983); *see also Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994)

("the FAA governs judicial review of arbitration proceedings notwithstanding any choice of law provision or state law to the contrary") *quoting* WRIGHT AND COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3569 (2d Ed. 1984) ("even in a diversity suit or an action in state court if … interstate commerce is involved, the rules in the [FAA], based as it is on the commerce powers, are to be applied regardless of state law"). Certainly, if the FAA would apply in state court it would apply in this Court.

Because this action involves "interstate commerce", the FAA applies in spite of the fact that there is a choice-of-law provision. A reasonable attorney knows this or should have discovered it before baselessly arguing that the IAA applies here.

## V.      RESPONDENT SHOULD BE SANCTIONED.

Respondent should be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Respondent has engaged in tactics to delay the final disposition of the Award. Respondent's actions (and inactions) are contrary to goals of arbitration and violative of Rule 11.

Respondent filed a blatantly frivolous initial application to vacate arbitration award. Then Respondent lied to FINRA and undersigned counsel that it would serve it within thirty (30) days as required by Illinois Supreme Court Rule 102. Respondent also rejected undersigned counsel's immediate offer to accept service of Respondent's initial application to vacate. Had Respondent not lied *or* complied with its legal obligation *or* accepted the immediate offer to accept service a final disposition regarding the Award would have already been made. More than four (4) months after it received the Award, Respondent finally served its Amended Application to Vacate. This was filed <u>after</u> Ms. Hale filed her Application to Confirm. Like its initial application to vacate, the Amended Application to Vacate is blatantly

frivolous. Now, Respondent continues its delay tactics by defying this Court's Order to respond to Ms. Hale's Application to Confirm. Instead, Respondent seeks to stay or dismiss this Court's ability to confirm the Award. Despite its delay tactics and lies, Respondent argues that it should be allowed to litigate this dispute in its preferred Federal forum because it would be more "inconvenient" for it to litigate this dispute in Florida than for Ms. Hale to do so in Illinois. Respondent's audacity is breathtaking.

In the words of Rule 11, it is clear that from the very beginning Respondent that has attempted to achieve an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation". "When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there, like this one, in which the arbitrator is only *the first stop along the way*, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later." *B.L. Harbert Int'l, LLC v. Hercules Steel*, 441, F.3d at 913 (emphasis added).

*Harbert* "not only warns potential litigants, it directs the district courts to forcefully implement the goals of the FAA by making parties understand they should adhere to the exacting standards for judicial review [of arbitration awards] *or face consequences*." *See SII Investments, Inc. v. Jenks*, Case No. 8:05-CV-2148-T-23MAP at p. 11 (M.D. Fla., July 27, 2006) (emphasis added). "Arbitration's allure of a speedy, economic resolution of a claim means [much] more to [Ms. Hale] than to [Respondent]." *Id.* at 11. Ms. Hale "cannot afford

'the first stop along the way' litigation approach" Respondent has practiced and *Harbert* has criticized. *Id.*

Respondent should be sanctioned and ordered to pay all of Ms. Hale's costs and attorney's fees incurred in connection with protecting, and collecting, the Award she received after a full and fair arbitration hearing. As soon as he became aware that Respondent had filed its initial application to vacate, undersigned counsel began to prepare a response thereto as he justifiably (but wrongfully) assumed it would be served shortly thereafter. *See* footnote 3 *infra.* Immediately after Respondent served its Amended Application to Vacate, undersigned counsel resumed his efforts to prepare a response thereto. *See* footnote 4 *infra.* Indeed, Ms. Hale's response to Respondent's Amended Application to Vacate is virtually complete and could be filed on very short notice if necessary.

