Illinois Supreme Court Reports

GARVER v. FERGUSON, 76 Ill.2d 1 (1979)

389 N.E.2d 1181

BILL R. GARVER, Appellant, v. ROY D. FERGUSON et al., Appellees.

No. 51091.

Appellate court reversed; circuit court affirmed.

Supreme Court of Illinois.

*Opinion filed May 18, 1979.*

Page 2

[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]

Page 3

Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Madison County, the Hon. John W. Day, Judge, presiding.

Hoagland, Maucker, Bernard & Almeter, of Alton (James K. Almeter, of counsel), for appellant.

Cox & Bassett, P.C., of Wood River, for appellees.

Page 4

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Bill R. Garver, filed in the circuit court of Madison County a petition to vacate (Ill. Rev. Stat. 1975, ch. 10, par. 112) or modify (Ill. Rev. Stat. 1975, ch. 10, par. 113) an arbitration award of $26,400 in favor of respondents, Roy D. Ferguson and R. Gene Cobbel, d/b/a Ferguson-Cobbel Construction. The circuit court denied the petition, confirmed the award, and entered judgment in favor of respondents and against petitioner in the amount of $26,400, together with interest from the date of the award. Petitioner appealed, the appellate court reversed and remanded for rearbitration before a new panel of arbitrators (63 Ill. App.3d 453), and we allowed respondents' petition for leave to appeal.

On February 25, 1975, petitioner, as owner and architect, entered into a contract with respondents, as contractors, for the construction of a house on petitioner's lot. The contract provided for a price of $45,669 and that all work should be of good quality and in conformance with the contract documents, which included the plans and specifications prepared by petitioner, an architectural engineer. It also provided that if the contractor substantially violated the contract, the owner, after giving the contractor seven days' written notice, could terminate the contractor's employment and finish the work by

whatever method the owner deemed expedient, any additional costs to be paid by the contractor. The contract further provided:

> "All claims, disputes, and other matters in question arising out of, or relating to, this Contract or the breach thereof except * * * with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment * * * shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association
> Page 5
> * * *. * * * [T]he award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Shortly after construction began, disputes arose between the parties. Petitioner accused respondents of numerous violations of the specifications regarding the footings and basement walls; petitioner charged that as a result of the contractor's work, the footings were too thin, the concrete used in the walls was too watery, and the walls themselves were out of plumb and out of line. Petitioner also charged that the waterproofing used on the basements walls was inferior to the grade required under the detailed waterproofing specifications contained in the contract. Petitioner continued to complain to the respondents of their noncompliance with the contract, both orally and by letter. Petitioner alleged that the wood framing was deficient; that the tub and shower were defectively installed; that the roof flashing was too thin and had been cut when installed; and that the roofing paper was torn and improperly laid. On June 10, 1975, following the dispute regarding the roof, petitioner terminated the contract and had the sheriff remove respondents' employees from the property. Petitioner attempted to obtain bids to finish the construction, but was unable to find a contractor who would complete the house unless paid for "time and material." On this basis petitioner employed another contractor, paying him $47,040. The house was eventually completed at a total cost to petitioner of $59,222.

On March 1, 1976, respondents filed a demand for arbitration. Alleging that "work stoppage and refusal to pay by the owner were without reasonable cause," respondents claimed that there was due them the sum of $45,000. Petitioner denied liability and counterclaimed in the amount of $18,211.30, the amount by which his total
Page 6
construction costs exceeded the contract price, after adjustment for items furnished by petitioner and for materials not used by respondents. The parties selected three arbitrators, but when one arbitrator did not appear the parties agreed to proceed with a two-member panel comprised of an architect and a building contract estimator. Although no stenographic record was kept at the arbitration hearing, petitioner made a tape recording from which a transcript was later typed. After a two-day hearing, the arbitrators entered an award in favor of respondents for $26,400, stating only that the award was "in full settlement of all claims

and counterclaims submitted to this arbitration." The arbitrators made no findings of fact or law.

Petitioner filed a petition in circuit court to vacate or modify the award alleging that one of the arbitrators was partial and that the arbitrators exceeded their powers. Respondents filed an answer and counterpetition, asking that the arbitration award be confirmed and judgment entered upon it. Respondents' petition was granted.

The appellate court found that the arbitrators "exceeded their power and did not arbitrate on the basis of the contract" (63 Ill. App.3d 453, 457), that the breach of contract was entirely due to respondent's failure to follow the contract specifications, and remanded the cause to the circuit court "to implement arbitration before a new panel of arbitrators."

