UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OPTIONSXPRESS, INC., <br><br> Petitioner, <br><br> v. <br><br> LINDA HALE, <br><br> Respondent. | Docket No. 08 CV 179 <br><br> Virginia M. Kendall, Judge |

**PETITIONER'S RESPONSE TO
RESPONDENT'S MOTION TO TRANSFER**

Petitioner optionsXpress, Inc ("optionsXpress"), through its attorneys and as its response to respondent Linda Hale's Motion to Transfer, states as follows:[1]

**Introduction**

The principal issue involved in the this action (hereinafter referred to as the "Illinois Action") and respondent Linda Hale's action commenced in the United States District Court for the Southern District of Florida, caption as *Hale v. OptionsXpress*, 07 CV 81085, (the "Florida Action") is whether an arbitration award entered on August 13, 2007 (the "Arbitration Award") in favor of Linda Hale ("Hale") and against optionsXpress should be confirmed or vacated. The Illinois Action was commenced by optionsXpress on September 12, 2007, through the filing of its Application to Vacate Arbitration Award (the "Application to Vacate"), wherein OptionsXpress sought to vacate the Arbitration Award. Hale filed her Application to Confirm Arbitration Award ("Application to

---

[1] References to Hale's Motion to Transfer, which was imbedded in her <u>Notice of Removal and Motion to Transfer</u>, are cited as "Mot. to Transfer at __." References to Respondent's Brief in Support of Her Motion to Transfer, which was filed without leave of Court on February 29, 2008, are cited as "Hale's Br. to Mot. to Transfer at ___" or "Supporting Brief."

1

Confirm") in the Florida Action over two months later on November 16, 2007. For the reasons set forth more fully below, in the interest of justice and in the interest of wise judicial administration and a comprehensive disposition of the parties' litigation, optionsXpress seeks the entry of an order denying Hale's Motion to Transfer.

## PROCEDURAL HISTORY

    *a.*    *optionsXpress' Application to Vacate.*

On or about December 2, 2006, Hale commenced an arbitration action against optionsXpress with the Office of Dispute Resolution of the National Association of Securities Dealers, now known as FINRA, seeking damages for losses in her trading account held by optionsXpress. That matter was heard before a panel of arbitrators in August 2007. Through the entry of the Arbitration Award, dated August 13, 2007, the panel found in favor of Hale and against optionsXpress. The instant action was commenced on September 12, 2007, less than a month after the receipt of the Arbitration Award, when optionsXpress filed its Application to Vacate with the Circuit Court of Cook County, Illinois (the "Circuit Court"), pursuant to the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/12.[2] (A copy of the Application to Vacate, *sans* exhibits, is attached hereto as **Exhibit 1** and a copy of the Circuit Court's docket report reflecting the filing of the Application to Vacate is attached hereto as **Exhibit** 2)

Within a few days of filing its Application to Vacate, optionsXpress informed Hale's attorney that such an application had been filed, by letter dated September 12, 2007. (*See* **Exhibit 3**) About ten days later, through a letter dated September 25, 2007, Hale's attorney was informed

---

[2]  Through an e-mail sent to optionsXpress on the evening of Thursday, September 13, 2007, and before Hale or her counsel were aware that optionsXpress had filed its Application to Vacate, Hale's counsel offer to accept service of any such application on behalf of Hale. (*See* Mot. to Transfer at n.1) On Tuesday, September 18, 2007, three business days after sending his offer of acceptance of service and shortly after receiving notice from optionsXpress that its Application to Vacate had been filed, Hale's counsel sent an e-mail to optionsXpress revoking his offer. Copies of the aforementioned e-mails, dated September 13 and 18, 2007, are attached hereto as **Group Exhibit 4.**

that the Application to Vacate was pending in the Circuit Court of Cook County, Illinois (the "Circuit Court"). (*See* **Exhibit 5** at 2-3) As an attorney licensed to practice law in the State of Illinois and having practiced law in Cook County, Illinois for many years, Hale's attorney was well acquainted with the Circuit Court's process and the availability of viewing docket reports on cases filed in the Circuit Court. (A copy of the Attorney Registration and Disciplinary Report for Hale's attorney is attached hereto as **Exhibit** 6)

In its Application to Vacate filed with the Circuit Court, optionsXpress gave notice to the Circuit Court that the Application to Vacate would likely be amended upon receipt of the full record of the evidentiary hearing in the FINRA arbitration. (*See* **Exhibit 1** at n.2) Immediately following the receipt of the tape recordings to the four days of evidentiary hearings in that arbitration, optionsXpress caused those tapes to be transcribed, which involved no small cost or effort.[3] Following the receipt of the complete transcription of the record on October 12, 2007, optionsXpress exercised further diligence in reviewing the full record before amending its application, so that the amended application would more fully, and accurately, reflect the record.

On November 27, 2007, optionsXpress filed its <u>Amended Application to Vacate Arbitration Award</u> (the "Amended Application to Vacate") and an alias summons was issued against the Respondent. Under the IUAA, a respondent has 90 days from receipt of an arbitration award to **file** an application to vacate. Unlike the Federal Arbitration Act, which requires service on the other party within that 90-day period, the IUAA does not. *Compare* 710 ILCS 5/12(b)(requiring that the application "be made within 90 days after delivery of a copy of the award to the applicant) and 9 U.S.C. 12 (requiring a notice of a motion to vacate under the FAA to be "<u>served</u> upon the adverse party . . . within three months after the award is filed or delivered." (Emphasis added))

---

[3] The testimonial record in the arbitration hearing consisted of eleven tape recordings, which resulted in nearly a thousand pages of transcripts.

3

Following its initial unsuccessful attempt to serve Hale at the address she provided on all of her account documents and pleadings in the arbitration, optionsXpress caused a skip trace to be conduced on Hale to locate her new residence.[4] As a result of that skip trace, OptionsXpress learned that Hale had moved from her address of record at the time of the FINRA hearing and that her living unit was not held under her own name. Following the receipt of the skip trace report, optionsXpress promptly served Hale with process a few days later, on December 14, 2007.

Approximately three weeks later and nearly two months after filing her Application to Confirm, Hale filed a Notice of Removal with the United States District Court for the Northern District of Illinois on January 8, 2008. Imbedded in the Notice of Removal was Hale's Motion to Transfer, which is the subject of this Response.

   b.   *Hale's Application to Confirm.*

Approximately **two months after** optionsXpress filed its Application to Vacate and approximately **seven weeks after** receiving notice that optionsXpress had filed an Application to Vacate in the Circuit Court, Hale filed her <u>Application to Confirm Arbitration Award</u> ("Application to Confirm") in the United States District Court for the Southern District of Florida. Although optionsXpress's registered agent was at all times a matter of record and easily accessible, it was not until about two months later, on January 7, 2008, that Hale served optionsXpress with a copy of the Application to Confirm.[5]

Shortly after being served with process in the Florida Action, optionsXpress timely filed a

---

[4] Such efforts could have been avoided if her attorney's offer to accept service was a genuine offer, which was available for only three business days, and not just a ploy to use in future submissions to the Court.

[5] Hale's claim that optionsXpress did not serve Hale until about three months after it first filed its Application to Vacate is tempered by the fact that Hale took nearly two months to serve optionsXpress, despite the fact that optionsXpress had a publicly disclosed registered agent readily available at all times to accept service of process and the fact that Hale was living in a residence held under someone else's name. However, whether a party exercised diligence in serving the other part is an issue for the surviving court to decide, and not a factor to consider on a motion to transfer.

Motion to Stay or Dismiss with that court, based on the first-file rule, explained by the court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 765 F.2d 1169, 1174 (11th Cir. 1982), for the proposition that a later-filed action in a parallel federal proceeding should defer to the first filed action, and also based on the abstention doctrine enunciated by the Supreme Court in *Colorado River Water Conversation Dist. v. United States*, 424 U.S. 800, 817 (1976), and later expanded by the Supreme Court in *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983), concerning parallel court actions. That motion has been fully briefed by the parties, and the parties are waiting for a ruling in the Florida Action.

## ARGUMENT

In light of the foregoing, there are no compelling circumstances, including no material inconvenience to the parties, that would provide this Court with any basis to transfer this action to another venue under the first-file rule, the abstention doctrine, or 28 U.S.C. § 1404(a).

**A.    The standard for abstention between parallel federal actions and its relationship with the factors consider on a § 1404(a) motion to transfer.**

   *1.    The first-filed rule, as applied to parallel federal proceedings.*

As a general rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11TH Cir. 2005). Furthermore, "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)(following *Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971)). Finally, the party objecting to jurisdiction in the first-filed forum carries the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. *Manuel*, 430 F.3d at 1135.

5

In the instant case, the Illinois Action was commenced <u>over two months before</u> the Florida Action, and Hale was served with process in the Illinois Action over three weeks before optionsXpress was served in the Florida Action.[6] Although the Illinois Action involves an action removed from a state court, pursuant to 28 U.S.C. § 1441, it was the commencement of the state court action that is considered in the first-filed rule, because it is well established that "[w]hen a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court." *Savell v. Southern R.R. Co.*, 93 F.2d 377, 379 (5th Cir. 1937). Accordingly, as the first-filed action, only compelling circumstances justify the transfer of this action. Hale presents to the court no compelling circumstances and a review of the factors considered under the abstention doctrine and 28 U.S.C. 1404(a) indicates that no such circumstances exist.

   *2.    The abstention doctrine*

It is well established that "as between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). As explained by the court in *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721,, 728 (5th Cir. 1985), "[t]he federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." Although there is not precise test to determine whether two cases are parallel, "it is not necessary that there be formal symmetry

---

[6] Although the fact that Hale was served with process well before optionsXpress is a matter of record, under either federal or state law the date for the commencement of an action is not dependent upon the service of process on the opposing party. At all times relevant, Rule 3 of the Federal Rules of Civil Procedure provided that "[a] civil action is commenced by *filing a complaint* with the court." Fed.R.Civ.P. Rule 3 (emphasis). The definition of the commencement of an action under Illinois law is identical. At all times relevant, section 2-201(a) of the Illinois Code of Civil Procedure provided that "[e]very action unless otherwise expressly provided by statute, shall be commenced by the *filing of a complaint*." 735 ILCS 5/2-201(a) (emphasis added).

between the two actions. Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Tyrer v. City of S. Beloit of Illinois*, 456 F.3d 744, 752 (7th Cir. 2006)(citations omitted).

Consistent with 28 U.S.C. § 1404(a), which is discussed more fully below, the abstention doctrine rests "on considerations of '[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (citation omitted). Like the first-filed rule, "[t]he Supreme Court, however, 'has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.' So, in determining whether abstention is appropriate, [a court's] task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Tyrer v. City of S. Beloit of Illinois*, 456 F.3d at 751 (citations omitted, emphasis in original).

> 3. *The standard to be applied in evaluating a motion to transfer under § 1404(a) is consistent with the first-filed rule and the abstention doctrine.*

The first-file rule and the abstention doctrine are consistent with the standard to be used in applying Section 1404(a), when properly applied to a transfer to a parallel proceeding. Before a transfer can be made under § 1404(a), "[t]he movant must establish that (1) venue is proper in the transferor district, (2) the transferee court is in a district where the case might have been brought, and (3) the transfer is for the convenience of the parties and witnesses and in the interest of justice." *Fathers of Order of Mt. Carmel, Inc. v. National Ben Franklin Ins. Co. of Illinois*, 697 F. Supp. 971, 973 (N.D.Ill. 1988).

Chicago, Illinois and this Court was the proper venue for optionsXpress' Application to

Vacate under the IUAA. At all times relevant, section 17 of the IUAA, 710 ILCS 5/17, provided, in part, that "[a]n initial application shall be made to the court of the county in which the *agreement provides the arbitration shall be held* or . . . if the [adverse party] has no residence or place of business in this State, to the court of any county." 710 ILCS 5/17 (emphasis added). In the instant case, the parties' Customer Agreement provided that "all controversies which may arise between [Hale] and optionsXpress . . . shall be determined by arbitration . . . [and] to arbitrate all such controversies before the NASD in Chicago, Illinois." Accordingly, Chicago, Illinois was the proper venue for this action. Whether a Florida court constitutes a proper venue is, at best, an open question under the IUAA. The third factor, the convenience of the parties and witnesses is addressed more fully below under the factors considered in the application of the abstention doctrine. The last factor, the "interest of justice," is intertwined with the rationale underlying the abstention doctrine of conserving judicial resources and providing for a comprehensive disposition of litigation. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986)(explaining that the "[f]actors traditionally considered in an "interest of justice" analysis relate to the efficient administration of the court system").

**B.      Other relevant factors to consider.**

Other factors can also control in considering the applicability of the abstention doctrine and have been refined for a case of a parallel state/federal proceeding. The abstention doctrine in a state/federal parallel proceeding is commonly called the *Colorado River* doctrine, and is based on the principle enunciated by the Supreme Court in *Colorado River*, as later expanded by the Court in *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1 (1983). Although the Illinois Action and Florida Action started off as a parallel state/federal proceeding, following Hale's removal of the Illinois state court action to the United States District Court for the Northern District

of Illinois, they reverted to pure federal parallel proceeding. As a general rule, a federal court should abstain from exercising its jurisdiction only in a few exceptional cases. *Moses H. Cone*, 460 U.S. at 14. Nonetheless, the factors considered under the *Colorado River* doctrine, with slight modification, also prove useful in determining whether a federal district court should transfer an action pending before it in deference to another federal district court.

The United States Court of Appeals for the Seventh Circuit has refined the analysis to a consideration of ten factors: "1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim." <u>Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,</u> 962 F.2d 698, 701 (7th Cir. 1992) (internal quotation marks omitted). No single factor is necessarily determinative, and as applied in the instant case, those factors overwhelmingly weigh in favor of a denial of Hale's Motion to Transfer, as more fully demonstrated below.

  *1. Neither court has assumed Jurisdiction over property.*

As was the case in *Bosdorf*, this factor has no bearing on the abstention analysis in the instant case, because neither court has obtained jurisdiction over the property of either party.

  *2. There is little or no inconvenience to Hale in litigating optionsXpress' Amended Application to Vacate in Illinois federal forum.*

There is no inconvenience to Hale in litigating the parties' issues in the Illinois forum, because the parallel actions involve the confirmation or vacation of an arbitration award, and it would be highly unlikely that an evidentiary hearing requiring Hale's presence would ever be

9

necessary.  Furthermore, there would be no inconvenience to Hale's attorney because he is licensed to practice law in the State of Illinois.  On the other hand, optionsXpress would have to continue to retain and pay a local attorney in Florida to interface with its Illinois attorneys if this action was not stayed or dismissed.  Moreover, Hale has know since the time she entered into an agreement with optionsXpress, upon opening her trading account in 2002, that she may have to litigate any post-arbitration initiated dispute in the courts of Chicago, Illinois, because the arbitration provision in the agreement contained a provision for a Chicago, Illinois venue.  (*See* Customer Agreement at ¶ 46, attached hereto as **Exhibit 7**)

Further, Hale has failed to provide this Court with any affidavits, depositions, or stipulations to support her allegations that litigating this matter in Illinois would of any great inconvenience to her.  It is well established that in considering whether a transfer is warranted for the convenience of parties and witnesses, "the Court may *consider only undisputed facts* presented to the Court by affidavit, deposition, stipulation or other relevant documents.  Mere allegations, standing alone, cannot be taken as proof of facts alleged in support of the motion." *Midwest Precision Services, Inc. v. PTM Industries Corp.*, 574 F. Supp. 657, 659 (N.D.Ill. 1983)(citations omitted)(emphasis added).  In the instant case, none of the allegations concerning optionsXpress or Hale's wealth, Hale's ability to travel, and inconvenience to her attorney were supported by an affidavit or similar document.[7]  Furthermore, allegations concerning actions she may take in the future are meaningless in a determination of whether this Court should transfer this action.  Accordingly, this Court has no basis to consider optionsXpress or Hale's alleged wealth or inconvenience in litigation this matter in Illinois.

---

[7]  Hale and her attorney were given fair warning in optionsXpress Motion to Reconsider that she would be required to file affidavits, depositions, or stipulations to support her allegations that litigating this matter in Illinois would of any great inconvenience to her.  Despite that warning, Hale filed her Brief in support of her Motion to Dismiss on February 29, 2007, without any such supporting documentation.

Furthermore, even if Hale's allegations were true, Hale would have no need to travel to Illinois because it would be highly unlikely that an evidentiary hearing would be held on an application to vacate or confirm an arbitration award. Hale has already admitted that this action "is a summary proceeding and 'shall be heard in the manner provided by law for the making and hearing of motions.'" (Motion to Transfer at ¶ 23, quoting the Federal Arbitration Act) Likewise, Hale has admitted that this proceeding does not require a trial. *Id*. at ¶ 26. The Illinois Uniform Arbitration Act anticipates an identical proceeding as that anticipated by the Federal Arbitration Act. Under Section 15 of the IUAA, 710 ILCS 5/15, "an application to the court under this Act shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions in civil cases." Furthermore, little, if any, discovery is required, because optionsXpress' Amended Application to Vacate, as well as Hale's Application to Confirm, rely on the exhibits to the arbitration hearing and the transcript to that hearing. Moreover, the hearing on the merits with witnesses and exhibits has already been held, and there is no request by optionsXpress for another hearing nor is there any provision under the rules for the further evidentiary proceeding. Finally, as evident from the hearing held by this Court on February 20, 2008, there would be no inconvenience to Hale's attorney, because he has demonstrated that he can adequately argue his motions telephonically.

    3.    *The potential for piecemeal litigation weighs in favor of the Illinois forum.*

"Piecemeal litigation results when the [two courts] are adjudicating the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Shallal v. Elson*, 1999 U.S. Dist. LEXIS 23368 *14 (S.D.Fla. April 12, 1999), attached hereto as **Exhibit 8**. In the instant case, the parallel actions involve the identical parties and the identical issue – whether an arbitration award should be confirmed or vacated. However, the Illinois Action is where the broader issue -- whether grounds exist to vacate an arbitration award – is pending. Furthermore, a

11

denial of relief in the Illinois Action presumes the entry of an order confirming the Arbitration Award.

> 4. *The Illinois Action was filed first and Hale was served in that action before optionsXpress was served in the Florida Action, thus favoring the Illinois forum.*

As explained more fully above, "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982), and the party objecting to jurisdiction in the first-filed forum carries the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule, *Manuel*, 430 F.3d at 1135. Here Hale has the burden to show "compelling circumstances" that would create an exception to the first-file rule that would case this Court to transfer this action. Neither in her Motion to Transfer nor in her Supporting Brief has failed to provide the Court with any evidence, as required in part 2 immediately above or demonstrate any other compelling circumstances that would give cause for the Court to transfer this action.

> 5. *Because Illinois law, and the Illinois Uniform Arbitration Act, will be applied in this matter, the Illinois venue is favored because it is important to have a judge familiar with the applicable state law.*

The Illinois forum is favored under the fifth factor to be considered under the *Colorado River* doctrine, because Illinois law applies in the instant diversity action and because the optionsXpress' Application to Vacate and Amended Application to Vacate are based on the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et seq*. In *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986)(denying defendant's motion to transfer), the court found that "[i]n a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." In the instant diversity action, not only does Illinois law apply because it is a diversity action, but one of the primary issues is in this action is the scope of the IUAA. As a court

sitting in the State of Illinois, this Court will surely be more familiar with the application of the IUAA and Illinois law than the court in the Florida Action.

      6.     *The Illinois forum can adequately protect the parties' rights.*

Because the parties in both actions are identical, and the issues pending before the Illinois Action are broader and encompass the issues in the Florida Action, the Illinois Action is an adequate forum to protect all of the parties' rights. *See American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11 Cir. 1984)(denying a stay in deference to a parallel action upon a finding that the parallel action would not decide the issues presented in the action pending before the court).

      7.     *Neither action has progressed to the stage where the parties are at issue, and thus the seventh factor has no applicability in the instant circumstances.*

      8.     *The presence or absence of concurrent jurisdiction.*

For actions can proceeding concurrently, although for the reasons set forth part 3 immediately above, the facts are in favor of staying the Florida Action in favor of the Illinois Action, and a motion for such relief is currently before the court in the Florida Action.

      9.     *The ninth factor is not applicable in a parallel federal proceeding.*

      10.    *The vexatious or reactive nature of Hale's filing in the Florida Action weighs heavily in favor of this Court abstaining in favor of the Illinois forum.*

This last factor should weigh significantly in this court's analysis of whether to defer to another court. As explained by the court in *Bosdorf*, "[a]bstaining when litigation is reactive or vexatious furthers important federal policy of prohibiting forum shopping." 79 F. Supp. 2d at 1344 (citing *Allied Machinery Serv. Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993)). Unlike a situation were two separate actions are file a few days apart unbeknownst to the litigants, in the instant case, Hale knew well in advance (on or before September 21, 2007) that optionsXpress had filed its Application to Vacate in Illinois. This fact is confirmed by the letter

Hale's attorney sent a to the FINRA administrator dated September 21, 2007, wherein he objected to the Illinois venue and objected to the use of the Illinois Uniform Arbitration Act by optionsXpress. (*See* **Exhibit 9**) In response, optionsXpress sent a letter to the FINRA administrator dated September 25, 2007, a copy of which was mailed to Hale's attorney, explaining the application of the Illinois Uniform Arbitration Act. In that September 25th letter, Hale's attorney was specifically advised that optionsXpress filed its Application to Vacate in the Circuit Court of Cook County, Illinois. (*See* **Exhibit 5**) As an attorney licensed to practice law in the State of Illinois, Hale's attorney knew, or should have known, how to retrieve docket information regarding the state court action through the internet on the Clerk of the Circuit Court's website, which is available to the public at no charge. Furthermore, instead of calling optionsXpress' attorneys, whom Hale's attorney had met and developed a working relationship over four days of hearings, to request a copy of optionsXpress' Application to Vacate, Hale and her attorneys did nothing, except to hastily revoke the offer to accept service.

In addition, Hale could have filed her Application to Confirm at any time prior to September 21, 2007, but she chose not to. As explained above, by September 21, 2007, Hale knew that an Application to Vacate had been filed, and her attorney knew, or should have known, that he would have the opportunity to file Hale's Application to Confirm as a counterclaim or file a motion to dismiss based on Hale's alleged objection to venue in Illinois and the application of the Illinois Uniform Arbitration Act. Instead, Hale waited over two months, and then filed her Application to Confirm in a federal court in Florida to obtain a more favorable venue. On its face, Hale's commencement of the Florida Action was reactive, if not vexatious. As explained by the court in *Bosdorf*, "the First, Second, Fifth, Seventh, Eight, Ninth, and Tenth Circuits have all stated explicitly that the 'reactive' character of a [second] suit weighs in favor of abstaining." 79 F. Supp. 2d at 1346.

## CONCLUSION

Although the aforementioned factors were formulated by the Supreme Court to find exceptional circumstances that would justify a federal court in abstaining in favor of a parallel state court proceeding, no exceptional circumstances are required in the instant case for this Court to abstain in favor of a parallel federal court proceeding. In fact, Hale has the burden to show that compelling circumstances exist to maintain a parallel action. In applying the aforementioned factors to the instant matter, the totality of circumstances overwhelmingly weigh in favor of abstention based on the interest of justice, wise judicial administration, and a comprehensive disposition of the parties' litigation, in addition to thwarting Hale's reactive, transparent attempt at forum shopping.

WHEREFORE, optionsXpress, Inc. respectively requests that the Court enter an Order denying respondent Linda Hale's Motion to Transfer, and for such additional relief the Court deems appropriate under the circumstances.

                                        Respectfully submitted,

                                        OPTIONSXPRESS, INC.

                                        By:  /s/   Robert B. Christie
                                                One of Its Attorneys

Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6957
rchristie@henderson-lyman.com

**CERTIFICATE OF SERVICE**

To:   Neil B. Solomon, Esq.
      4174 St. Lukes Lake
      Jupiter, Florida 33458

I hereby certify that on March 4, 2008, I electronically filed <u>Petitioner's Response to Respondent's Motion to Transfer</u> with the Clerk of the Court using the CM/ECF system, and pursuant to Local Rule LR5.9, served the above reference counsel of record through the Court's transmission facilities.

    /s/   Robert B. Christie
Robert B. Christie

Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6957