# EXHIBIT 9

**NEIL B. SOLOMON, P.A.**
4174 St. Lukes Lane
Jupiter, FL, 33458
neilbsolomonesq@gmail.com
Phone: 561-762-4991
Fax: 561-626-2721

**VIA FACSIMILE**

September 21, 2007

Ms. Michele Collins
FINRA Dispute Resolution
One Liberty Plaza
165 Broadway, 52nd Floor
New York, NY 10006

Re:   **Linda Hale v. OptionsXpress, Inc.; NASD-DR Case No. 06-05183**

Dear Ms. Collins:

I am writing in response to Hillary Victor's letter to you, dated September 12, 2007.

As discussed below, optionsXpress ("OX") is in violation of NASD Rule 10330(h).[1] Specifically, OX has neither paid the Award nor has Ms. Victor made an application to vacate the Award to a court of "competent" jurisdiction within 30 days as required by NASD Rule 10330(h). Accordingly, Ms. Hale respectfully requests that FINRA initiate Expedited Suspension Proceedings For Non-Payment of Award pursuant to NASD Rule 9554.

The Final Hearing in the above-referenced matter was held in Boca Raton, Florida from August 6, 2007 to August 9, 2007 (the "Final Hearing"). The arbitrators awarded Ms. Hale $175,000 (the "Award"). The Award was issued on August 13, 2007. Accordingly, pursuant to Rule 10330(h), OX was required to pay the Award or file a motion to vacate "with a court of competent jurisdiction" no later than September 12, 2007. OX has done neither.

I was carbon copied on Ms. Victor's letter to you wherein she indicated that she had filed an Application to Vacate Arbitration Award (the "Application") on September 12, 2007. Despite the fact that Ms. Victor apparently sent you her letter via fax and the Application via FedEx, Ms. Victor sent me the letter via regular U.S. Mail, and I therefore did not receive it until September 15, 2007. In addition, Ms. Hale did not respond to my September 13, 2007 e-mail wherein I requested she inform me whether OX intended to pay the Award or had filed a motion to vacate. Moreover, Ms. Victor sent me the letter "w/o enclosure" of the Application.

---

[1] Ms. Hale filed her Statement of Claim prior to June 14, 2007. Therefore, Rule 10330(h) is referenced rather than Rule 12904(i).

Putting aside the unprofessional and immature nature of these maneuvers, the bottom line is that I do not have first hand knowledge if the Application was actually filed; whether it was actually filed on or before September 12, 2007; and/or where it was filed. Upon information and belief, however, it appears that Ms. Victor filed the Application in Illinois state court.

What I do know for sure is that Ms. Victor did not serve the Application on Ms. Hale. Perhaps, Ms. Victor is purposely dragging this out to cause unnecessary stress and anxiety for Ms. Hale. In any event, an Illinois state court does not have subject matter jurisdiction to hear/decide the Application. Nor is there a court with proper venue in Illinois. And Ms. Victor knows it.

### Illinois State Court Is Not A Court of "Competent" Jurisdiction – And Ms. Victor Knows It

Assuming that Ms. Victor filed the Application in Illinois state court (again, Ms. Hale does not have first-hand knowledge of this as Ms. Victor: 1) unprofessionally cc'd me "w/o enclosure"; 2) unprofessionally did not respond to my e-mail; and 3) has not served the Application on Ms. Hale), OX is in violation of Rule 10330(h) because an Illinois State court is not a court of "competent" jurisdiction to hear/decide the Application. As an Illinois attorney Ms. Victor knows this. It appears that the sole reason that Ms. Victor filed the Application in Illinois state court is to harass Ms. Hale by substantially increasing the time and expense of being paid the Award.[2]

An Illinois court does not have jurisdiction to hear/decide a motion to vacate an arbitration award unless the arbitration took place in Illinois. Pursuant to Section 17 of the Illinois Uniform Arbitration Act, "an initial application shall be made to the court of the county in which the agreement provides the arbitration hearing *shall be held* **or** *if the hearing has been held*, in the county [in Illinois] in which it was held."[3] *See* 710 ILCS 5/17 (attached as Exhibit A). The Final Hearing was held in Florida. Accordingly, no Illinois court has jurisdiction to hear/decide the Application.

The plain language of the Illinois Uniform Arbitration Act could not be clearer: if the arbitration "has been held" (which it was), the only proper court in Illinois to have filed the Application is in the county in Illinois in which the arbitration hearing took place. Because the Final Hearing was in Florida, any Illinois court with which Ms. Victor filed the Application does not have "competent" jurisdiction. Accordingly, OX is in violation of NASD Rule 10330(h).

Ms. Victor will likely argue that the "shall be held" language in Section 17 of the Illinois Uniform Arbitration Act confers jurisdiction on an Illinois state court because OX's Customer Agreement states that the arbitration *was to be* held in Chicago. Ms. Victor is wrong – and she knows it.

As the clear language of Section 17 of the Illinois Uniform Arbitration Act indicates, the "shall be held" provision applies <u>only</u> in situations where the arbitration has yet to occur. As such, this

---

[2] Putting aside where she filed it, the reason that Ms. Victor filed the Application is to delay payment of the Award in addition to harassing Ms. Hale. Not having seen the Application, but having tried the Arbitration, there is little doubt that the Application will be denied and is frivolous. As such, OX -- and maybe Ms. Victor personally -- will be sanctioned and Ms. Hale will therefore be awarded attorney's fees in connection with defending against the Application.

2

provision would only apply to applications to compel or stay arbitration. Clearly, that is not the case here.

Furthermore, while it is true that OX's Customer Agreement provides for arbitration in Chicago, that provision is not only legally void on its face, but Ms. Victor revoked it to the extent that it was ever legally valid. The supposed agreement to arbitrate in Chicago was never enforceable and therefore a legal nullity because the arbitrators decide where an arbitration will be conducted. Not broker-dealers.

The supposed agreement to arbitrate in Chicago is legally void (i.e., was never a valid agreement) pursuant to NASD Rule 10315(a). This Rule states in pertinent part, that the "arbitrators shall determine the time and place" for the Final Hearing, among other things. As a member of the NASD, OX has agreed to abide by NASD rules. Accordingly, the supposed agreement to arbitrate in Chicago was never valid.

This is important because Ms. Victor will likely argue that Section 16 of the Illinois Uniform Arbitration Act confers jurisdiction on Illinois state courts. This section states, in pertinent part, "[t]he making of an agreement [to arbitrate] in Section 1 [of the Illinois Uniform Arbitration Act] confers jurisdiction on the court to ... enter judgment on an award thereunder." *See* Exhibit A Because the supposed agreement to arbitrate in Chicago was never a legally valid agreement in the first place, Illinois courts never had jurisdiction to enforce it, let alone enter judgment on an award thereunder.

Even assuming the supposed agreement to arbitrate in Chicago was legally valid (it was not), Ms. Victor revoked this supposed agreement by her actions and inactions. By revoking the supposed agreement to arbitrate in Chicago, Ms. Victor stripped Illinois state courts of whatever jurisdiction they may have had initially (they never did).

As evidenced by the Case Information Sheet, the Florida arbitrators that were appointed decided that the Final Hearing was to, and did, take place at FINRA's office in Boca Raton, Florida. Ms. Victor never objected to the appointment of Florida arbitrators. Nor did Ms. Victor object to holding the Final Hearing in Florida during the Initial Pre-Hearing Conference -- or at any time prior to the Final Hearing. Indeed, Ms. Victor appeared on behalf of OX at the Final Hearing in Florida. As such, Ms. Victor knowingly revoked the supposed agreement to arbitrate in Chicago.

Section 1 of the Illinois Uniform Arbitration Act states, in pertinent part, [a] written agreement [to arbitrate] ... is valid, enforceable and irrevocable *save upon such grounds as exist for the revocation of any contract.*" *See* Exhibit A (emphasis added). As stated above, the supposed agreement to arbitrate in Chicago was never a legally binding contract in the first instance because the arbitrators decide where an arbitration is to be held – not broker-dealers. Put another way, this provision never conferred jurisdiction on any Illinois state court.

In sum, because OX has not paid the Award and Ms. Victor has not filed the Application with a court of "competent" jurisdiction within 30 days from the date of the Award, OX is in violation of NASD Rule 10330(h). As such, NASD Rule 9554 has been triggered, and Ms. Hale respectfully requests that you initiate Expedited Suspension Proceedings For Non-Payment of Award.

3

Given the clear language of the Illinois Uniform Arbitration Act and NASD Rules, and in light of Ms. Victor's unprofessional antics and other actions, only one conclusion can be reached: Ms. Victor filed the Application in a court that does not have competent jurisdiction on purpose.

This maneuver is nothing more than Ms. Victor's transparent attempt to harass Ms. Hale, by artificially and substantially increasing the cost of obtaining, and delaying payment, of the Award to Ms. Hale. Such tactics frustrate the goals of arbitration and should not be countenanced.

If filing the Application in Illinois state court was an honest mistake by Ms. Victor, OX should be given the opportunity to voluntarily dismiss the Application and re-file it with a court that has "competent" jurisdiction. This, however, is not the case.

It is clear that any reasonable Illinois attorney would know that an Illinois state court does not -- and never did -- have jurisdiction to hear/decide the Application. Ms. Victor's purposeful attempt at legal trickery should not be rewarded – i.e., Ms. Victor should not be allowed to "correct" her "mistake" of filing the Application in a court that does have jurisdiction.

Because Ms. Victor purposely filed the Application with a court she knew did not have jurisdiction, OX's license to conduct business as a broker-dealer should be suspended expeditiously pursuant to NASD Rule 9554. Given Ms. Victor's actions, the only option that should be given to OX to retain its license to do business as a broker-dealer is to pay the Award immediately (with interest from the date of the Award).[4]

Thank you for your attention to this very important matter.

Sincerely,

Neil B. Solomon

Cc:   Hillary Victor, Esquire

---

[4] Ms. Hale plans to seek attorney's fees in a different forum. Interest is to be calculated from the date of the Award. The Florida statutory interest rate is 11%. Although there is a provision in OX's Customer Agreement for Illinois law, that provision relates only to the interpretation of that agreement. That is why Illinois law was used to determine that the supposed agreement to arbitrate in Chicago was legally void and/or was voided by Ms. Victor. Once that determination is made, Illinois law no longer applies and Florida law does as, the arbitration was conducted in and administered out of Florida and that is where Ms. Hale lives.

4

## ALTERNATIVE DISPUTE RESOLUTION
## (710 ILCS 5/) Uniform Arbitration Act.

(710 ILCS 5/1) (from Ch. 10, par. 101)
  Sec. 1. Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract, except that any agreement between a patient and a hospital or health care provider to submit to binding arbitration a claim for damages arising out of (1) injuries alleged to have been received by a patient, or (2) death of a patient, due to hospital or health care provider negligence or other wrongful act, but not including intentional torts, is also subject to the Health Care Arbitration Act.
(Source: P.A. 80-1012; 80-1031.)

  (710 ILCS 5/2) (from Ch. 10, par. 102)
  Sec. 2. Proceedings to compel or stay arbitration.) (a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.
  (b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
  (c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subdivision (a) of this Section, the application shall be made therein. Otherwise and subject to Section 17, the application may be made in any circuit court.
  (d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.
  (e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.
(Source: P.A. 79-1361.)

  (710 ILCS 5/3) (from Ch. 10, par. 103)
  Sec. 3. Appointment of arbitrators.
  If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In



# 710 ILCS 5/ Uniform Arbitration Act.

the absence thereof, any method of appointment of arbitrators agreed upon by the parties to the contract shall be followed. An arbitrator so appointed has all the powers of one specifically named in the agreement. When an arbitrator appointed fails or is unable to act, his successor shall be appointed in the same manner as the original appointment. If the method of appointment of arbitrators is not specified in the agreement and cannot be agreed upon by the parties, the entire arbitration agreement shall terminate.
(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/4) (from Ch. 10, par. 104)
    Sec. 4. Majority action by arbitrators.
    The powers of the arbitrators may be exercised by a majority unless otherwise provided by the agreement or by this Act.
(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/5) (from Ch. 10, par. 105)
    Sec. 5. Hearing.
    Unless otherwise provided by the agreement:
    (a) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail not less than 5 days before the hearing. Appearance at the hearing waives such notice. The arbitrators may adjourn the hearing from time to time as necessary and, on request of a party and for good cause, or upon their own motion may postpone the hearing to a time not later than the date fixed by the agreement for making the award unless the parties consent to a later date. The arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. The court on application may direct the arbitrators to proceed promptly with the hearing and determination of the controversy.
    (b) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing.
    (c) The hearing shall be conducted by all the arbitrators but a majority may determine any question and render a final award. If, during the course of the hearing, an arbitrator for any reason ceases to act, the remaining arbitrator or arbitrators appointed to act as neutrals may continue with the hearing and determination of the controversy, unless otherwise provided in the agreement.
(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/6) (from Ch. 10, par. 106)
    Sec. 6. Representation by attorney.
    A party has the right to be represented by an attorney at any proceeding or hearing under this Act. A waiver thereof prior to the proceeding or hearing is ineffective.
(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/7) (from Ch. 10, par. 107)
    Sec. 7. Witnesses, subpoenas, depositions.
    (a) The arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and shall have the power to

710 ILCS 5/ Uniform Arbitration Act.

administer oaths. Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in civil cases.

    (b) On application of a party and for use as evidence, the arbitrators may permit a deposition to be taken, in the manner and upon the terms designated by the arbitrators, of a witness who cannot be subpoenaed or is unable to attend the hearing.

    (c) All provisions of law compelling a person under subpoena to testify are applicable.

    (d) Fees for attendance as a witness shall be the same as for a witness in the Circuit Court.

(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/8) (from Ch. 10, par. 108)
    Sec. 8. Award.
    (a) The award shall be in writing and signed by the arbitrators joining in the award. The arbitrators shall deliver a copy to each party personally or by registered mail, or as provided in the agreement.

    (b) An award shall be made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court orders on application of a party. The parties may extend the time in writing either before or after the expiration thereof. A party waives the objection that an award was not made within the time required unless he notifies the arbitrators of his objection prior to the delivery of the award to him.

(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/9) (from Ch. 10, par. 109)
    Sec. 9. Change of award by arbitrators.
    On application of a party to the arbitrators or, if an application to the court is pending under Sections 11, 12 or 13, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in paragraphs (1) and (3) of subdivision (a) of Section 13, or for the purpose of clarifying the award. The application shall be made within 20 days after delivery of the award to the applicant. Written notice thereof shall be given forthwith to the opposing party, stating he must serve his objections thereto, if any, within 10 days from the notice. The award so modified or corrected is subject to the provisions of Sections 11, 12 and 13.

(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/10) (from Ch. 10, par. 110)
    Sec. 10. Fees and expenses of arbitration.
    Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award.

(Source: Laws 1961, p. 3844.)

    (710 ILCS 5/11) (from Ch. 10, par. 111)
    Sec. 11. Confirmation of an award.
    Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed

**710 ILCS 5/ Uniform Arbitration Act.**

grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13.
(Source: Laws 1961, p. 3844.)

(710 ILCS 5/12) (from Ch. 10, par. 112)
Sec. 12. Vacating an award.)
(a) Upon application of a party, the court shall vacate an award where:
    (1) the award was procured by corruption, fraud or other undue means;
    (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;
    (3) the arbitrators exceeded their powers;
    (4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or
    (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award.
(b) An application under this Section shall be made within 90 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.