**UNITED STATES DISTRICT COURT**
**Northern District of Illinois – Eastern Division**
**Case Number: 1:08-cv-00179**
**Honorable Virginia M. Kendall**

OPTIONSXPRESS, INC.,

    Petitioner,

v.

LINDA HALE,

    Respondent.
_____/

**RESPONDENT'S OPPOSITION TO PETITIONER'S**
**APPLICATION TO VACATE ARBITRATION AWARD**

Respondent, LINDA HALE ("Ms. Hale"), responds to Petitioner's Amended Application to Vacate Arbitration Award (the "AAV"). For the reasons set forth below, the Court should deny the AAV and Petitioner should be sanctioned.

**INTRODUCTION**

Petitioner's sole argument to vacate the arbitration award at issue (the "Award") is that:

> "*[I]t is apparent on the face of the award* that the Arbitration Panel made a gross error of judgment in law and/or gross mistake of fact".

*See* AAV at ¶ 35 (emphasis added).[1]

It is undisputed, however, that the Award contains <u>no</u> rationale and <u>no</u> opinion explaining why the arbitrators decided to hold Petitioner liable for the damages incurred by Ms. Hale. *See* Exhibit A. It is therefore <u>impossible</u> that any alleged errors are "apparent on the face" of the Award. As such, Petitioner's AAV must be denied and Petitioner should be sanctioned.

Petitioner's "apparent on the face of the Award" argument is derived from a fragment of the following sentence from the *only* case Petitioner cites to illustrate what it characterizes as the

---

[1] Respondent's AAV will be cited as "AAV at __".

"standard applied to an Application to vacate an arbitration award" (*see* AAV at page 9):

> "Whenever possible a court must construe an award so as to **uphold** its validity and gross errors of judgment in law or a gross mistake of fact **will not** serve to vitiate an award *unless those errors appear on the face of the award*."

*Garver v. Ferguson,* 76 Ill.2d 1, 10-11 (Ill. 1979) (emphasis added).[2]

Therefore, according to Petitioner's own case, if an arbitration award is *silent* regarding the reasons why the arbitrators decided as they did (as the Award is here), then a reviewing court must uphold the arbitration award – even if the arbitrators made gross errors. Like here, in *Garver* "the arbitrators made no findings of fact or law." *Id.* at 6. Put another way, the arbitration award at issue in *Garver* contained no rationale or opinion. As such, the *Garver* court upheld the arbitration award. *Id.* at 11.[3]

Simply put, *Garver* stands for the uncontroversial and uncontroverted proposition that an arbitration award cannot be disturbed even if an arbitration loser proves that the arbitrators erred. Indeed, the Seventh Circuit has very recently reaffirmed its unanimous precedent that alleged arbitrator errors are not a sufficient basis to vacate an arbitration award. "We repeatedly have stated that we do not -- and will not -- review arbitral awards for legal or factual errors." *Prostyakov v. Masco Corp.,* 06-3928 at p. 11 (7th Cir., January 22, 2008).

Even if alleged arbitrator errors are "gross" such alleged errors are not a sufficient basis to overturn an arbitration award: "Over and over we have held that arbitrator errors -- even clear or **gross** errors -- do not authorize courts to annul awards." *Widell v. Wolf*, 43 F.3d 1150, 1151

---

[2] A copy of the *Garver* opinion is attached as Exhibit B.

[3] As discussed below, it is clear from reading *Garver* that the "apparent on the face of the award" language was meant to address the fact that the arbitration loser there moved to *modify* the award in addition to vacating it. *Id.* at 4 (emphasis added).

(7th Cir. 1994) (emphasis added).[4]

Ignoring this clear precedent, Petitioner engages in a rambling and improper attempt to retry the arbitration. By doing so, Petitioner is requesting this Court substitute its judgment for that of the arbitrators and reach the opposite conclusion that they did – despite the fact that arbitrators reviewed extensive documentary evidence and heard testimony and argument at the four day in-person arbitration Final Hearing.[5]

Petitioner's request that this Court retry the arbitration and correct supposed arbitrators' "errors" is not only contrary to unanimous binding legal precedent but also defeats the goals of arbitration. Arbitration "is supposed to be a speedy inexpensive alternative to litigation." *Paine Webber, Inc. v. Farnam*, 843 F.2d 1050, 1052 (7th Cir. 1988) ("The securities industry insists that its customers sign arbitration agreements, which the Supreme Court has sustained – in part on the premise that it is desirable to have a cheap, quick method to deal with disputes (many too small to justify full scale litigation) this industry produces."). As such, "[j]udicial review of arbitration awards is tightly limited; perhaps ought not be called 'review' at all." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994).

Courts "do not allow a disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision." *Id.* To allow an arbitration loser to retry his case in court "would defeat the purpose of entering into an

---

[4] Indeed, the United States Supreme Court has recently held that even if parties to an arbitration agreement agree that errors can serve as the basis to vacate an arbitration award, a reviewing court is still prohibited from vacating an arbitration award based on arbitrator errors despite the parties' agreement. *Hall Street Assoc., LLC v. Mattel, Inc.*, 06-989 (U.S., March 25, 2008).

[5] If this were not bad enough, Petitioner expects this Court to retry this arbitration based only on Petitioner's version of events. For example, Petitioner has not attached the entire arbitration transcript as an exhibit to its AAV. Rather, Petitioner attached only a very small amount of "excerpts" of the Final Hearing transcript – which Petitioner evidently believes support its arguments (which as discussed below they do not).

arbitration agreement in the first place – and we will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview." *Prostyakov,* 06-3928 at p. 11.

In sum, based on *Garver* alone, Petitioner could not have objectively believed that it would prevail in its attempt to vacate the Award because no alleged errors are "apparent" from "the face of the" Award. Moreover, in light of the unanimous Seventh Circuit precedent discussed above that clearly holds that errors are not a legally recognized basis to vacate an arbitration award; Petitioner should have known that the AAV is meritless. Therefore, in the words of Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), the AAV is not "warranted by existing law" and Petitioner should therefore be sanctioned.[6]

Not only are the above-discussed "merits" of the AAV frivolous and warrant sanctions, Petitioner has purposely delayed payment of the Award. Simply by filing its frivolous AAV, Petitioner has delayed payment of the Award. In furtherance of its goal to delay payment of, and a final disposition on, the Award, Petitioner waited more than four (4) months to serve its frivolous AAV. Petitioner's delay tactics are, in the words of Rule 11, Petitioner's attempt to achieve "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation". As such, Petitioner should be sanctioned for this additional reason.

I. **PETITIONER HAS PURPOSELY DELAYED PAYMENT OF THE AWARD.**

As the arbitration loser, pursuant to Rule 10330(h) of FINRA Dispute Resolution, Inc. ("FINRA"), Petitioner was required to pay the Award or file a motion to vacate within thirty (30) days of receipt of the Award.[7] Months before serving the AAV, Petitioner indicated in a

---

[6] As discussed below, in addition to not being "warranted by existing law", Respondent's AAV is not "well grounded in fact".

[7] FINRA Dispute Resolution, Inc. was formerly known as NASD Dispute Resolution, Inc.

September 12, 2007 letter to FINRA that it had filed an <u>initial</u> application to vacate the Award on -- the thirtieth (30th) day after receipt of the Award.  *See* Exhibit C. In the same letter, Petitioner also indicated that the initial application to vacate was an "enclosure" to that letter.  *Id.*  For whatever reason, Petitioner sent its letter to undersigned counsel "*w/o enclosure*".  *Id.*  For whatever reason, Petitioner sent its letter to FINRA via facsimile and FedEx -- but sent it to undersigned counsel via U.S. Mail.  *Id.*

Due to the different service methods, undersigned counsel did not receive Petitioner's September 12, 2007 letter until September 15, 2007.  In the interim, as he did not know whether Petitioner had paid the Award or filed an application to vacate the Award by the September 12, 2007 deadline, undersigned counsel sent an email to Petitioner on September 13, 2007 in which he inquired if Petitioner had planned to pay the Award or file a motion to vacate.  *See* Exhibit D. In the same email, undersigned counsel offered to accept service of a motion to vacate, to the extent that one was filed.  *Id*.  Petitioner never responded to this email, thereby rejecting the offer to accept service of the purported initial application.

Petitioner was required by Illinois Supreme Rule 102 to serve the initial application within 30 days after filing it.  *See* Exhibit E.  Not only did it have a legal duty to serve its initial application to vacate within 30 days, Petitioner promised FINRA that it would do so:

> "As to … the alleged failure of optionsXpress to serve either [undersigned counsel] or her with a copy of its Application, *optionsXpress will comply with the Illinois Supreme Court Rules as they apply to service of summons, and Hale will be served in due course pursuant to those rules.*" [8]

Petitioner lied.  The *truth* is that Petitioner <u>never</u> served its initial application to vacate.  If Petitioner had accepted the offer to accept service (which was made *one day* after Petitioner

---

[8] *See* Exhibit F at p. 3 – section "B" (emphasis added).  Petitioner has previously referred to this letter as its September 28, 2007 letter.  Petitioner has confirmed that this was a typographical error and that the correct date is September 25, 2007.  *See* Exhibit G.

5

supposedly filed its initial application to vacate) *or* complied with Illinois Supreme Court Rule 102 *or* lived up to its promise to FINRA, a determination regarding the Award would likely already have been made.[9]

Petitioner's delay tactics were for "an improper purpose" – to cause an unnecessary delay in payment of the Award to Ms. Hale -- and violative of Rule 11.  Fittingly, Petitioner's delay tactics have backfired.  In addition to being denied based on its "merits", the AAV should be denied solely because it was not served until four (4) months after the Award was received.

## II.  THE AAV SHOULD BE DENIED BECAUSE IT WAS NOT TIMELY SERVED.

Pursuant to plain language of Section 12 of the Federal Arbitration Act (the "FAA"), Petitioner was required to *serve* -- not file -- the AAV within three (3) months after Petitioner received the Award.  *See Webster v. Kearney*, 507 F.3d 568, 572 (7th Cir. 2007) ("To the extent that our use of the term 'filing' in [previous] cases is misleading, we clarify now and for the purposes for future cases that *service* of a motion to vacate is the act that stops the three-month statute of limitations.  Unless and until Congress amends § 12 … we will continue to enforce the plain language of the statute.") (emphasis in original).

The reason for the FAA's three (3) month statute of limitations for service is to further the goals of arbitration and should therefore be strictly enforced.  "The strictures of section 10 [of the FAA] and section 12 [of the FAA] are designed to afford an arbitration award finality in a timely fashion, promoting arbitration as an expedient method of resolving disputes without resort

---

[9] Recently, Petitioner's counsel has again sought to further to delay payment of the Award.  Specifically, in Petitioner's Status Report and related emails counsel informed that Court that he will require one hundred and twenty (120) days to reach a final disposition of the Award due to his hectic schedule.  *See* Exhibits H and I.  If this were not bad enough, Petitioner misinformed that Court that both "parties" require this exorbitant amount of time.  In any event, given that Petitioner has already filed its AAV and is required to do nothing more than file a Reply to this Response, to the extent that one is appropriate, Petitioner's supposed need for 120 days to do so is not only nonsensical but is also revealing – i.e., Petitioner seeks to further improperly delay payment of the Award.

to the courts." *Prudential Securities Inc. v. Hornsby*, 865 F. Supp. 447, 450 (N.D. Ill. 1994).[10]

The Award was received by the parties on August 13, 2007. *See* Exhibit A. The *only* application to vacate served on Ms. Hale was the AAV. It is undisputed that Petitioner served the AAV on December 14, 2007 -- more than four (4) months after receiving the Award.

To avoid the devastating effect of the FAA's statute of limitations for service of an application to vacate within three (3) months after its receipt of the Award, Petitioner has consistently taken the position that the Illinois Arbitration Act (the "IAA") applies to this Court's review rather than the FAA because there is a choice of law provision in the parties' arbitration agreement. Petitioner is wrong – and it knows it.

The FAA applies to all arbitrations that "involve interstate commerce." FAA § 2. Common sense dictates that interstate commerce was involved in the parties' dispute. The sole issue in the underlying arbitration related to the propriety of allowing an investor in Florida to buy options through a broker located in Illinois on "national" securities exchanges that provide a marketplace for buyers and sellers of options from every state in the United States. Indeed, it is difficult to imagine a dispute that involves "interstate commerce" more than this one.

Case law in the Northern District of Illinois confirms this obvious truism. "It is axiomatic that the purchase and sale of securities relates to interstate commerce." *Prudential Securities Inc. v. Hornsby*, 865 F. Supp. 447 at 449-50 (holding that federal arbitration law governs where an arbitration "arises from a securities brokerage account").[11]

---

[10] Because one of the goals of the FAA is to provide finality of an arbitration award in a timely fashion, the "plain language of § 12 [of the FAA] does not provide for any exceptions …." *See Olson v. Wexford Clearing Services Corp.*, 397 F. 3d 488, 490 (7th Cir. 2005). Indeed, in *Webster,* the court held that an application to vacate was untimely where it was served *only 1 day* after the 3 month statute of limitations. Here, Petitioner served the AAV *more than 31 days* after the FAA's strict 3 month deadline for service.

[11] *See also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (applying the FAA to arbitration conducted pursuant to brokerage account).

If "interstate commerce" is involved, the FAA applies even if an arbitration clause has a choice of law provision that specifies state law as is the case here. Indeed, the Seventh Circuit has stated that *"notwithstanding the parties' choice of law provision in their contract calling for the application of Illinois law*, and irrespective of the fact that this a diversity case, *federal arbitration law governs … a transaction involving interstate commerce."* See *Northern Illinois Gas Co. v. Airco*, 676 F.2d 270, 274-75 (7th Cir. 1982) (emphasis added).[12]

Petitioner has been repeatedly provided by undersigned counsel with the citations to the case law discussed above. This case law directly contradicts Petitioner's statements to this Court -- *with no citation to any authority* -- that the IAA applies to the final disposition of the Award. Petitioner's blatant misstatements and omissions of the law are an attempt to mislead this Court. In any event, the Section 12 of the FAA requires that the AAV be denied for no other reason than Petitioner did not serve it until more than four (4) months after it received the Award.

### III. PETITIONER'S OWN CASE REQUIRES THAT THE AAV BE DENIED.

The *only* case cited by Petitioner in its AAV -- to support Petitioner's "standard applied to an Application to vacate an arbitration award" -- states that "[w]henever possible a court must construe an award so as to uphold its validity and *gross errors of judgment in law or a gross mistake of fact* **will** **not** *serve to vitiate an award* unless those errors appear on the face of the award." *Garver,* 76 Ill.2d 1 at 10-11 (emphasis added). Based on *Garver*, the sole basis to vacate the Award argued by Petitioner in its AAV is that "*it is apparent on the face of the award* that the Arbitration Panel made a gross error of judgment in law and/or gross mistake of fact".

---

[12] S*ee also Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994) ("the FAA governs judicial review of arbitration proceedings notwithstanding any choice of law provision or state law to the contrary") *quoting* WRIGHT AND COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3569 (2d Ed. 1984) ("even in a diversity suit or an action in state court if … interstate commerce is involved, the rules in the [FAA], based as it is on the commerce powers, are to be applied regardless of state law"). Certainly, if the FAA would apply in state court it would apply in this Court.

*See* AAV at 33 (emphasis added).[13]  Petitioner's argument is nonsensical.

It is undisputed that *the Award contains no rationale or opinion* as to why the arbitrators decided to hold Petitioner liable for the damages it caused Ms. Hale.  As such, it is ridiculous for Petitioner to assert that any alleged errors can be "apparent" from "the face of" the Award. Therefore, pursuant to Petitioner's *own case*, even if the arbitrators made gross errors of law or fact (they did not) in finding Petitioner liable for the damages it caused Ms. Hale, the AAV should be denied because such purported errors do not appear "on the face of" the Award.

Even a cursory reading of *Garver* should have revealed to a reasonably competent attorney that the "unless those errors appear on the face of the award" language refers only to "modification" -- and not to vacatur -- of the arbitration award.  Indeed, the *Garver* opinion contains the following quote:  "Nor will a mistake of law or fact by the arbitrators be ground for setting aside the award, *but a mistake in the draft of the award may be reformed so as to conform to the award actually made by the arbitrators.*" *Id.* at 8 (emphasis added).  The reason that this quote is included in the *Garver* opinion is that in *Garver* the arbitration loser moved to *modify* the award in addition to vacating it.  *Id.* at 4.  Given the above, it is more than obvious that the "on the face of the award" language refers to "modification" of an arbitration award -- and has nothing to do with vacatur of an arbitration award.

Because no alleged errors are "apparent on the face of" the Award, what Petitioner is actually asking this Court to do is vacate the Award solely because the arbitrators allegedly made errors.  As Petitioner should know, binding and unanimous precedent explicitly prohibits this:

---

[13] While Petitioner makes passing reference to statutory bases under the IAA, it never identifies what those bases are and never argues that any statutory basis requires the Award to be vacated under either the IAA or the FAA.  Rather, Petitioner's only statement regarding a statutory basis is that "[a]t all times relevant, Section 12 of the [IAA] provided a statutory basis for vacating an arbitration award."  *See* AAV at ¶ 33.

9

"Factual or legal errors by arbitrators – even clear or gross errors – 'do not authorize courts to annul awards.'" *See e.g., Gingiss Intern., Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995).[14]

Based on the above, the AAV must be denied and Petitioner should be sanctioned. This ends the analysis. However, Petitioner's "gross errors are apparent on the face of the award" arguments are replete with so many misstatements, a few are worth mentioning.

### IV.    PETITIONER'S "GROSS ERROR" ARGUMENTS REVEAL THAT PETITIONER IS ATTEMPTING TO MISLEAD THIS COURT.

Ms. Hale's position from the inception of the arbitration through the Final Hearing can be briefly summarized as follows: Because virtually all options strategies are much riskier than buying stocks, FINRA has separate and distinct rules that are applicable to options accounts only. These rules impose a duty on broker-dealers to <u>prevent</u> all but the most sophisticated and/or wealthy investors from buying options trading. Because buying options is very risky, this duty applies at the account opening stage <u>before</u> allowing an investor to open an options account.[15] Petitioner has termed this "pre-account-opening" duty as its "know your customer obligation" throughout the arbitration. Petitioner's pre-account-opening obligation has nothing to do with whether the broker-dealer recommends specific transactions <u>after</u> an options account is open. Petitioner has consistently referred to this "after-the-account-is-open" duty as a "suitability duty". As discussed below, the SEC and FINRA, among others, agree that

---

[14] *See also Prostyakov,* 06-3928 at p. 11; *Baravati*, 28 F.3d 704, at 706; *Widell*, 43 F.3d 1150 at 1151; *Hall Street Assoc., LLC v. Mattel, Inc.*, 06-989 (U.S. March 25, 2008).

[15] FINRA Rule 2860(b)(16)(A) is titled "Approval Required" and states, in pertinent part, "no member … shall accept an order … to purchase … an option contract … ***unless the customer's account has been approved*** for options trading in accordance with the provisions of subparagraphs (B) through (D) hereof. FINRA Rule 2860(b)(16)(B) is titled "Diligence in Opening Accounts" and states, in pertinent part, "[i]n ***approving*** a customer's account for options trading, a member … shall exercise due diligence to ascertain the essential facts relative to the customer, his financial situation and investment objectives. ***Based upon such information***, the [broker-dealer] shall specifically ***approve or disapprove*** in writing the customer's account for options trading. *See* Exhibit J (emphasis added). This rule was admitted into evidence.

Petitioner's "know your customer obligation" is also a suitability duty.

Simply put, the only difference between these *two suitability* duties for options is that one is imposed on broker-dealers *before* allowing an investor to open an options account and the other suitability duty is imposed on a broker-dealer *after* an options account is open and only if the broker-dealer recommends options transactions. The *only* one of these suitability duties at issue in the arbitration was Petitioner's "pre-account-opening" suitability duty.

Ms. Hale alleged, and the arbitrators correctly concluded, that Petitioner breached its "know your customer" suitability duty at the account-opening stage by approving Ms. Hale to buy options in light of Ms. Hale's minimal income, net worth and lack of options buying experience. In other words, if Petitioner had fulfilled its duty to an investor like Ms. Hale it would have prevented her from buying options in the first instance (*i.e.*, disapproved her account for options buying as it was required to pursuant to its "know your customer" suitability duty for options) and she, therefore, would not have incurred the damages that she did – most of which related to her IRA account.[16]

Petitioner argues that the "Panel made a gross error of judgment in law and gross mistake of fact in finding [Petitioner] liable for claims of suitability, because [Petitioner] had only a "know your customer" obligation which it fulfilled." *See* AAV at page 12. Without knowing anything about this case, Petitioner's statement standing alone requires that the AAV be denied. Petitioner admits it had an "obligation" (i.e., duty). Petitioner's admission that it had a duty is

---

[16] Ms. Hale also argued that had Petitioner fulfilled its duty to monitor and supervise her accounts it would have become aware of the drastic losses in her IRA (and other account) and could have corrected its breach of its suitability duty at the account opening stage, and mitigated her damages, by stopping her from buying options after her accounts were open. Contrary to Petitioner's false assertion (*see* AAV at ¶ 49) FINRA's Supervision Rule 2860(b)(20) was admitted into evidence. *See* Exhibit K. It is incredible that Petitioner can assert that "Hale never submitted any authority" imposing a duty on broker-dealers to supervise and review options accounts when at least three of Petitioner's employees where shown the Supervision Rule at the Final Hearing (and admitted under oath that they never undertook the regular review of options accounts mandated by these Rules).

11

critical. At that point, the only questions are whether it breached that duty and if so, whether that breach caused Ms. Hale's damages. Pursuant to clear precedent, the determination of whether Petitioner breached its self-admitted duty is a fact-intensive inquiry left to the arbitrators.

Conflating many unrelated issues, Petitioner mischaracterizes a stipulation by undersigned counsel to argue that "*on the face of the Award*, the Panel made a gross error of judgment in law and gross mistake of fact in finding the [Petitioner] was liable for Hale's claims of suitability, when [Petitioner] had no "suitability" duty and only a "know your customer" obligation – which Hale's counsel conceded." See AAV at ¶ 35 (emphasis added).

In the stipulation that Petitioner relies upon so heavily, undersigned counsel stated, "the only suitability obligation we are talking about [occurs] at the time the account is *open*." See Exhibit K to the AAV at p. 95 (emphasis added). Given the amount of briefing, documentary evidence, testimony and argument regarding this issue, it is inconceivable that Petitioner still believes that the "know your customer" obligation is not a suitability obligation.[17]

Indeed, Petitioner itself used the word "suitability" in connection with its promise to fulfill its duty to determine whether to allow an investor to trade options in the first instance:

> Yes, we ***allow*** prudent trading of options in IRAs based on an investor's individual ***suitability***.[18]

The SEC agrees with Petitioner's concession that it had a suitability duty *before* it allowed Ms. Hale to trade options. Indeed, on the exact page from the SEC's Special Study on the Options Markets that Petitioner cites for a different (and wrong) proposition, it is clear that

---

[17] *See* AAV, Exhibit J at p. 13.

[18] This was Petitioner's response to the following question which was on its website, "Do you allow options trading in optionsXpress IRAs?" This question and answer was admitted into evidence and on a large poster board as a demonstrative exhibit at the Final Hearing. It is interesting to note that at some point shortly after the Final Hearing, Petitioner removed the word "suitability" from its website.

the SEC considers Petitioner's self-admitted "know your customer" obligation to be a suitability duty imposed on a broker-dealer before it allows a customer to trade options:

> "All the options exchanges have adopted rules which require that *before a customer is permitted to trade options*, his brokerage firm must make an *initial determination* that listed options trading is *not unsuitable* for him.

Also on the exact same page of the SEC Study cited by Petitioner, the SEC states the:

> "'[K]now your customer' rule' … requires the *suitability* information be obtained, recorded, *and used* by a brokerage firm in determining whether *to approve* the account for options trading."[19]

In sum, Petitioner concedes it had a "know your customer" obligation. Petitioner also concedes that this was a suitability duty on its website and further concedes that this suitability duty is imposed *before* "allowing" investors to trade options. The SEC agrees that all options firms are required to conduct a suitability analysis at the account opening stage pursuant to the "know your customer" rule. Therefore, even if "gross error of law" were the correct standard to vacate and arbitration award, the arbitrators rightfully concluded that the "know your customer" duty is a suitability duty at the account-opening stage. The arbitrators' fact-intensive conclusion that Petitioner breached its self-admitted suitability duty cannot be disturbed.

As support for Petitioner's (convoluted) argument that the Panel made a gross error in finding it liable for negligence, Petitioner states it "supplied the panel with the breadth of case law confirming, as a matter of law, that [Petitioner] had no duty to Hale other than to properly execute the orders placed in her Accounts … Hale provided no authority … contradicting or contesting this authority." *See* AAV at p. 17 and ¶ 56.

Petitioner's statement that it had "no" duty other than to properly execute orders <u>directly contradicts</u> Petitioner's previous critical admission that it had a "know your customer" suitability

---

[19] Curiously, despite citing it as authority, Petitioner did not attach the above-quoted SEC page as an exhibit to its AAV. For the Court's convenience, this page is attached as Exhibit L (emphasis added).

duty.  Second, Ms. Hale did provide the Panel with authority that imposed a duty on Petitioner to approve or disapprove Ms. Hale to buy options *before* allowing her to open her options accounts and a duty on Petitioner to monitor and supervise her options accounts.  *See* footnotes 14 and 15  Third, suitability -- as that term is defined by Petitioner -- was not an issue in this case.

To be clear, Ms. Hale's negligence claim was based on Petitioner's twin breaches of its self-admitted "know your customer" suitability duty at the account-opening stage and Petitioner's breach of its duty to supervise thereafter – and had nothing to do with whether Petitioner recommended any of the options transactions.[20]

## V.  PETITIONER SHOULD BE SANCTIONED.

By filing a patently frivolous application to vacate in the first place, and then never serving it -- despite its promise (and duty) to comply with Illinois Supreme Rule 102 and the offer to accept service -- Petitioner has accomplished its obvious purpose:  to delay payment of the Award.  Petitioner's delay tactics are contrary to the goals of arbitration.  Such tactics are sanctionable.  In addition to Petitioner's delay tactics in serving it, the AAV is meritless.

The Seventh Circuit has warned lawyers to "take heed!" before moving to vacate an arbitration award.  This warning to "take heed!" is because a "long line of Seventh Circuit cases

---

[20] Regarding damages, Petitioner states, "[i]n light of the fact that the ***undisputed*** evidence confirmed, and the Panel had been informed, that there were virtually no losses, the Panel made a gross mistake of fact in awarding $175,000 in compensatory damages to Ms. Hale." *See* AAV at ¶ 66 (emphasis added). Petitioner's audacity is astounding.  Petitioner evidently expects this Court to believe that the evidence was "undisputed" that Ms. Hale had no damages.  Of course, the truth is that Ms. Hale ***hotly disputed*** the amount of her damages throughout this case.

Undersigned counsel offered into evidence Petitioner's own documents to support a large portion of Ms. Hale's damages.  Additional evidence was adduced through testimony of Petitioner's own witnesses.  In his closing argument, undersigned counsel presented to the Panel an exhibit based on this evidence that broke down Ms. Hale's compensatory damages into several non-overlapping categories.  In any event, the arbitration Panel's damages calculation is not "apparent" from "the face of the Award."  So, even if Petitioner is awkwardly requesting that the Court *modify* the Award due to an alleged math error, it should be denied.

[has] discouraged parties from challenging arbitration awards where the challenge was substantially without merit." *CUNA Mut. Ins. V. Office & Prof. Employ.*, 443 F.3d 556, 561 (7th Cir. 2006). This "long line" of "precedent is *clear and emphatic and directs* [the Court] to [award] sanctions" here -- because the AAV is "meritless and [was] very unlikely to succeed in light of the "straight-forward case law relevant to [Petitioner's] claims". *Id.* (emphasis added).

One sanction should be the attorney's fees/costs Petitioner has forced Ms. Hale to unnecessarily incur in protecting her Award. This sanction is not enough, however, as it would only put Ms. Hale back in the same position she would have been had Petitioner not filed its frivolous (initial and) AAV and timely paid the Award. Given the egregious facts here, Petitioner should be ordered to pay additional sanctions directly to Ms. Hale for the emotional distress it intentionally inflicted on her.

Evidence adduced at the arbitration hearing showed that Ms. Hale has virtually no income and no savings. Ms. Hale desperately needs the money she was rightfully awarded – and Petitioner knows it. The AAV is meritless and Petitioner therefore could not have objectively believed it could vacate the Award. Merely filing the frivolous initial and AAV was bad enough as it unnecessarily delayed payment of the Award to Ms. Hale. Combined with Petitioner's inexcusable delay tactics in serving the frivolous AAV, amounts to nothing more than a mean-spirited attempt to cause Ms. Hale stress and anxiety.

Unfortunately for Ms. Hale, Petitioner's dirty tricks have worked as they have caused Ms. Hale's financial and physical health to deteriorate since Petitioner's frivolous initial application to vacate was filed seven months ago. "[A]n appropriate sanction in cases of this sort should [not] be limited to the actual costs shouldered upon" Ms. Hale. *See Reuter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 2:06-CV-868-VEH at p. 22 (S.D. Ala. July 18, 2006).

## **CONCLUSION**

For the reasons set forth above, the Court should deny the AAV and sanction Petitioner.

        Respectfully submitted,

        NEIL B. SOLOMON P.A.

By: /s/ Neil B. Solomon
    Neil B. Solomon, IL Bar No.: 6243930
    4174 St. Lukes Lane
    Jupiter, FL 33458
    Tel: 561-762-4991
    Fax: 561-626-2721
    Email: neilbsolomonesq@gmail.com

*Attorney for RESPONDENT LINDA HALE*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via transmission of Notice of Electronic Filing generated by CM/ECF this 31st day of March 2008 to:

Jeffry M. Henderson, Esq.
Robert Christie, Esq.
Henderson & Lyman
175 West Jackson, Suite 240
Chicago, IL 60604
Phone:  312-986-6960
Fax:  312-986-6961
Email: rchristie@henderson-lyman.com
       jhenderson@henderson-lyman.com

        /s/Neil B Solomon
        Neil B. Solomon