UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OPTIONSXPRESS, INC., <br><br> Petitioner, <br><br> v. <br><br> LINDA HALE, <br><br> Respondent. | Docket No. 08 CV 179 <br><br> Virginia M. Kendall, Judge |

**PETITIONER'S REPLY
IN SUPPORT OF ITS AMENDED APPLICATION TO VACATE**

Petitioner optionsXpress, Inc. ("optionsXpress"), as its reply in support of its Amended Application to Vacate (the "Application" or "Application to Vacate"), states as follows:[1]

**Introduction[2]**

Respondent Linda Hale ("Hale") has attempted to establish a two-prong attack against optionsXpress' Application to Vacate, neither of which is supported under the law. First, Hale alleged that no gross error could be evident on the face of the arbitration award (the "Award"), because the Award was not a reasoned award, wherein an arbitration panel would typically set forth its reasons for finding a party liable. (Hale's Resp. at 1) Second, Hale alleged that the Federal Arbitration Act ("FAA") preempted the use of the Illinois Uniform Arbitration Act (the

---

[1] On May 1, 2008, optionXpress filed a motion requesting leave of Court to amend its Application to Vacate. Pursuant to the Court's Order dated April 24, 2008, that motion will be fully briefed by May 8, 2008.

[2] Citations to Exhibits will be formatted as "Application Exhibit ___," for exhibits attached to optionsXpress' Amended Application to Vacate, "Resp. Exhibit ___," for exhibits attached to Hale's Response in Opposition to Hale's Application to Vacate Arbitration Award, and "Exhibit ___," for exhibits attached to this Reply.

"Illinois Arbitration Act," 710 ILCS 5/1 *et seq.*, because the underlying matter involved interstate commerce, and as a result, she was not properly served with the Application to Vacate. (Hale's Resp. at 7)

As to her first prong, Hale failed to advise the Court that she stipulated at the underlying arbitration hearing that the only claim at issue against optionsXpress was based on an alleged violation of the Chicago Board Options Exchange Rule 9.7 titled "Opening of Accounts" ("CBOE Rule 9.7"), which is commonly referred to as the "know your customer" rule. (*See* **Application Exhibit K** at 95-96, wherein Hale's attorney stipulated that CBOE Rule 9.7 was the only claim against optionsXpress that she had submitted to the Panel for resolution) A different rule, CBOE Rule 9.9, addresses suitability, and it is titled "Suitability of Recommendations." In confirming Hale's stipulation, and recognizing the fact that a cause of action for suitability had been waived, the Chairman of the Panel reminded the parties during the hearing that "[f]or the record . . . there is a stipulation that [CBOE] Rule 9.9 is not applicable to these proceedings." (**Exhibit 1** at 99) By limiting her claim to an alleged violation of CBOE Rule 9.7, Hale waived her causes of action for suitability, breach of contract, failure to supervise, and negligence.

Notwithstanding Hale's stipulation that no causes of action were submitted to the Panel for resolution, other than her claim for a violation of CBOE Rule 9.7, the Award specifically provided that optionsXpress was "found liable for [Hale's] claims of suitability, breach of contract, failure to supervise, and negligence." (**Application Exhibit C** at 3) Thus, on the face of the Award, it was evident that the Panel made a gross error of law in ignoring Hale's stipulation and waiver, and in the alternative, as explained in optionsXpress' Second Amended Application to Vacate currently pending before the Court (*See* note 1 above), the Panel exceeded its powers by ruling on matters not submitted to it for resolution.

2

Hale's second prong, that the FAA applied because the underlying matter involved interstate commerce, is equally disingenuous, because it has been well established that the parties can opt-out of the FAA and choose to be governed by a state arbitration act, provided that the state arbitration act chosen by the parties does not contain provisions that undermine the federal act's aim of facilitating the resolution of disputes by arbitration. There has been no allegation in this action that the Illinois Arbitration Act undermines the FAA's aim.

## ARGUMENT

I. **The Illinois Arbitration Act Applies in the Instant Matter, because: (A) the FAA Does Not Preempt a State's Arbitration Act, (B) the Parties Agreed to Opt-Out of the FAA and Apply the Illinois Arbitration Act, and (C) the Illinois Arbitration Act's Filing Requirements Determine the Timeliness of optionsXpress' Application.**

*A.    The FAA does not preempt the field.*

The FAA does not preempt a state's arbitration act, even if the underlying matter involves interstate commerce. Hale's sole basis for her allegation that the FAA must be applied in this matter is her allegation that "[i]f 'interstate commerce' is involved, the FAA applies even if an arbitration clause has a choice of law provision that specifies state law as is the case here." (Hale's Resp. at 8) Such an assertion is not only disingenuous; it is not supported by existing law. As explained in a recent decision by the Seventh Circuit of the Circuit Court of Appeals in *Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 550 (7th Cir. 2008) (following *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476-79 (1989), "parties can opt out of the federal act, provided the state arbitration statute does not contain provisions that would undermine the federal act's aim of facilitating the resolution of disputes involving maritime or interstate commerce by arbitration." Hale has not alleged, nor could she allege, that the provisions contained in the Illinois Arbitration Act

3

undermine the FAA's aim.

The substantive law of Illinois requires the same result. As explained by the court in *Glazer's Dist. of Ill., Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 421, (1st Dist. 2007), "[i]n circumstances where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved." Accordingly, the FAA does not preempt the use of the Illinois Arbitration Act in the instant case.

    **B.**    **The Arbitration Provision in the Parties' Agreement Provided for the Application of the Illinois Arbitration Act in This Matter.**

Through their written agreement (the "Customer Agreement"), the parties agreed that any dispute between them would be resolved through arbitration, and that the Illinois Arbitration Act would apply to the enforcement of the agreement.[3] In fact, Hale does not dispute optionsXpress' contention that "the Illinois Arbitration Act . . . applies to this Court's review rather than the FAA because there is a choice of law provision in the parties' arbitration agreement." (Hale's Resp. at 7) Hale merely asserts that the parties' choice of law provision contained in the

---

[3]    At all times relevant, the parties' Customer Agreement contained an arbitration provision, which provided as follows:

    **46. Arbitration Provisions**

    Agreement to Arbitrate Controversies:
    You agree that any and all controversies which may arise between you and optionsXpress or any of our officers, directors, employees, agents, subsidiaries or affiliates including but not limited to those involving transactions of any kind made on your behalf by, through or with optionsXpress . . . shall be determined by arbitration, [and the] laws of the State of Illinois will govern the interpretation and enforcement of the terms of this agreement, and you further consent to the jurisdiction of the State of Illinois over you individually. . . .

(Exhibit 2 at 12)

4

Customer Agreement's arbitration clause (the "Arbitration Clause") is moot because the FAA preempts the Arbitration Provision's choice of law. (Hale's Resp. at 8) As explained in Part I.A above, the FAA does not preempt the parties' intent, as reflected in the Arbitration Provision, to be governed by the Illinois Arbitration Act.

### i.   *Application of Law in a Diversity Suit*

It is well established that a "federal court sitting in diversity [applies] state law to resolve substantive questions and federal law to resolve procedural and evidentiary issues," and the interpretation of the Arbitration Provision is a substantive question that is decided under Illinois law. See *Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006)(citations omitted); *See also International Merger & Acquisition Consultants, Inc. v. ARMAC Enter., Inc.*, 531 F.2d 821, 824 (7th Cir. 1976)(holding that the interpretation of the terms of a contract is a substantive question to be decided by Illinois law).

The duty of a federal court considering a claim under its diversity jurisdiction is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). However, if the state's highest court has decided the issue, then that decision "terminates the authoritative force of [a federal court's] decisions interpreting state law, for under *Erie* [a federal court's] task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Relevant to the instant case, the Illinois Supreme Court, in ruling on issues concerning the confirmation or vacation of arbitration award, has refused to follow federal cases interpreting the FAA in cases where the Illinois Arbitration Act applies. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 390-91 (1991).

*ii.*     ***Application of the Illinois Arbitration Law Under State Law.***

Under the substantive law of the State of Illinois, "[i]n circumstances where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved." *Glazer's Dist. of Ill., Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 421-22, (1st Dist. 2007)(finding that the Supreme Court's decision in *Mastrobuno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 55 (1995), did not alter its decision that a choice of law provision in an arbitration provision provided that the Illinois Arbitration Act would applied). In fact, it is well established that under Illinois law, the Illinois Arbitration Act shall apply to any arbitration agreement or arbitration provision that expressly provides that Illinois law shall apply. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 7 Ill. Dec. 583, 2008 Ill. App. LEXIS 6 *22-23 (1st Dist. 2008 (following *Volt Info. Sci., Inc. v. Board of Tr. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), in finding that a choice of law provision in an arbitration provision mandates the application of the Illinois Arbitration Act); *See also State Farm Mut. Auto. Ins. Co. v. George Hyman Constr. Co.*, 306 Ill. App. 3d 874, 880-81 (1999)(following *Volt*, and distinguishing *Mastrobuno v. Shearson Lehman Hutton, Inc.* 414 U.S. 52 (1995), in finding that the Illinois Arbitration Act applied to the arbitration provision based on the choice of law provision contained in the parties' agreement).

*iii.*     ***The Intent of the Parties in the Instant Action.***

In the instant case, the Arbitration Provision specifically provided that the enforcement of the Customer Agreement, which the parties agreed must be through arbitration, shall be in accordance with Illinois law. **(Exhibit 1** at 12) The inclusion within the Arbitration Provision that Illinois law was to apply to the enforcement of the Arbitration Provision clearly demonstrated the specific intent of the parties that the Illinois Arbitration Act, a substantive law

of the State of Illinois, would be applied in any dispute between the parties. *See BEM I, L.L.C. v. Anthropologie, Inc.*, 2000 U.S. Dist. LEXIS 18360 at *19, No. 98 C 358 (N.D. Ill. Dec. 15, 2000) (citing S*tate Farm Mut. Auto. Ins. Co. v. George Hyman Constr. Co.*, 306 Ill. App. 3d 874, 880-81 (1999)); *see also Walz v. Federal Ins. Co.*, 2004 U.S. Dist. LEXIS 22125 at *3, No. 04 C 2286 (N.D. Ill. Jul. 28, 2004)(holding that "[w]hen a choice of law provision or other indicia of which state's law applies to a contract is found <u>outside</u> the terms of an arbitration clause or agreement, the FAA applies unless the parties expressly specify that state law applies to the arbitration agreement" (emphasis added)). Here, Illinois law was provided for in the Arbitration Provision, and expressly stated that the enforcement of the agreement would be according to Illinois law.

II. **The Application to Vacate Was Timely Filed in This Matter, and Hale Was Timely Served With Process.**

   A. *Under the Illinois Arbitration Act, an Application to Vacate is Timely if Filed With the Court Within 90 Days of the Entry of the Award.*

The Application to Vacate was timely because it was filed within 90 days of the entry of the Award. At all times relevant, section 12(b) of the Illinois Arbitration Act, the applicable provision for vacating an arbitration award, provided, in part, that an application to vacate "shall be made within 90 days after delivery of a copy of the award to the applicant." There is no dispute that the Award was entered on August 13, 2007, and subsequently delivered to the parties' attorneys. There should also be no dispute that optionsXpress' original application to vacate was filed on September 12, 2007, approximately one month after the entry of the Award. Upon receipt of the transcripts for the four days of the arbitration hearing, optionsXpress subsequently amended its application for the purpose of incorporating citations to the record, and

that amended application was filed on November 27, 2007, which is the Application currently at issue in this matter.[4] Establishing a full record for the Court, which may have caused delays as a result of transcribing hearing tapes and incorporating relevant portions of the transcripts into the record, can hardly be characterized as an evil motive.

Unlike the Federal Arbitration Act, under the Illinois Arbitration Act, a determination of the timeliness of an application to vacate an award is based on the date the application was <u>filed</u> with the court and <u>not</u> when it was <u>served</u> on the other party. As explained by the court in *Hough v. Howington*, 254 Ill. App. 3d 452, 457 (1st Dist. 1993), although the opposing party was not served with an application to vacate until more than 90 days of the receipt of the arbitration award, the application to vacate was filed within the 90-day period and the filing – not service – of the application to vacate is relevant for timeliness purposes. *See also Schroud v. Van C. Argiris & Co.*, 78 Ill. App. 3d 1092, 1096 (1st. Dist. 1996) (holding that "Section 12 [of the Illinois Arbitration Act] . . . requires any petition to vacate upon these grounds to be <u>filed</u> within the ninety-day period") (emphasis added). Because optionsXpress original application to vacate was filed approximately one-month after the entry of the Award -- well within the temporal limitations mandated by the Illinois Arbitration Act -- its Application to Vacate was timely, notwithstanding the fact that Hale was not served within the 90-day period.

---

[4] Hale's complaint that the transcripts provided to the Court were not complete and only included those sections that were favorable to optionsXpress is frivolous, because Hale had equal opportunity to purchase the transcripts. Through e-mails dated February 14, 2008 and April 25, 2008, optionsXpress' attorney advised Hale's attorney that copies of the hearing tapes could be ordered from FINRA, the arbitration forum, and that the transcripts could be ordered from the court reporter employed by optionsXpress. True and correct copies of the relevant portion of the February 14 and April 25, 2008 e-mails are attached hereto as **Exhibit 3**.

B.  **The Application to Vacate was Timely Served, and Service was not In Violation of Illinois Supreme Court Rule 102.**

Hale misstated the law with regard to Illinois Supreme Court Rule 102. Hale's allegation that optionsXpress violated Illinois Supreme Court Rule 102 by failing to serve her within 30 days of filing is disingenuous. At all times relevant, Illinois Supreme Court Rule 102, which concerns the issuance and service of summons, provided in part, as follows:

> (b) *When Service Must Be Made.* No summons in the form provided in paragraph (d) of Rule 101 may be served later than 30 days after its date. A summons in the form provided in paragraph (b) of Rule 101 may not be served later than three days before the day for appearance.

There should be no dispute that an Alias Summons was issued in the underlying state court action on November 27, 2007, and that Hale was served with process on December 14, 2007, less than 17 days after the Alias summons was issued. Attached hereto as **Exhibit 4** is a true and correct copy of the Alias Summons and the process server's affidavit of service indicating the date and time service was made on Hale. Accordingly, Hale was served well within the temporal limits of Illinois Supreme Court Rule 102.

Even where diligence in serving the other party is at issue, Illinois courts have found periods well beyond the 12-week span between optionsXpress filing its original application and its service on Hale far to short to show any prejudice on the other party to warrant sanctions. *See Segal v. Sacco*, 175 Ill. App. 3d 504, 506 (1st Dist. 1988) (finding that "the overall pattern of cases indicates the time here [19 weeks] was simply too short to permit dismissal with prejudice of the entire action"); *see also Schultz v. McElroy*, 9 Ill. App. 3d 940, 943 (1st Dist. 1973) (finding seven months after the summons was returned not served is not unreasonable period of time in which to obtain service). In the instant case, optionsXpress provided the underlying state court with constructive notice that optionsXpress would be ordering transcripts to the arbitration

9

hearing and incorporating citations to the record, based on those transcripts, in an amended application. Furthermore, optionsXpress' efforts to serve Hale were frustrated by Hale's attorney and by Hale's relocation of her residence requiring optionsXpress to locate her under a residence in the name Pascotti in order to serve her.

While it is true that Hale's attorney sent an e-mail to optionsXpress' corporate counsel on Thursday, September 13, 2007, offering to accept service, that e-mail was not sent until after the close of business on that day, and neither optionsXpress nor optionsXpress' attorneys actually received that e-mail until the morning of Friday, September 14, 2007. (*See* **Exhibit 5**) Hale's attorney admitted that he made that offer without any knowledge that optionsXpress had filed an application to vacate. (*See* Hale's Resp. at 5) In her Response filed with this Court, Hale acknowledged that her attorney, Neil Solomon, first learned of optionsXpress' Application to Vacate on Saturday, September 15, 2007. (Hale's Resp. at 5) Upon learning that optionsXpress had filed its Application to Vacate, Hale's attorney sent an e-mail to optionsXpress on Tuesday, September 18, 2007, three business days after offering to accept service, wherein he revoked his offer to accept service. (*See* **Exhibit 6**) The limited temporal scope of Neil Solomon's offer underscores the disingenuousness of his offer.

In addition, unbeknownst to optionsXpress, Hale moved out of her residence after she closed her account with optionsXpress, and optionsXpress had no forwarding address for Hale. In fact, it was later leaned, through a process server employed by optionsXpress, that Hale's new residence was not listed in her name, but rather was listed under the name of "Pascotti." (*See* **Exhibit 4** at 2) The fact that optionsXpress would have difficulty finding Hale to serve her with a copy of the Application to Vacate may have played an important role in Hale's attorney's revocation of his offer to accept service, as Hale's attorney knew, or should have known, it

would be difficult to run a skip trace to locate her new residence, especially in light of the fact that her residence was listed under a different name. Inexplicably, despite his professed desire for judicial efficiency and economy, to this day Hale's attorney has never explained why he withdrew his offer to accept service. Accordingly, Hale has no basis to complain that she was not timely served or that she suffered any prejudice from a delay in service, especially after her attorney inexplicably revoked his offer to accept service upon learning that optionsXpress had filed its application to vacate.

III.  **The Panel's Gross Errors of Law Clearly Appear on the Face of the Award, Which Shows the Panel Manifestly Disregarded the Law Concerning Hale's Stipulation and that the Panel Exceeded Its Authority in Ruling on Issues That Were Not Submitted to It for Resolution.**

The Award was not "silent regarding the reason why the arbitrators decided as they did," and the Award specifically stated that the Panel found optionsXpress liable for causes of action for suitability, breach of contract, failure to supervise, and negligence – all of which had been expressly withdrawn by Hale. (*See* Hale's Resp. at 2, **Application Exhibit C** at 3) By ruling on causes of action that were no longer in dispute, the Panel manifestly disregarded the law and exceeded its authority. At all times relevant, the Arbitration Provision contained in the parties' Customer Agreement provided, in part, that the parties "agree[d] that any and all controversies which may arise between [Hale] and optionsXpress . . . including but not limited to those involving transactions of any kind made on your behalf by, through or with optionsXpress . . . shall be determined by arbitration. . . ." Simply put, the parties agreed to arbitrate only those issues that were in dispute.

At the arbitration hearing Hale, through her attorney, stipulated that the only claim at issue against optionsXpress was based on an alleged violation of the Chicago Board Options

11

Exchange Rule 9.7 ("CBOE Rule 9.7"), referred to by the CBOE Rules, and commonly called, the "know your customer" rule. (*See* **Application Exhibit** at 95-96) Through Hale's stipulation, the only claim against optionsXpress submitted to the Panel for resolution was the "know your customer" rule, not the causes of action for "1) suitability; 2) breach of contract; 3) failure to supervise; and 4) negligence" that Hale originally asserted in her Statement of Claim. (*See* **Application Exhibit C** at 2) By limiting her claim to an alleged violation of CBOE Rule 9.7, Hale waived her causes of action for suitability, breach of contract, failure to supervise, and negligence. In confirming that waiver, the Chairman of the Panel reminded the parties during the underlying hearing that "[f]or the record . . . there is a stipulation that [CBOE] Rule 9.9 is not applicable to these proceedings." (**Exhibit 1** at 99) CBOE Rule 9.9 is commonly called the suitability rule.

The foregoing notwithstanding, by expressly stating in the Award that the Panel had found optionsXpress liable for suitability, breach of contract, failure to supervise, and negligence, all of which where were affirmatively waived by Hale, it is clear on the face of the Award that the Panel manifestly disregarded the law concerning Hale's waiver of her causes of action and the scope of the parties' arbitration agreement, in that the Panel ruled on matters that were not in dispute.

The Panel exceeded its powers by deciding issues that were no longer in dispute, and thus not submitted to the arbitrators for resolution. It has long been the rule in the State of Illinois that an arbitration award may be vacated where the arbitration panel exceeded its powers, and an arbitration panel exceeds its power when it decides matters that were not submitted by the parties for resolution. *Himco Sys. v. Marquette Elecs., Inc.*, 86 Ill. App. 3d 476, 480 (1st Dist. 1980); *see also Heatherly v. Rodman & Renshaw, Inc.*, 287 Ill. App. 3d 372, 375 (1st Dist. 1997) (following

12

that well-established rule that "[a]n arbitrator exceeds her authority when she decides matters that were not admitted to her"). A court can look beyond the face of an award to determine if the arbitrators exceeded their powers. *See Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 550 (7th Cir. 2008) (finding that the arbitrator had exceeded his powers by failing to follow Wisconsin law, although such a violation <u>was</u> <u>not</u> apparent on the face of the award). Accordingly, the Panel's Award should be vacated because "an arbitrator's award is binding only on the issues submitted to him and decided by him within the scope of the powers enumerated in the agreement. If the arbitrator exceeds his authority under the contract, the decision is void and unenforceable to the extent such power is exceeded." *Nuest v. Westinghouse Air Brake Co.*, 313 F. Supp. 1228, 1234 (S.D. Ill. 1970).

IV.   **Hale's Attempt to Re-characterize Her CBOE Rule 9.7 Claim as a Suitability Claim Fails as a Matter of Law, Because the "Know Your Customer" Rule, in a Securities Contest, is Not a Suitability Claim.**

As a matter of law, Hale's claim that optionsXpress violated CBOE Rule 9.7 is not a claim for suitability, because suitability, in a securities context requires an unsuitable trading recommendation. It has been well established that, in a securities context, a fundamental element required for a suitability claim is a showing that the broker made a recommendation to buy or sell a specific security. *Parsons v. Hornblower & Weeks-Hemphill, Noyes,* 447 F. Supp. 482, 495 (M.D.N.C. 1977). Accordingly, any attempt by Hale to recast a violation of the "know your customer" rule into a suitability claim fails at the outset, because Hale stipulated that <u>none</u> of the trades placed in her account were recommended by optionsXpress. (*See* **Application Exhibit J** at 14, wherein Hale, through her attorney, "stipulate[d] on the record [that] OptionsXpress made no specific recommendations for any specific transactions"). Hale has

failed to provide (because she cannot) any case law in her Response showing that a cause of action for suitability does not require a recommendation to buy or sell a particular security. (*See* Hale's Resp. at 10-14, wherein Hale fails to cite to any case law at all for her contention that a suitability claim and a "know your customer" claim are one in the same)  On the other hand, optionsXpress has provided a plethora of case law in its Application to Vacate (and to the Panel in its Brief in Support of its Motion to Dismiss) showing that a recommendation to buy or sell a particular security is a fundamental element to a "suitability" claim. (*See* Application at ¶¶ 48-52)

V.  **Hale Cannot prevail on a Claim for a Violation of CBOE Rule 9.7, Because There is No Private Right of Action for a Violation of an Exchange Rule.**

In its Application to Vacate, optionsXpress provided the Court with ample legal authority for the proposition that an investor does not have a private right of action for a violation of an exchange rule, such as CBOE Rule 9.7 and rules of the National Association of Securities Dealers, NASD, absent a finding of fraud.[5] (*See* Application at ¶¶ 60-63)  Hale has failed to address that issue in her Response, because Hale, as a matter of law, has no ground to assert a cause of action for a violation of CBOE Rule 9.7.[6]  Yet, Hale stipulated that CBOE Rule 9.7 was the only claim against optionsXpress that she was submitting to the Panel. (*See* **Application Exhibit K** at 95-96)  Because Hale's sole claim against optionsXpress was based on CBOE Rule 9.7, an exchange rule, and because no private right of action exists to assert that claim, no Award

---

[5] Claims of fraud or causes of action sounding in fraud were never alleged by Hale nor raised during the arbitration, nor was any reference to fraud alleged in the Award.

[6] It is worth noting that in her Response, Hale did not allege that optionsXpress breached the Customer Agreement, failed to supervise her account, or was negligent in handling her account, nor did she address optionsXpress' allegations that the Panel manifestly disregarded the law in finding optionsXpress liable on those causes of action.

could be entered against optionsXpress on that claim, and any finding of liability against optionsXpress on other claims in the underlying arbitration would be a manifest disregard of the law.

## CONCLUSION

Based on foregoing, it is evident that the Arbitration Clause governing the enforcement of the parties' agreement provided for the application of the Illinois Arbitration Act and the Federal Arbitration Act did not preempt the field, that the Application was timely filed and Hale was timely served with process, and that there were no substantial delays in this matter. In addition, the record reflects that the arbitration Panel's error, either by manifestly disregarding the law or by exceeding its powers, was evident on the face of the award because Hale waived the claims upon which the Panel found optionsXpress liable, and Hale had no private right of action to claim damages for an alleged violation of an exchange rule. Accordingly, there are no grounds to support a sanction in this matter, and there are ample grounds for this Court to vacate the arbitration Award.

Respectfully submitted,

OPTIONSXPRESS, INC.

By: __/s/ Robert B. Christie____
     One of Its Attorneys

Jeffry M. Henderson
Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6960
jhenderson@henderson-lyman.com
rchristie@henderson-lyman.com

Hillary Victor, Corporate Counsel
optionsXpress Holdings, Inc.
311 West Monroe Street, Suite 1000
Chicago, Illinois 60606
312-267-6627
hvictor@optionsxpress.com

15

## CERTIFICATE OF SERVICE

To:  Neil B. Solomon, Esq.
    4174 St. Lukes Lake
    Jupiter, Florida 33458

    I hereby certify that on May 8, 2008, I electronically filed <u>Petitioner's Reply in Support of Its Amended Application to Vacate</u> with the Clerk of the Court using the CM/ECF system, and pursuant to Local Rule LR5.9, served the above reference counsel of record through the Court's transmission facilities.

                                                         /s/   Robert B. Christie
                                                         Robert B. Christie

Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6957