UNITED STATES DISTRICT COURT
Northern District of Illinois – Eastern Division
Case Number: 1:08-cv-00179
Honorable Virginia M. Kendall

OPTIONSXPRESS, INC.,

    Petitioner,

v.

LINDA HALE,

    Respondent.

_____/

### RESPONDENT'S MOTION TO STRIKE PORTIONS OF PETITIONER'S REPLY IN SUPPORT OF ITS AMENDED APPLICATION TO VACATE

Respondent, LINDA HALE ("Ms. Hale"), moves to strike Sections III, IV and V; the Introduction; and the Conclusion of Petitioner's Reply In Support of Its Amended Application To Vacate (the "Reply"). For the reasons set forth below, the Court should grant Ms. Hale's Motion to Strike.

**I.**     **Petitioner's Counsel Should Not Be Allowed To Rule On Its Own Motion To Amend.**

Petitioner's Amended Application to Vacate Arbitration Award (the "AAV") contains a section titled "The standard applied to an Application to vacate an arbitration award." The following is that section in its entirety:

> 33.   At all relevant times, Section 12 of the [Illinois Arbitration] Act (the "IAA") provided *a* statutory basis for vacating an arbitration award. 710 ILCS 5/12 (emphasis added).
>
> 34.   In addition to *the* statutory basis for vacating an award under 710 ILCS 5/12, Illinois Court (*sic*) have also held that an award may be vacated as a result of an arbitrator's gross error of judgment of law or gross mistake of fact if those mistakes or errors are apparent upon the face of the award. *Garver v. Ferguson,* 76 Ill. 2d 1 at (*sic*) 10-11 (1979) (emphasis added).
>
> 35.   In the instant case, based on the record and applicable law, it is apparent on the face of the award that the Arbitration Panel made a gross

    error of judgment in law and/or gross mistake of fact in arriving at their finding that optionsXpress was liable for failure to supervise, suitability, negligence, and breach of contract.

  Petitioner's counsel is wrong.  Rather than one (1) statutory basis, Section 12 of the IAA contains five (5) statutory bases.  In its AAV, however, Petitioner's counsel *never* argues *any* of the statutory bases applies in the "instant case".  Indeed, Paragraph No. 33 is the *only* instance its entire 69-paragraph AAV where Petitioner's counsel even references a statutory basis.  Ms. Hale did not address any statutory basis to vacate in her Opposition to the AAV because none was ever specified by Petitioner's counsel.

  According to the AAV, the *sole* basis to vacate that applies to the "instant case" is that the arbitrator's made errors.  This issue has been fully addressed in Ms. Hale's Opposition to the AAV.  As stated therein, arbitrator errors have been rejected by every court that has addressed this issue – including *Garver* and the United States Supreme Court.  Perhaps this is why, despite being the *sole case* cited for its only basis to vacate to the Award in its AAV, *Garver* is conspicuously absent from the Reply.

  In the Reply, Petitioner's counsel not only abandons *Garver* (and does not cite any other case that supports its sole basis in the AAV that arbitrator errors can vacate arbitration award), Petitioner's counsel raises a brand-new basis to vacate the $175,000 arbitration award in favor of Ms. Hale (the "Award").  This brand-new basis to vacate was never even mentioned by Petitioner's counsel until its very recently filed Motion for Leave to Amend Petitioner's Amended Application to Vacate Arbitration Award (the "Motion to Amend").  Specifically, in the Motion to Amend Petitioner counsel seeks to add a <u>statutory</u> basis -- that the arbitrator's exceed their powers -- to its *sole* <u>non-statutory</u> (and non-existent) basis -- that the arbitratror's made errors -- contained in Petitioner's in AAV.

Rather than wait for the Court to rule on its Motion to Amend, Petitioner's counsel has included the brand-new statutory basis in its (so-called) Reply. By doing so, Petitioner's counsel has usurped the Court's authority and has effectively ruled on its own Motion to Amend.

Incredibly, despite the fact that it acknowledges that Motion to Amend is "currently pending before the Court", Petitioner's counsel specifically refers to its Second Amended Application to Vacate (the "2nd AAV") (which is an exhibit to its Motion to Amend) in its Reply to support its brand-new argument that "the Panel exceeded its powers by ruling on matters not submitted for it for resolution." *See* Reply at page 2. Even more incredibly, to support its brand-new basis to vacate the Award, Petitioner's counsel has attached an excerpt of the arbitration transcript that it has *never* referred to before and has *never* been seen by undersigned counsel and the Court until now! *See* Reply, Exhibit 1. Petitioner's counsel has included this brand-new excerpt despite its representation to the Court that:

> "No new facts will be introduced nor are any facts required to support the amendment."

*See* Motion to Amend at page 3.[1]

Petitioner's counsel's antics have rendered the Motion to Amend moot unless the Court strikes the Reply. Even if the Court denies the Motion to Amend -- which is the first time that Petitioner's counsel's brand-new statutory basis was raised -- Petitioner's counsel's brand-new basis will be before the Court if those portions of the Reply that refer to the brand-new statutory basis are not stricken. Ms. Hale has no concern that the brand-new statutory basis will affect the outcome of the Court's review as it is based on blatant misstatements of fact and law by Petitioner's counsel. However, rather than file a Motion for Leave to file a Sur-Reply, which

---

[1] Although it is literally true that Petitioner's counsel's brand-new excerpt is not attached as exhibit to the Motion to Amend or the 2nd AAV to "support the amendment", it is worse that Petitioner's counsel has snuck it into the Reply as Ms. Hale theoretically would have had no opportunity to address the brand-new excerpt..

3

will further delay the resolution of this dispute and force Ms. Hale incur even more unnecessary attorney's fees, the Court should grant Ms. Hale's Motion to Strike, deny the Motion to Amend and rule on the only substantive basis to vacate that has ever been before the Court – that the arbitrator's made errors.[2]

---

[2] Ms. Hale is not seeking to strike those portions of the Reply that relate to the other basis to deny the AAV – Petitioner's failure to serve the AAV after the FAA's "strictly enforced" three (3) month statute of limitations for service. That issue was proper to address in the Reply as it was raised in Ms. Hale's Opposition to the AAV. As discussed in Ms. Hale's Opposition to the Motion to Amend, however, the new case cited by Petitioner's counsel – *Edstrom v. Companion*, 516 F.3d 546 (7th Cir. 2008) – does not support Petitioner's counsel argument that the FAA does not apply to the Court's review. *See* Opposition to Motion to Amend at pp. 6-9. Indeed, in *Edstrom,* the court specifically states that the "question in our case is different" than the question regarding "judicial review of arbitral awards". *Id.* at 549-50.

Simply put, *Edstrom* addressed only whether the *arbitrator* failed to "apply specific substantive (insurance) law" *at* the arbitration. *Id. Edstrom* <u>does</u> <u>not</u> address whether a *court* should use federal arbitration law in its review *after* the arbitration. *Id.* Petitioner's counsel does not argue that had the arbitrators applied Illinois law the result of the arbitration would have been different. In addition, Petitioner's counsel does not argue that the arbitrators exceeded their powers by not applying Illinois law. The only "arbitrator exceeded their powers" argument made by Petitioner's counsel is that the arbitrators ruled on certain causes of action that were allegedly waived. Petitioner's counsel's *only* argument with respect to applicability of Illinois law is that this Court is required to apply the IAA (Illinois arbitration law – the 90 day *filing* requirement) rather than the FAA (Federal arbitration law – the 3 month *service* requirement) in reviewing the AAV. *Edstrom* does not support this wrong proposition. Moreover, Petitioner's counsel makes no effort to try to distinguish the binding precedent cited by Ms. Hale that the FAA's "strictly enforced" three (3) month statute of limitations for service applies here.

To avoid the devastating effect of the FAA's three (3) month statute of limitations for service, Petitioner' counsel now tries to fool the Court that it was Ms. Hale's fault it <u>never</u> served the initial application to vacate and Ms. Hale's fault that it untimely served the AAV. Petitioner's counsel's hubris is shocking! The truth is that Petitioner's counsel never even attempted to serve the initial application to vacate and could have timely served the AAV – if it wanted to.

Petitioner's counsel states that "optionsXpress' efforts to serve Hale were frustrated by Hale's attorney and by Hale's relocation of her residence …" *See* Reply at page 10. It is undisputed, however, that Petitioner filed the AAV on November 27 and served it on December 14, 2007. As such, despite all the so-called obstacles supposedly thrown up by Ms. Hale and undersigned counsel, Petitioner was able to serve the AAV within seventeen (17) days of filing it at most (Petitioner's counsel never indicates if it attempted to serve the AAV immediately upon filing it).

Illinois Supreme Court Rule 102 required Petitioner to serve the initial application to vacate within the thirty (30) days of filing it. Notwithstanding Petitioner's counsel's misleading statements to the contrary, the fact that Petitioner was able to serve the AAV within 17 days leads to the obvious conclusion that Petitioner's counsel made a conscious decision not to even try to serve the initial application to vacate – despite Petitioner counsel's promise to FINRA -- the organization that regulates its business -- that it would comply with Rule 102. *See* Exhibit C to Ms. Hale's Opposition to the AAV.

**II.     Ms. Hale Did Not Waive – "Affirmatively" or "Expressly" or Otherwise -- Any Of Her Causes of Action.**

In its 2nd AAV Petitioner states that Ms. Hale stipulated "that the only claim she was pursuing was a violation of the 'know your customer' rule, the Panel entered an Award finding optionsXpress liable for causes of action of suitability, breach of contract, failure to supervise, and negligence, all of which were *affirmatively waived* by Hale." *See* 2nd AAV at ¶ 54 (emphasis added).

---

Despite its legal obligation to so and its promise to FINRA, Petitioner's counsel has the audacity to blame undersigned counsel for never serving the initial application to vacate. It is undisputed that undersigned counsel offered to accept service of the initial application to vacate. Bizarrely, Petitioner's counsel argues that this offer to accept service somehow "frustrated" Petitioner's counsel's (non-existent) attempt to serve the initial application to vacate.

In any event, undersigned counsel was not required to offer to accept service but did so as a professional courtesy and to speed up payment of the Award. Rather than accept this offer, or acknowledge it any way, Petitioner's counsel *ignored the offer to accept service altogether.* Petitioner's counsel never explains why it did not accept this offer and never explains why it did not even respond to it. The fact that it was withdrawn four days later does not explain why Petitioner's counsel did not accept it before then. Nor does it explain why Petitioner's counsel failed to contact undersigned counsel to determine if he would reconsider the revocation of the offer to accept service. The bottom line is that if Petitioner's counsel accepted the offer to accept service he would have saved his client the expense of hiring a process server to serve the initial application to vacate  Of course, that assumes that Petitioner's counsel ever had any intention of serving the initial application to vacate. In any event, unfortunately for Ms. Hale and the Court, as is clear from its filing of its frivolous initial application to vacate and its frivolous AAV and all of its antics thereafter, a cost-efficient and timely resolution of this matter has never been a consideration for Petitioner's counsel.

Furthermore, Petitioner's counsel's misleading statement does not address why the AAV was not served until after the three (3) month statute of limitations for service. Indeed, it is undisputed that the AAV was *filed* more than three (3) months after Petitioner's counsel received the Award! As such, any supposed roadblocks to *serving* the AAV were moot. Boiled to its essence, Petitioner's counsel's argument is that: because undersigned counsel revoked an offer to accept service (that he was not required to make) after Petitioner's counsel completely ignored the offer, Petitioner's counsel is absolved from complying with Illinois Supreme Court Rule 102; Petitioner's counsel is allowed to break its promise to FINRA; and Petitioner's counsel was somehow prevented or "frustrated" from serving the AAV within three (3) months of receiving the Award (despite the fact that the AAV was *filed* more than three (3) months after Petitioner's counsel received the Award). Petitioner's counsel's argument is nonsensical. Rather than blame Ms. Hale for missing the FAA's "strictly enforced" three (3) month statute of limitations for service, Petitioner's counsel should look in the mirror.

5

As discussed in Ms. Hale's Opposition to the Motion to Amend, the truth is that in the statements cited by Petitioner's counsel, undersigned counsel *affirmatively reaffirmed* Ms. Hale's "suitability" cause of action:

> "[T]he only *suitability obligation* we are talking about [is] at the time the account is open which Mr. Stern acknowledged optionsXpress does have."[3]
>
> "An option firm before they allow anybody to [buy options has] a gatekeeper duty to say, hey wait a minute, this is the only type [of options trading] we [will] allow [you], if any. So that's the *suitability obligation* before we even get to whether there were any recommendations … We're talking about a *suitability obligation* before anybody – trades [options]."
>
> "optionsXpress in their own compliance manual … talks about *suitability* with respect to options in *two* different places. One place refers to recommendations, the other place talks about the criteria for opening an account. So even they acknowledge in their own compliance manuals *two different suitability obligations* when it comes to options."

*See* Exhibit D of Ms. Hale's Opposition to Motion to Amend at page 95; lines 20-23; Exhibit E of Ms. Hale's Opposition to Motion to Amend at page 13; lines 9-22; page 14; lines 1-6 (emphasis added).

Clearly, these passages show that Ms. Hale affirmatively reaffirmed her suitability cause of action and do not mention any of her other causes of action. This did not stop Petitioner's counsel from arguing that "the Panel exceeded its powers by deciding issues that were no longer in dispute." *See* 2nd AAV at ¶ 55. All of Ms. Hale's causes of actions mentioned in the Award were always "in dispute" and, therefore, the arbitrators did not exceed their powers.[4]

---

[3] Mr. Stern is Petitioner's CFO. It surprising that he told the truth on this issue in light of the fact that his lack of credibility was palpable at the arbitration hearing. For example, Mr. Stern testified under oath that he was not aware that the stock market crashed from 2000 to 2002. Mr. Stern stated this under oath despite the fact that this was the second worst decline in the history of the stock market, only slightly eclipsed by the stock market crash during the Great Depression. The bursting of the tech bubble, 9/11, Enron and WorldCom and their devastating effect on the stock market was national news that everyone was talking about. As the CFO of a broker-dealer it is impossible that Mr. Stern was not aware of this historic stock market crash.

[4] On the bottom of page 14 of Exhibit E of Ms. Hale's Opposition to Motion to Amend, undersigned counsel begins to discuss the promise that Petitioner made on its website to conduct a proper suitability

Ms. Hale's Opposition to the Motion to Amend was filed ten (10) hours prior to Petitioner's Reply. During this time period, Petitioner's counsel apparently realized that its "waiver" argument was wholly defeated by the excerpts of the transcript that it cited in the Motion to Amend and the 2nd AAV, based on the above quotes. Petitioner's counsel evidently searched the arbitration transcript (that it refuses to provide to Ms. Hale and refuses to provide to the Court) in a desperate attempt to support its brand-new statutory basis to vacate the Award.

Like the other excerpts selected by Petitioner's counsel, the brand-new excerpt attached as an exhibit to the Reply does not even come close to supporting Petitioner's counsel's brand-new "waiver/arbitrators exceed their powers" argument.

Based on its brand-new excerpt, rather than arguing that Ms. Hale had "affirmatively" waived all of her causes of action as Petitioner's counsel did in the Motion to Amend, Petitioner's counsel now argues that Ms. Hale "expressly" withdrew all of her causes of action. Petitioner's counsel's bogus argument is supposedly supported by this brand-new excerpt:

> "For the record … there is a stipulation that [CBOE] Rule 9.9 is not applicable to these proceedings."

*See* Reply, Exhibit 1. As stated above, Petitioner's counsel has included this brand-new excerpt despite its representation to the Court that: "No new facts will be introduced nor are any facts required to support the amendment." *See* Motion to Amend at page 3.

In any event, based on this brand-new excerpt, Petitioner's counsel argues that "Hale, through her attorney, stipulated that the only claim at issue against optionsXpress was based on an alleged violation of [CBOE] Rule 9.7". *See* Reply at pages 11-12.

---

analysis before allowing a customer to buy options. Petitioner's promise was one of the bases for Ms. Hale's breach of contract claim (and one of the bases for its negligence and suitability claims). In other words, undersigned counsel was reaffirming -- rather than waiving -- Ms. Hale's breach of contract cause of action.

First, this contradicts Petitioner's counsel's statement in its Motion to Amend that both CBOE Rule 9.7 and NASD Rule 2860(b)(16) were at issue in the arbitration. *See* Motion to Amend, page 4. Second, the above stipulation does not mention *any* of Ms. Hale's causes of action and therefore Ms. Hale could not have "affirmatively" or "expressly" waive *all* of them. Finally, Petitioner's counsel's argument that the "know your customer" duty is not a "suitability" obligation (which they have maintained from the outset of the arbitration despite being shown otherwise) reveals that either Petitioner's counsel does not understand the regulations that apply to its options business or is purposely attempting to mislead this Court.

More importantly here, whether or not the "know your customer" duty is a suitability obligation makes no difference to this Court's review. This decision was for the arbitrators to make. To the extent that they got it wrong (they did not) is irrelevant because arbitrator errors are not a basis to vacate an arbitration award. In fact, arbitrator errors have been rejected by every court that has addressed this issue, including the mysteriously-missing *Garver* and the United States Supreme Court.

### III. The "Know Your Customer" Duty Is A Suitability Obligation.

The "suitability obligation" referred to by undersigned counsel in the excerpts referenced above is a duty imposed on broker-dealers by the NASD and the CBOE to prevent all but the most sophisticated and/or wealthy investors from buying options trading. Because buying options is very risky, this duty applies at the account opening stage before allowing an investor to open an options account.[5] Petitioner's counsel has termed this "pre-account-opening" duty as

---

[5] NASD Rule 2860(b)(16)(A) is titled "Approval Required" and states, in pertinent part, "no member … shall accept an order … to purchase … an option contract … ***unless the customer's account has been approved*** for options trading in accordance with the provisions of subparagraphs (B) through (D) hereof. FINRA Rule 2860(b)(16)(B) is titled "Diligence in Opening Accounts" and states, in pertinent part, "[i]n ***approving*** a customer's account for options trading, a member … shall exercise due diligence to ascertain the essential facts relative to the customer, his financial situation and investment objectives. ***Based upon such information***, the [broker-dealer] shall specifically ***approve or disapprove*** in writing the customer's

8

its "know your customer" obligation throughout the arbitration. Petitioner's pre-account-opening obligation has nothing to do with whether the broker-dealer recommends specific transactions <u>after</u> an options account is open. Petitioner has consistently referred to this "after-the-account-is-open" duty as a "suitability" duty.

Simply put, the only difference between these *two suitability* duties for options (as opposed to stocks which only has one duty which relates only to recommended transactions) is that one is imposed on broker-dealers *before* allowing an investor to buy options and the other suitability duty is imposed on a broker-dealer *after* an options account is open and only if the broker-dealer recommends transactions. The *only* one of these suitability duties waived by Ms. Hale was Petitioner's *post*-account opening suitability duty. The only one of these two suitability duties at issue in the arbitration was Petitioner's *pre*-account-opening suitability duty.

Ms. Hale alleged, and the arbitrators correctly concluded, that Petitioner breached its "know your customer" suitability duty at the account-opening stage by approving Ms. Hale to buy options in light of Ms. Hale's minimal income, net worth and lack of options buying experience. In other words, if Petitioner had fulfilled its duty to an investor like Ms. Hale it would have prevented her from buying options in the first instance (*i.e.*, disapproved her account for options buying as it was required to pursuant to its "know your customer" suitability duty for options) and she, therefore, would not have incurred the damages that she did – most of which related to her IRA account.

Despite its repeated protestations to the contrary, Petitioner's counsel knows that the "know your customer" duty is also considered a suitability duty. Indeed, Petitioner used the

---

account for options trading. *See* Ms. Hale's Opposition to AAV, Exhibit H (emphasis added). This rule was admitted into evidence.

9

word "suitability" in connection with its promise to fulfill its duty to determine whether to allow an investor to trade options in the first instance:

> Yes, we *allow* prudent trading of options in IRAs based on an investor's individual *suitability*.

This was Petitioner's response to the following question which *was* on its website, "Do you allow options trading in optionsXpress IRAs?" *See* Exhibit A. This question and answer was admitted into evidence and on a large poster board as a demonstrative exhibit at the Final Hearing. It is interesting to note that at some point shortly after the Final Hearing, Petitioner *removed* the word **"suitability"** from its website. In any event, Petitioner's promise to its potential customers was one of the bases for Ms. Hale's breach of contract claim, negligence claim and suitability claim.

The SEC agrees with Petitioner's concession that it had a suitability duty *before* it allowed Ms. Hale to trade options. Indeed, on the exact page from the SEC's Special Study on the Options Markets that Petitioner cites in its AAV for a different (and wrong) proposition, it is clear that the SEC considers Petitioner's self-admitted "know your customer" obligation to be a suitability duty imposed on a broker-dealer before it allows a customer to trade options:

> "All the options exchanges have adopted rules which require that *before a customer is permitted to trade options*, his brokerage firm must make an *initial determination* that listed options trading is *not **unsuitable*** for him.

Also on the exact same page of the SEC Study cited by Petitioner, the SEC states the:

> "'[K]now your customer" rule' … requires the *suitability* information be obtained, recorded, *and used* by a brokerage firm in *determining whether to approve* the account for options trading."

Because options are much more risky that stocks, before "approving the account for options", the "suitability information that it obtained" was required to be "used" by Petitioner to make the determination whether to "approve" Ms. Hale to buy options.

10

Despite citing it as authority, Petitioner's counsel did not attach the above-quoted SEC page as an exhibit to its AAV *or* its 2nd AAV *or* its Motion to Amend *or* its Reply. Their failure to provide this obscure authority to the Court begs the question what Petitioner's counsel is trying to hide?[6]

In sum, Petitioner concedes it had a "know your customer" obligation. Petitioner also concedes that this was a suitability duty on its website. Petitioner further concedes that this suitability duty is imposed *before* "allowing" investors to trade options. The SEC agrees that all options firms are required to conduct a suitability analysis at the account opening stage because options are more risky than stocks. As stated above, the arbitrators got it right when they agreed with Petitioner's summary of its suitability obligation on its website and agreed with the SEC. But even if they made an error, errors has never been a basis to vacate an arbitration award.

**IV.    Petitioner's Counsel Is Either Incapable of Understanding The Law Applicable To This Dispute Or Is Attempting to Purposely Mislead The Court.**

In its Motion to Amend, Petitioner's counsel states that its "pending basis for relief" (i.e. that the arbitrators made errors) was modified in its 2nd AAV:

> "To correctly characterize the fact that arbitrators had exceeded their authority by ruling on matters not before them, *instead of* characterizing the basis as a manifest disregard of the law."

*See* Motion to Amend at page 4 (emphasis added). Petitioner's counsel statement reveals that they are incapable of understanding the relevant law or are attempting to mislead the Court.

The only "pending basis for relief" in the AAV was that the arbitrators made errors. Manifest disregard of the law is a non-statutory basis that is recognized in exceedingly limited circumstances that have no application to this case. Arbitrator errors have never been

---

[6] For the Court's convenience, this page was attached as Exhibit J to Ms. Hale's Opposition to the AAV (emphasis added).

recognized as a basis to vacate by any court, including the mysteriously-missing *Garver* and the United States Supreme Court.  Equating these two "bases" to vacate is wrong as a matter of law.

Petitioner's counsel takes it a step further by equating these two (one a non-statutory basis and one a non-existent basis) bases with its brand-new statutory basis – that the arbitrators exceeded their powers.  Put another way, by stating that the 2nd AAV was meant to "correctly characterize" the "pending basis for relief" as arbitrator exceeding their powers "***instead*** of characterizing the basis as a manifest disregard of the law", Petitioner's counsel is "abandoning" a non-statutory basis it never asserted in the AAV (manifest disregard); abandoning the only basis asserted in the AAV (errors) – and attempting to replace them with a statutory basis it never asserted in the AAV.

After abandoning "manifest disregard" in the Motion to Amend, Petitioner's counsel resurrects it in the Reply -- -- and equates this *non-statutory* (and non-asserted) basis with its *non-existent* basis (arbitrator errors).  Again, Petitioner's counsel takes it a step further by equating these so-called (*non-existent* and *non-statutory*) bases to its brand-new *statutory* basis (waiver/arbitrators exceeded their authority).  Specifically, Petitioner's counsel states:

> The Panel's Gross Errors of Law Clearly Appear on the Face of the Award, Which Shows the Panel Manifestly Disregarded the Law Concerning Hale's Stipulation and that the Panel Exceeded Its Authority in Ruling On Issues That Were Not Submitted to It for Resolution.
>
> [T]he record reflects that the arbitration Panel's errors, either by manifestly disregarding the law or by exceeding its powers, was evident on the face of the award because Hale waived the claims upon which the Panel found optionsXpress liable.

*See* Reply, page 11 (Paragraph Heading III); Reply, page 15 (Conclusion).

These statements are wrong as a matter of law on so many levels.  But there is only question that needs to be answered to disprove them (ignoring the fact that nothing appears on the "face" of the Award):  If it were actually true that arbitrator "errors" was the same basis to

vacate as "either manifestly disregarding the law (a recognized non-statutory basis in exceedingly limited circumstances) or by exceeding its powers (a statutory basis)", as stated by Petitioner's counsel, then why is it that every court that has addressed whether arbitrator errors are a basis to vacate an award have held that arbitrator errors are not a basis to vacate an arbitration award -- without further holding that manifest disregard and arbitrators exceeding their powers are also not a basis to vacate an arbitration award?

Even if Petitioner's counsel's blatant misstatements of law that all three of these bases are equivalent were assumed to be true and it is further assumed that all three were asserted by Petitioner's counsel in the AAV, then the long line of unanimous precedent rejecting arbitrators errors as a basis to vacate requires the Court to deny the AAV and confirm the Award. This is more than ironic.

Further, even if Petitioner's counsel's statements regarding its bases to vacate the Award were not blatant misstatements of law, they all rise and fall on Petitioner's counsel's blatant misstatements of fact regarding the excerpts that they cite. The truth is that Ms. Hale did not waive any of her causes of action – "affirmatively" or "expressly" or otherwise. Indeed, the transcript excerpts cited by Petitioner's counsel (including the brand-new excerpt that was first cited by Petitioner's counsel in the Reply) not only do not support these blatant misstatements of fact, they wholly defeat Petitioner's counsel's brand-new "waiver/arbitrator exceeded their powers" argument.

Parsing all of their blatant misstatements of fact and law reveals that Petitioner's counsel are arguing nothing more than the arbitrators made an error in reaching the conclusion that Petitioners self-admitted "know your customer" duty can be correctly characterized as a suitability obligation. Put another way, Petitioner's counsel mistakenly believes (unless it is purposely attempting to mislead the Court) that Petitioner had only one suitability duty. Ms.

Hale believes that they are two suitability duties for an options accounts due the highly risky nature of options (relative to stock and bond accounts). The arbitrators agreed with Ms. Hale and decided that Petitioner's breach of its pre-account opening duty was one basis to find Petitioner liable for Ms. Hale's suitability, breach of contract and negligence causes of action. The arbitrators got it right. But even if they made a "gross error" of law in reaching this conclusion is of no matter. No court has ever held that arbitrator errors are a basis to vacate an arbitration award.

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") prohibits a party from filing a pleading "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 11 also prohibits a party from filing a pleading wherein "the legal contentions are [not] warranted by existing law" and wherein "the factual contentions [do not] have evidentiary support." Like their initial application to vacate *and* their AAV *and* their 2nd AAV *and* their Motion to Amend, Petitioner's counsel's Reply was filed for an improper purpose – to delay payment of the Award and to unnecessarily and substantially increase Ms. Hale's attorney's fees.

Petitioner's counsel did not limit its (so-called) Reply to issues raised in the AAV (as Ms. Hale did in her Opposition thereto). Rather, Petitioner's counsel has unilaterally decided to rule on its own Motion to Amend, usurping the Court's authority to do so. Petitioner's counsel has needlessly increased the cost of litigation because it has forced Ms. Hale to again incur unnecessary attorney's fees to rebut Petitioner's counsel's brand-new statutory basis that is not before the Court. In addition, like all of Petitioner's counsel's other pleadings, the Reply is full of legal contentions that are not warranted by existing law and the factual contentions that do not have evidentiary support.

Whether Petitioner's counsel blatant misstatements of law reveal a complete inability to understand the law or are an attempt to mislead the Court is irrelevant.  Petitioner's counsel "should have known" that its sole basis to vacate the Award in the AAV has been rejected by every court who addressed this issue – including its own case which is mysteriously missing from the Reply.  Petitioner's counsel also should have known that its brand-new statutory basis and previously unasserted non-statutory basis are not equivalent to arbitrator errors.  Further, it is inconceivable that Petitioner's counsel blatant misstatement of fact regarding the arbitration transcript excerpts (including the brand-new excerpt that was cited by Petitioner's counsel for the first time the Reply) -- upon which all of its bases to vacate rely -- was not an attempt mislead the Court.  If Petitioner's counsel actually believed that these excerpts supported their contention that Ms. Hale waived all of her causes of action, one would think that these excerpts would have been prominently displayed in the body of at least one their pleadings – as Ms. Hale has done.

Petitioner's counsel's attempt to sneak in the back-door its brand-new statutory basis by including in its Reply without the Court's permission; Petitioner's counsel's inclusion of a brand-new excerpt that neither Ms. Hale nor the Court has ever seen before (despite its written promise that it would not do so); Petitioner's counsel's repeated blatant misstatements of the law and fact in all of its pleadings will be discussed in Ms. Hale Renewed Motion for Sanctions that she will soon file.

**CONCLUSION**

For the reasons set forth above, the Court should strike Sections III, IV and V; the Introduction; and the Conclusion of Petitioner's Reply.

>Respectfully submitted,
>
>NEIL B. SOLOMON, P.A.
>
>By: /s/ Neil B. Solomon
>Neil B. Solomon, IL Bar No.: 6243930
>4174 St. Lukes Lane
>Jupiter, FL 33458
>Tel: 561-762-4991
>Email: neilbsolomonesq@gmail.com
>*Attorney for RESPONDENT LINDA HALE*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via transmission of Notice of Electronic Filing generated by CM/ECF this 12th day of May 2008 to:

Jeffry M. Henderson, Esq.
Robert Christie, Esq.
Henderson & Lyman
175 West Jackson, Suite 240
Chicago, IL 60604
Phone: 312-986-6960
Fax: 312-986-6961
Email: rchristie@henderson-lyman.com
jhenderson@henderson-lyman.com

>/s/Neil B Solomon
>Neil B. Solomon