UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONSXPRESS, INC.,

                    Petitioner,

          v.

LINDA HALE,

                    Respondent.

Docket No. 08 CV 179

Virginia M. Kendall, Judge

## PETITIONER'S RESPONSE TO
## HALE'S MOTION TO STRIKE

Petitioner optionsXpress, Inc. ("optionsXpress"), as its response to <u>Respondent's Motion to Strike Portions of Petitioner's Reply in Support of Its Amended Application to Vacate</u> (the "Motion" or "Motion to Strike"), states as follows:

### INTRODUCTION

Hale seeks to take another bite at the apple by disguising a sur-reply (not authorized by this Court) as a "Motion to Strike." Hale seeks to strike three of the five principal sections contained in optionsXpress' Reply brief (the "Reply"), which was filed on May 8, 2008, in support of its <u>Amended Application to Vacate Arbitration Award</u> (the "1st Amended Application"). As the Court may recall, Hale filed her response to the 1st Amended Application on March 31, 2008 ("Hale's Response" or "Response"). The three sections contained in the Reply, which Hale now seeks to have stricken, were in direct response to issues raised in Hale's Response. Those issues concerned:

1)    Hale's allegation that the arbitration panel's gross error of law did not appear on the face of the Arbitration Award (the "Award"), as required under *Garver v. Ferguson*,

76 Ill. 2d 1 (1979),

2)    Hale's attempt to re-characterize her claim that optionsXpress violated an exchange's "know your customer" rule into a suitability claim, whereby optionsXpress violated a self-regulatory organization ("SRO") or exchange suitability rule, and

3)    the legal principal that, notwithstanding Hale's allegations that optionsXpress violated a SRO or exchange rule, there is no private right of action for a violation of a SRO or exchange rule.[1]  Each of those issues will be addressed below in greater detail.

In considering Hale's pending Motion, the Court should take into account that, except for a passing reference to the *Graver* decision (which was made without citation) and one case cited in footnote 2 (which concerned matters she admitted in the footnote were not at issue in her Motion) Hale's sixteen page Motion to Strike was completely void of any legal authority.  In addition to failing to present any legal argument to the Court, a substantial part of her Motion was used as a sur-reply to her Response to the 1st Amended Application, her response to optionsXpress' <u>Motion for Leave to Amend</u>, which was filed with the Court on May 1, 2008, and as a response to optionsXpress' <u>Second Amended Application to Vacate Arbitration Award</u> ("2nd Amended Application") that was attached as an exhibit to optionsXpress' <u>Motion for Leave to Amend</u>.  In this response, optionsXpress will attempt to limit its scope to the three sections in the Reply that Hale requests this Court to strike.

---

[1]  Without digressing into the regulatory authority for the creation of an SRO, in the context of this action, an SRO is generally a corporation composed of members, individuals and corporations, who are regulated by the Securities and Exchange Commission ("SEC").  SROs perform quasi-governmental functions such as promulgating rules for the conduct of its members, providing enforcement procedures to enforce its rules, and providing arbitration forums for its member's customers.

In addition to the above, Hale went to the extreme of packing into her Motion a sur-reply to the remaining sections contained in optionsXpress' Reply in a single spaced 1 ½ page footnote. (Motion at n.2)  Hale's use of a three-page equivalent footnote was, on its face, a blatant and transparent attempt to circumvent the Court's strict enforcement of Local Rule 7.1, which imposes a fifteen page limitation on briefs without prior court approval.  Hale knows the penalty for such a violation because Judge Ryskamp in the Florida Action before the Southern District of Florida **sanctioned** Hale for similar conduct by striking the pages that exceeded the court's page limitation.  (*See* Judge Ryskamp's Order dated March 26, 2008 at 1, which is attached hereto as **Exhibit A**).  This Court should consider similar, if not more severe, sanctions in the present action.

## ARGUMENT

I.    **Hale's Attempt to Rely on the "Know Your Customer" Rule of the CBOE and FINRA as Her Surviving Claim Against OptionsXpress and Couch it as a Suitability Claim Fails Because (a) The Two Claims Are Different and (b) There is No Private Right of Action for a Violation of a SRO or Exchange Rule.**

One of the cornerstones of optionsXpress' 1st Amended Application and its Reply was the legal principal that Hale had no standing to bring a claim for a violation of an SRO or exchange rule, because there is no private right of action for a violation of such a rule.  (*See* 1st Amended Application at 19-20; Reply at 14-15)  That legal principle was enunciated in the 1st Amended Application and in Section V of optionsXpress' Reply, which Hale seeks to have stricken.  *Id.*  However, except for a reference to Section V in the preamble and the one sentence conclusion in her Motion, Hale made absolutely no reference to Section V of the Reply or to the legal principal at issue in her Motion.  (*See* Motion to Strike at 1 and 16)  In fact, Hale's failure to address the legal principal at issue is consistent with the argument she used in her Response

when that legal principal was raised in optionsXpress 1st Amended Application – none.  In its

Reply, optionsXpress explained Hale's failure to raise that issue in her Response, as follows:

> In its Application to Vacate, optionsXpress provided the Court with ample legal authority for the proposition that an investor does not have a private right of action for a violation of an exchange rule, such as CBOE Rule 9.7 and rules of the National Association of Securities Dealers, NASD [n/k/a FINRA], absent a finding of fraud.[2]  (*See* Application at ¶¶ 60-63)  Hale has failed to address that issue in her Response, because Hale, as a matter of law, has no ground to assert a cause of action for a violation of CBOE Rule 9.7.[3]

(Footnotes in original)

Hale's consistent failure to address her lack of standing to raise a claim that

optionsXpress violated a SRO or exchange rule can only be considered as an intentional wavier

of any defense to that legal principal, because Hale has the burden of persuasion.  *Sanders v.*

*John Nuveen & Co.*, 554 F.2d 790, 797 (7th Cir. 1977) (holding that the claimant has the burden

of persuasion that it has a private right of action to claim a violation of a SRO or exchange rule).

Despite's Hale's wavier, a refresher on the legal principal at issue is in order.

Under Illinois law, an arbitration award shall be vacated if an arbitrator awards damages

on claims for which no cause of action exist.  *See 7-Eleven, Inc. v. The Southland Corporatio*n,

325 Ill. App. 3d 399, 409 (1st Dist. 2001)(vacating that portion of an award for damages based on

a claim for a violation of an implied covenant of good faith, for which no independent private

right of action existed).  In the instant case, as explained in the 1st Amended Application, no

private right of action exists for a violation of a SRO or exchange rule, such as a "know your

---

[2]  Claims of fraud or causes of action sounding in fraud were never alleged by Hale or raised during the arbitration, nor was any reference to fraud alleged in the Award.

[3]  It is worth noting that in her Response, Hale did not allege that optionsXpress breached the Customer Agreement, failed to supervise her account, or was negligent in handling her account, nor did she address optionsXpress' allegations that the Panel manifestly disregarded the law in finding optionsXpress liable on those causes of action.

4

customer" rule or a "suitability" rule, absent a finding of fraud. (1st Amended Application at 20, citing to *Klock v. Lehman Brothers Kuhn Loeb Inc.*, 584 F. Supp. 210, 217 (S.D.N.Y. 1984) and *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135, 142-43 (7th Cir. 1969) (finding a violation of NYSE Rule 405 when coupled with fraud)) In the instant case, Hale has never alleged a claim of fraud, and there was no finding of fraud. Moreover, the burden of persuasion that a party has a private right of action for a violation of a SRO or exchange rule is on the party urging the right, and that is "a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation." *Sanders*, 554 F.2d at 797. In the instant case, Hale has never urged this Court, either in her Response or her Motion to Strike, to find that she had a private right of action to bring a claim for a violation of a FINRA or CBOE "know your customer" rule or "suitability" rule. On that basis alone, Hale's Motion should be denied.

**II.  OptionsXpress Has Not Abandoned the Illinois Supreme Court's holding in *Garver*, and No New Legal Basis Was Raised in Petitioner's Reply in Support of Its 1st Amended Application.**

> ***A.  OptionsXpress has not abandoned the Illinois Supreme Court's holding in Garver for the proposition that an arbitrator's "gross disregard of the law or a gross mistake of fact" is adequate grounds to vacate an arbitration award.***

Hale's allegation that optionsXpress abandoned *Garver v. Ferguson*, 76 Ill. 2d 1 (1979), as one of its basis to vacating the Arbitration Award is disingenuous, and ignores the established convention that a reply brief should focus only on issues raised in the other party's response. (Motion to Strike at 11-12) In the instant case, one of the issues Hale raised in her Response was whether the arbitrator's error was evident on the face of the Arbitration Award, as required under *Garver*. (*See* Response at 8-10). The Reply addressed that issue, and it would be redundant for optionsXpress to re-argue *Garver's* holding that an arbitrator's "gross error of judgment in law or gross mistake of fact" can serve as a basis to vacate an award (an allegation that

optionsXpress already made in its 1st Amended Application).[4]  We trust the Court needs no

citation for the general rule that there is no requirement to continue to re-plead and restate what

the Court already knows.  Accordingly, not only has optionsXpress not raised any new legal

issues to support its 1st Amended Application, it has not abandoned its reliance on *Garver* for the

proposition that a "gross error of judgment in law or gross mistake of fact" can serve as a basis to

vacate an award.

> **B.**     **As explained by the court in Garver, "gross disregard of the law or a gross mistake of fact" is a subset of Section 12(b) of the Illinois Uniform Arbitration Act.**

Hale's suggestion – that optionsXpress' allegation that the arbitrators exceeded their

powers was a new basis raised by optionsXpress for the first time – was specious, because an

arbitrator's gross disregard of the law or gross mistake of fact is equivalent to an arbitrator

exceeding its powers.  In *Garver*, the Illinois Supreme Court reviewed the lower court's finding

that the arbitrators had exceeded their powers, one of the factors under the Section 12(a) of the

Uniform Arbitration Act, based on the arbitrators' failure to follow the parties' contract

specifications.  76 Ill. 2d at 6; 710 ILCS 12(a).  In determining what constituted "exceeding their

powers," the *Garver* court reviewed the common law in effect prior to the State of Illinois'

adoption of the Uniform Arbitration Act and Illinois' prior arbitration act.  *Id.* at 7-11.  Upon its

review, the *Garver* court found that, under Illinois common law, a court could vacate an

arbitration award if the arbitrator made a gross error of law or a gross mistake of fact in entering

---

[4]  The terms "manifest disregard of the law" and "gross disregard of the law," used by Hale in her Motion to Strike and to a limited extent by optionsXpress in its Motion to Amend, are not two distinct doctrines, but rather interchangeability phrases used by Illinois courts as a factor to vacate an arbitration award. *Compare Garver v. Ferguson*, 76 Ill. 2d at 10-11 (referring to the "gross errors of judgment in law" as a basis to vacate an arbitration award) and *Quick & Reilley, Inc. v. Zielinski*, 306 Ill. App. 3d 93 (1st Dist. 1999) (referring to the arbitrator's "'manifest disregard of the law" standard," generally used by federal courts, as a basis for reviewing an arbitration award).

an award. *Garver*, 76 Ill. 2d at 7-9 (citing to *White Star Mining Co. v. Hultberg*, 220 Ill. 578 (1906)). Contrary to Hale's alleged theory, *Garver* stands for the proposition that a finding that an arbitrator made a gross error of law or mistake of fact is equivalent to a finding that the arbitrator exceeded its powers.

An arbitrator can exceed its powers in a number of ways, and making a gross error of law or mistake of fact is just one of the factors that can be used to show that an arbitration award should be vacated. *See Elstrom Industries, Inc. v. Companion Life Ins. Co.*, 516 F.3d 546)(7th Cir. 2008)(holding in a diversity case that the arbitrator exceeded its power in not applying state law); *see Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 391 (1991) (holding that "arbitrators do not have the authority to ignore plain language and alter the [parties'] agreement); *see Spencer v. Ryland Group, Inc.*, 372 Ill. App. 3d 200,206-207 (1 Dist. 2007)(holding that on the face of the award, the arbitrator was not following the parties' agreement because he did not award attorneys' fees to the prevailing party as required under the contract, and thus the arbitrators exceeded their authority); *see 7-Eleven Inc. v. Dar,* 325 Ill. App. 3d 399 (1st Dist. 2001)(holding that the arbitrator exceeded its power by ruling in favor of the petitioner on a cause of action that does not exist and for failing to dispose of all matters before it); *see Himco Sys. v. Marquette Elecs., Inc.*, 86 Ill. App. 3d 476, 480 (1 Dist. 1980) (holding that "An arbitrator exceeds his powers when he decides matters which were not submitted to him"); see *Country Mut. Ins. Co. v. National Bk of Decatur*, 109 Ill. App. 2d 133,137 (4th Dist. 1969) (following the general rule that "[i]f, in fact and in law, there was no cause of action available here to claimants, the arbitrator exceeded his powers in entering awards and the court was correct in vacating the awards").

Demonstrating that an arbitrator made a gross error of law or a gross mistake of fact is merely a method to show that the arbitrator exceeded its powers. Consequently, the common law basis to vacating an arbitration award, a finding that the arbitrator made a gross error of law or a gross mistake of fact is merely a subset of the statutory factor that the arbitrator exceeded its powers. Thus, the facts clearly show that optionsXpress did not raise any new legal basis to vacate the Arbitration Award in this matter simply because optionsXpress alleged that the arbitrators' exceeded their powers by making a gross error of law and gross mistake of fact in entering the Arbitration Award.

**III.    *No New Factual Basis Was Raised in Petitioner's Reply in Support of Its 1ˢᵗ Amended Application.***

> **A.    *Petitioner raised no new factual basis in support of its allegation that Hale waived all claims other than her claim alleging a violation of the "know your customer" rule, and Petitioner merely disclosed additional evidence to counter factual allegations raised in Hale's Response to the 1ˢᵗ Amended Application.***

Hale's allegation that optionsXpress' Reply should be stricken because optionsXpress raised new facts in its Reply after alleging in its Motion to Amend that no new facts would be needed in its 2ⁿᵈ Amended Application is ludicrous, because optionsXpress Reply is separate and distinct from its Motion to Amend or the proposed 2ⁿᵈ Amended Application. Furthermore, Hale's allegation that an admission by Hale's attorney at the arbitration hearing cannot be used to counter an allegation raised in Hale's Response is disingenuous for two reasons. First, Hale has not presented this Court with any legal authority that such a judicial admission could not be used to counter an allegation in Hale's Response. Second, optionsXpress is unaware of any legal authority that would prevent it from using such a judicial admission to counter an allegation in Hale's Response. Moreover, optionsXpress had a duty to support its allegations by evidence.

8

Desipte the bombastic diatribe about new facts, Hale admits that no new facts were included in optionsXpress' Motion to Amend and its proposed 2nd Amended Application. (Motion at n.1)

**B.      Hale, in contrast, has included numerous factual allegations in her Response that are unsupported by any reliable authority, and those allegations should be stricken.**

Hale made numerous factual allegations in her Motion to Strike that are not supported by affidavit, transcripts of testimony under oath, or joint stipulations, and therefore should not be considered by the Court. Hale's contempt for proper procedure by failing to provide authority to support her factual allegations has been a common trend in this matter.[5] In fact, Hale complains that she does not have transcripts to the arbitration hearing, yet she cites to testimony as if it was from a transcript – which it is not – in an attempt to mislead the Court. (*See* Motion to Strike at 9-10 and n.3) Accordingly, any factual allegations contained in Hale's Motion to Strike not supported by proper citation should be stricken or ignored by the Court.

**D.      Hale had ample opportunity to receive transcripts of the arbitration hearing and optionsXpress provided Hale with the name and address of the court reporter that transcribed the hearing tapes when Hale was served with a copy of the 1st Amended Application.**

Hale's inference that she has been prejudiced because she does not have possession of the transcripts of the arbitration hearing is specious, because Hale had, and continues to have, the opportunity to acquire the tape recordings of the hearing and the transcripts of those recordings. At all times relevant, Hale had the opportunity, and continues to have the opportunity, to order the recordings of the arbitration hearing from FINRA, f/k/a NASD, the organization with oversight over the arbitration.

---

[5]   In its <u>Response to Respondent's Motion to Transfer</u>, optionsXpress raised the fact that Hale failed to provide any foundation i.e. affidavits, depositions, or stipulations, in support of her allegations concerning her wealth and other factual allegations raised in her motion.

Since December 2007, when Hale was served with a copy of the 1st Amended Application, Hale has been in possession of the name, address, and phone number of the court reporter who transcribed the hearing tapes for optionsXpress. Exhibits J, K, and N of the 1st Amended Application contained portions of the transcripts to the arbitration hearing, and the first page to each of those exhibits contained the name, address, and phone number of the court reporter. A simple call to that court reporter would have been all that was required to order a copy of the transcripts.

On February 18, 2008, in response to a complaint by Hale's attorney that he was not in possession of the tapes or transcripts of the tapes of the arbitration hearing, the undersigned sent an e-mail to Hale's attorney, informing him that the "hearing tapes are available from FINRA, and I believe that they are available at no charge." A copy of the February 18 e-mail is attached hereto as **Exhibit C**.

In reality, Hale has attempted to receive free copies of the transcripts from optionsXpress. However, it has long been the policy of the undersigned's law firm that opposing parties should order transcripts directly from the court reporter and, thus, not deprive the court reporter of her duly earned fees. On April 25, 2008, the undersigned sent Hale's attorney an e-mail in response to Hale's attorney's plan to get free copies of the transcripts by asking the Court to order optionsXpress to file a full copy of the hearing transcripts. Hale and her attorney chose not to do so. A copy of the April 25 e-mail is attached hereto as **Exhibit D**. In that e-mail, the undersigned informed Hale's attorney that transcripts of the arbitration hearing could be purchased from the court reporter and that optionsXpress had "incurred significant costs in having the hearing tapes transcribed" and that optionsXpress would not provide free copies of the transcripts to Hale, which would be "to the detriment of the court reporter." Furthermore,

10

Hale has had over five months to order the hearing tapes and transcripts to the arbitration hearing, and apparently she has failed to take any steps to order the hearing tapes or purchase the transcripts. Any prejudice Hale has suffered by not having copies of the hearing tapes or transcripts is a prejudice created by Hale's own action, or lack of action.

**III.   The "Know Your Customer" Rule is Distinct From a Suitability Claim, Notwithstanding That The "Know Your Customer" Rule May Include a Determination Whether a Customer is Suitable to Open An Options Account.**

Hale's seven pages of allegations that she did not waive her causes of action and that her "know your customer" claim is a suitability obligation is, on its face, nothing more than a sur-reply that was filed without leave of court. Accordingly, this Court should dismiss sections II and III of Hale's Motion to Strike. As was the case with the rest of Hale's Motion to Strike, Hale failed to cite to any case law in support of her proposition she did not waive her other causes of action or that an alleged violation of the FINRA or CBOE's "know your customer" rule is the same as a suitability claim in a securities litigation context. Hale cannot cite such case law because it does not exist. The two rules are different rules. A suitability claim requires recommendations and occurs at the time an order is placed, and Hale's attorney conceded that optionsXpress did not and does not make any recommendation or place any trades. (1st Amended Application at ¶¶ 9, 47-48)

Furthermore, Hale's belated allegation that she did not waive any of her other causes of action is untimely and disingenuous. At all times relevant, optionsXpress 1st Amended Application alleged, in part, as follows:

> 37.   In fact, at no time during the proceeding was the panel ever provided with any conflicting or contradictory case law by Hale. Moreover, at the hearing <u>Hale, through her attorney, stipulated that the only matter at issue was the "know your customer" rule for options trading, which concerned the due diligence required of a broker in opening an option account for a customer.</u>

39.    The foregoing notwithstanding, in each instance and with respect to each of Hale's referenced claims, despite Hale's stipulation that the only claim she was pursing was a violation of the "know your customer" rule, the Panel ignored Hale's stipulation, blatantly ignored the well settled law, and as a result made gross errors in law or fact which is apparent on the face of the Award.

(1st Amended Application at ¶¶ 37 and 39) (Emphasis added)

In her Response to the 1st Amended Application, Hale never denied the allegations contained in the above referenced paragraphs. The most Hale alleged in her Response was that her "know your customer" claim included a suitability component. Hale reached that conclusion based on her reading of FINRA Rule 2860(b)(16)(A), which she included in a footnote as follows:

FINRA Rule 2860(b)(16)(A) is titled "Approval Required" and states in, in pertinent part, "no member . . . shall accept an order . . . to purchase . . . an option contract . . . **unless the customer's account has been approved** for options trading in accordance with the provisions of subparagraphs (B) through (D) thereof. FINRA Rule 2860(b)(16)(B) is titled "Diligence in Opening Accounts" and states, in pertinent party, "[i]n approving a customer's account for options trading, a member . . . shall exercise due diligence to ascertain the essential facts relative to the customer, his financial situation and investment objectives. **Based upon such information**, the [broker-dealer] shall specifically **approve or disapprove** in writing the customer's account for options trading. *See* Exhibit J (emphasis added). This rule was admitted into evidence.

(Respondent's Opposition to Petitioner's Application to Vacate Arbitration Award at n.15) (Emphasis in original) Hale's belated attempt to deny her stipulation as the sole cause of action is simply untimely. It is readily apparent that Hale wishes she could repudiate her attorney's stipulation to a single cause of action, and has attempted any device, even a sur-reply disguised as a Motion to Strike to raise her new defenses.[6]

---

[6]    In a contract dispute, Hale's shifting of defenses would be described under the Mend the Holes Doctrine, and would be disallowed. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th

Notwithstanding Hale's failure to timely disavow her attorney's stipulation, her allegation that the "know your customer" rule is equivalent to a suitability claim fails as a result of her failure to cite to any legal authority that the "know your customer" rule is a suitability rule. In fact, nowhere in the reprint of Hale's footnote above, which appears to be a correct account of FINRA Rule 2860, does the term suitability appear. However, the term "due diligence" does appear in FINRA Rule 2860, and optionsXpress has never denied that it performed a due diligence inquiry prior to opening an account for Hale. Hale has also admitted that the "know your customer" inquiry is only performed at the account opening stage, and does not apply when Hale places trades in her account. (*See* Hale's Response at 10-11).

Courts that have addressed "know your customer" rules and suitability claims also distinguish the two claims as separate and distinct. As explained by the court in *Merrill Lynch v. Barchman*, 916 F. Supp. 845, 852 (N.D.Ill. 1996), "the ultimate question for the arbitrators [in a suitability claim] will be whether or not each investment was suitable . . . on the date it was made." In the instant case, Hale has stipulated, in her Response and her Motion to Strike, that her only claim against optionsXpress is optionsXpress due diligence (Hale calls it suitability obligation) at the time the account is open. (Response at 10-11; Motion to Strike at 6) In fact, Hale, through her attorney, stipulated at the arbitration hearing that optionsXpress had no duty to Hale to determine the suitability of the trades she entered. (*See* 1st Amended Application at ¶ 46 (citing to the transcript of the August 7, 2007 hearing day) Hale has failed to cite to any legal authority to the contrary. However, notwithstanding Hale's lack of legal authority, Hale's claim for an alleged violation of NASD Rule 2860 or CBOE Rule 9.7, whatever term is used to

---

Cir. 1990), for a discussion concerning the history of the doctrine.

13

describe them, as explained more fully above, is moot because she has no private right of action to seek damages for a violation of those rules.

## CONCLUSION

Based on the foregoing, Hale's Motion to Strike should, itself, be stricken because it is nothing more than a guise for a sur-reply to optionsXpress' 1st Amended Application and Motion to Amend, and because it has violated local rule 7.1. Furthermore, Hale's failure to cite to any legal authority in the body of her motion is indicative of the frivolous nature of Hale's Motion to Strike, and the motion should be denied in its entirety. Likewise, given the fact that Hale has failed to provide the Court with any legal authority to show that optionsXpress's pleadings were not "warranted by existing law" or that its facts, which were fully documented by applicable hearing transcripts, do not "have evidentiary support" is also frivolous on its face, given Hales compete lack of legal authority and complete lack of evidentiary support for her on factual allegations. Given the frivolous nature of Hale's Motion to Dismiss, optionsXpress request this Court to sanction Hale and require Hale to reimburse optionsXpress' for attorneys' fees it incurred in responding to her Motion to Strike.

Respectfully submitted,

OPTIONSXPRESS, INC.

By:  /s/ Robert B. Christie
One of Its Attorneys

Jeffry M. Henderson
Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6960
jhenderson@henderson-lyman.com
rchristie@henderson-lyman.com

Hillary Victor, Corporate Counsel
optionsXpress Holdings, Inc.
311 West Monroe Street, Suite 1000
Chicago, Illinois 60606
312-267-6627
hvictor@optionsxpress.com

14

# CERTIFICATE OF SERVICE

To:    Neil B. Solomon, Esq.
       4174 St. Lukes Lake
       Jupiter, Florida 33458

      I hereby certify that on May 30, 2008, I electronically filed <u>Petitioner's Response to Motion to Strike</u> with the Clerk of the Court using the CM/ECF system, and pursuant to Local Rule LR5.9, served the above reference counsel of record through the Court's transmission facilities.

                             <u>  /s/   Robert B. Christie     </u>
                             Robert B. Christie

Robert B. Christie
HENDERSON & LYMAN
175 West Jackson, Suite 240
Chicago, Illinois 60604
312-986-6957