# EXHIBIT A

**LAW OFFICES OF NEIL B. SOLOMON, ESQ.**
4174 St. Lukes Lane
Jupiter, FL, 33458
(561) 762-4991
neilbsolomonesq@gmail.com

**VIA ELECTRONIC FILING**

December 2, 2006

Director of Arbitration
One Liberty Plaza
165 Broadway
27th Floor
New York, NY 10006

Re:     **Statement of Claim on Behalf of Ms. Linda Hale Against OptionsXpress, Inc.**

Dear Sir or Madam:

Please accept this letter as the Statement of Claim of my client, Ms. Linda Hale, against OptionsXpress, Inc. ("OX").

Ms. Hale lost her **entire liquid net worth** in her two OX accounts. Speculative options trading accounted for virtually all of Ms. Hale's losses. OX had a duty to refuse to allow Ms. Hale to engage in speculative options trading because it was unsuitable for her. OX's reckless decision to allow Ms. Hale to gamble away all of her money was the direct -- and predictable -- cause of her losses.

OX cannot deny that it has a duty to refuse to allow certain investors to speculate with options-- even if such investors indicate that they desire to engage in speculative options trading. OX **admits** as much on its website. OX's self-admitted duty directly flows from the NASD's and CBOE's options rules. Ms. Hale was the prototypical investor that these rules were designed to protect.

At the time that Ms. Hale opened both of her OX accounts she specifically informed OX that the cash and securities that she deposited represented her **entire liquid net worth**. Ms. Hale further indicated that she was approaching retirement age; had a modest income and had limited investment experience, especially with respect to options trading.

Despite these undisputed facts, OX approved and allowed Ms. Hale to engage in a variety of types of options trading including, but not limited to, buying uncovered put and call options. Given that approximately 80% of options expire worthless it is not surprising that buying uncovered puts and calls is considered as risky as gambling. It is reckless to allow any person to gamble away their **entire liquid net worth**. In light of Ms. Hale's

age, income and lack of options trading experience, OX's decision to allow her to gamble with, and lose, all of her money is shocking.

Making this case even more egregious than the undisputed facts above, is the undisputed fact that ***the vast majority of Ms. Hale's options trading losses occurred in her IRA account.*** Most major broker-dealers (and many other broker-dealers) prohibit speculative options trading in IRA accounts.[1] The reason that the largest firms (and many others) do not allow their customers to gamble with options at all in their IRA accounts -- let alone with most of their liquid net worth -- is because *retirement money should not be exposed to the hideous risk inherent in speculative options trading.*

We anticipate that while OX might concede that buying put and calls is speculative it will argue that it had no duty to prohibit a competent adult from speculating with her money if that is what she desires. OX's own written words and the NASD's and CBOE's options rules fully rebut that specious argument. Indeed, a FAQ and answer from OX's website states:

> FAQ: Do you allow options trading in optionsXpress IRAs?
>
> Yes, we *allow* prudent trading of options in IRAs *based on an investor's individual suitability* (emphasis added).

OX's answer conclusively proves the following dispositive point: it was OX's duty – <u>not</u> Ms. Hale's – to decide whether options trading was suitable for Ms. Hale. OX breached the self-admitted duty that it owed to Ms. Hale. OX should not "allow" investors such as Ms. Hale to engage in speculative options trading period. OX's decision to "allow" Ms. Hale to put her **entire liquid net worth** at risk – most of which was her *retirement money* – was unconscionable.

OX's self-admitted duty to "allow" only "prudent" options trading flows directly from the NASD's and CBOE's options rules. Recognizing that options trading is highly speculative, these rules impose heightened duties on broker-dealers in deciding whether to "allow" investors to trade options (as compared to their duties with respect to stock accounts). Indeed, the NASD has separate and distinct options suitability rules which hold broker-dealers to a higher standard in making *their* decision whether to "allow" investors to trade options and if so, what type of options trading is "prudent." *See* CBOE Rule 9.7; CBOE 9.8; NASD Rule 2860(16)(C); NASD IM-2860-2.[2]

Ms. Hale's losses from options trading were approximately $200,000. Ms. Hale opened two OX accounts: an IRA account (account nos. 4097-8278 and 5AD6-LM1) (the "IRA

---

[1] Some of these firms allow non-speculative options strategies such as covered calls, protective puts and collars.

[2] Due the speculative nature of options trading, the NASD and CBOE rules also require broker-dealers to monitor trading in options accounts more closely than investing in stock accounts. *Id.* OX breached this duty.

2

Account") and a Trust account (account nos. 4097-8276 and 5AD6-LL1)[3] (the "Trust Account"). Ms. Hale funded her IRA Account with cash and securities valued at approximately $130,000. Ms. Hale funded the Trust Account with cash and securities valued at approximately $30,000. In sum, Ms. Hale deposited approximately $160,000 into her OX accounts. Her OX accounts are now virtually worthless as a direct and predictable result of OX's reckless decision to allow Ms. Hale engage in speculative options trading strategy. Ms. Hale's losses on speculative options trading, however, are greater than $160,000 because Ms. Hale realized $40,000 in profits on the stocks – not options – that she transferred to OX.

In sum, Ms. Hale was a novice investor, nearing retirement, with a modest income. Yet OX allowed her to trade puts and calls with her **entire liquid net worth**. As a direct – and predictable – result of OX's decision to allow her to gamble away all of her money she now faces an uncertain future.

Based on the above, Ms. Hale requests that the Panel award her: 1) $200,000+ in actual damages; 2) punitive damages of at least $1,000,000; 3) attorney's fees; 4) costs; and 5) forum fees. In addition, Ms. Hale intends to request that the Panel make a regulatory referral to the NASD and/or CBOE.

                    Sincerely,

                    **[NBS]**

                    Neil B. Solomon

cc: Ms. Linda Hale

---

[3] Apparently, the account numbers were changed at the time that OX switched clearing firms.