Therefore, even if Ms. Hale's Application to Confirm is granted without the Court ruling on the "merits" of the Amended Application to Vacate, Ms. Hale should be awarded her attorney's fees and costs incurred in preparing a response to the Amended Application to Vacate (and a response to Respondent's current Motion and other pleadings).[10] Attorney's fees and costs are not enough of a sanction, however, as it would merely put Ms. Hale back in the same

---

[10] As stated above, Ms. Hale was forced by Respondent to incur substantial fees in preparing a response to Respondent's Amended Application to Vacate which is now virtually complete and could be filed in short order. As such, if this Court rules on Respondent's Amended Application to Vacate Ms. Hale will incur a relatively small amount of additional fees to complete and file her response thereto. Although it would be a waste of this Court's time and slightly further delay a final disposition regarding the Award, Ms. Hale has no objection if the Court orders Respondent to file its Amended Application to Vacate in this Court. Given Respondent's antics to date, Ms. Hale fully expects that if her Application to Confirm is granted, Respondent will appeal that decision in an effort to further delay payment of the Award. Although a putative appeal will very likely be unsuccessful, a ruling on the "merits" of the Amended Application to Vacate in addition to ruling on the timeliness of service (which is the basis of Ms. Hale's Application to Confirm and is a basis to deny Respondent's Application to Vacate in addition to the fact that Respondent's Amended Application to Vacate is frivolous in that it does not come close to meeting any legally-recognized standard to vacate an arbitration award) will make a putative appeal even less likely to succeed. Just as importantly, a ruling on the Amended Application to Vacate will lessen the small probability that a final judgment will be stayed pending appeal.

position she would have been had Respondent paid the Award and not filed the blatantly frivolous initial application to vacate and blatantly frivolous Amended Application to Vacate.

Given the egregious facts here, Respondent should be ordered to pay additional sanctions directly to Ms. Hale for the emotional distress it intentionally inflicted on her. Evidence adduced at the arbitration hearing showed that Ms. Hale has virtually no income and no savings and is therefore forced to live off her credit cards. Put another way, Ms. Hale desperately needs the money she was rightfully awarded – and Respondent knows it. Even a cursory review of the Amended Application to Vacate reveals that Respondent could not objectively believe that it had any chance to successfully vacate the Award. Merely filing the frivolous Amended Application to Vacate was bad enough as it unnecessarily delayed payment of the Award to Ms. Hale. Combined with Respondent's inexcusable delay tactics in serving such an off-the-charts frivolous application to vacate, amounts to nothing more than a mean-spirited attempt to cause Ms. Hale unneeded stress and anxiety.

Unfortunately for Ms. Hale, Respondent's dirty tricks have been effective as they have caused Ms. Hale's financial and physical health to deteriorate since she became aware that Respondent did not pay the Award within FINRA's thirty-day deadline. *Harbert* does not suggest that "an appropriate sanction in cases of this sort should be limited to the actual costs shouldered upon" Ms. Hale. *See Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 2:06-CV-868-VEH at p. 22 (S.D. Ala. July 18, 2006). A copy of this opinion is attached as Exhibit G.

## **<u>CONCLUSION</u>**

For the reasons stated above, Respondent's Motion should be denied; Respondent should be ordered to immediately comply with the Court's previous Order to respond to Ms. Hale's Application to Confirm Arbitration Award and; Respondent should be sanctioned.

Respectfully submitted,

NEIL B. SOLOMON, P.A.

By:_____
    Neil B. Solomon, FBN 544973
    4174 St. Lukes Lane
    Jupiter, FL 33458
    Tel: 561-762-4991
    Fax: 561-626-2721
    Email: neilbsolomonesq@gmail.com

    *Attorney for PETITIONER*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

via transmission of Notice of Electronic Filing generated by CM/ECF or in some other

authorized manner for those counsel or parties who are not authorized to receive electronically

Notices of Electronic Filing this 28th day of January, 2008 to:

Stephen B. Gillman, Esq.
Shutts & Bowen, LLP
201 South Biscayne Blvd
Suite 1500
Miami, FL 33131
Phone: 305-347-7311
Fax: 305-347-7835
Email: sgillman@shutts.com

Jeffry M. Henderson, Esq.
Harris L. Kay, Esq.
Henderson & Lyman
175 West Jackson, Suite 240
Chicago, IL 60604
Phone: 312-986-6960
Fax: 312-986-6961
Email: hkay@henderson-lyman.com

_____
s/Neil B. Solomon