Section 12(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 112(a)) provides:

> "(a) Upon application of a party, the court shall vacate an award where:
>
> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

Page 7

> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

Prior to the enactment of the Uniform Arbitration Act, section 11 of "An Act to revise the law in relation to arbitrations and awards" (Ill. Rev. Stat. 1959, ch. 10, par. 11) provided that a court could vacate an award if "obtained by fraud, corruption or other undue means"; if "any legal defects shall appear in the award"; or if "such arbitrators misbehaved." Although appearing to vest a court with broader powers to vacate an award than does the present statute, the prior provision was given an interpretation consistent with the present act. (Ill. Ann. Stat.,

ch. 10, par. 112, Historical and Practice Notes, at 442 (Smith-Hurd 1975).) While this court has not previously construed section 12(a)(3) of the Uniform Arbitration Act in determining whether arbitrators have "exceeded their powers," we find guidance in its earlier decisions.

A long line of cases has established that an arbitrator's award will not be set aside because of his errors in judgment or mistakes of law or fact. In the early case of *Merritt v. Merritt* (1850), 11 Ill. 565, 567, the court said:

> "The fact that arbitrators have made an erroneous decision will not vitiate their award. If they have acted in good faith, the award is conclusive upon

Page 8

> the parties; and neither party is permitted to avoid it, by showing that the arbitrators erred in their judgment, either respecting the law or the facts of the case."

In *Sherfy v. Graham* (1874), 72 Ill. 158, after enumerating the limited grounds for vacating an arbitrator's award (essentially the same as are found in section 12 of the Uniform Arbitration Act), the court added, "Nor will a mistake of law or fact by the arbitrators be ground for setting aside an award, but a mistake in the draft of the award may be reformed so as to conform to the award actually made by the arbitrators." 72 Ill. 158, 160; accord, *Podolsky v. Raskin* (1920), 294 Ill. 443, 454; *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 602.) Similar statements are contained in the recent opinions of those courts whose jurisdictions have also adopted the Uniform Arbitration Act: *School Committee v. Korbut* (1977), 373 Mass. 788, 792-93, 369 N.E.2d 1148, 1151; *University of Alaska v. Modern Construction, Inc.* (Alaska 1974), 522 P.2d 1132, 1140; *Grudem Brothers Co. v. Great Western Piping Corp.* (1973), 297 Minn. 313, 316-17, 213 N.W.2d 920, 922-23, 80 A.L.R.3d 147, 151; *Smitty's Super-Valu, Inc. v. Pasqualetti* (1974), 22 Ariz. App. 178, 180-81, 525 P.2d 309, 311-12. The Act is to be construed so as "to make uniform the law of those states which enact it." (Ill. Rev. Stat. 1975, ch. 10, par. 120.) Opinions of the courts of other jurisdictions are therefore shown greater than usual deference.

A review of the authorities demonstrates the courts' desire that, if possible, disputes be settled without litigation and the clear intent that judicial review of an arbitrator's award be more limited than appellate review of a trial court's decision. (*Bernhardt v. Polygraphic Co. of America* (1956), 350 U.S. 198, 203, 100 L.Ed. 199, 205, 76 S.Ct. 273, 276.) As the United States Supreme Court has observed:

Page 9

> "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a

> court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." (*Burchell v. Marsh* (1854), 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96, 99.)

This same rationale applies here, and the contractual provision that in the event of arbitration "the award rendered by the arbitrators shall be final" should govern.

It is clear that the matter before the arbitrators was within the scope of the arbitration provision of the contract which referred to arbitration "all claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof," excluding two matters not relevant here — artistic effects and claims waived by the making of final payment. The question remains, however, whether, as the appellate court majority concluded, the arbitrators formed their award without reference to the terms of the contract.

The chairman of the committee that drafted the Uniform Arbitration Act, writing in explanation of section 12(a)(3), has framed the inquiry in the following terms:

> "[T]he question for the court is whether the construction of the contract made by the arbitrator is a reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction

Page 10

> of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award." Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 706 (1957).

Applying this standard, we cannot say that the arbitrators in rendering their award unfairly interpreted the contract. The evidence presented before the arbitrators was copious and technical. For nearly every claim raised by petitioner, respondents offered an explanation in justification or mitigation. For example, respondents contended that the defects in the concrete complained of by petitioner were the result of instructions by petitioner, who was frequently on the job site when the concrete was poured; that the waterproofing specified by the contract could not be applied in the weather conditions prevailing at the time of the construction; and that several of the admitted defects could have been remedied had respondents been allowed to finish the house. The parties also disagreed widely on the percentage of completed construction; in answer to petitioner's claim that the house was 40% complete when the contract was terminated, respondents maintained that they had completed 70% of the house. The arbitrators were experts in the construction industry and were well qualified by experience to understand the claims of each side. Admittedly, if respondents substantially violated the contract it was properly terminated by

petitioner, and respondents were responsible for the cost of completion. The evidence produced by both parties on the issue of whether respondents substantially violated the contract was capable of more than one interpretation.

Whenever possible a court must construe an award so as to uphold its validity (*Merritt v. Merritt* (1850), 11 Ill. 565), and gross errors of judgment in law or a gross

Page 11

mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent upon the face of the award. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578.) Upon applying these rules we find no basis for disturbing the award of the arbitrators in this case.

For the reasons stated the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved