# EXHIBIT B

IN ARBITRATION BEFORE
THE NATIONAL ASSOCIATION OF SECURITIES DEALERS

| | |
|---|---|
| LINDA HALE<br>    Claimant,<br><br>v.<br><br>OPTIONSXPRESS, INC.<br>    Respondent. | )<br>)<br>)<br>)  06-05183<br>)<br>)<br>)<br>) |

## OPTIONSXPRESS' MOTION TO DISMISS, STATEMENT OF ANSWER AND AFFIRMATIVE DEFENSES TO CLAIMANT'S STATEMENT OF CLAIM

Except as expressly admitted below, optionsXpress, Inc. ("optionsXpress") denies, generally and specifically, all allegations in Claimant's statement of claim ("Claim"), and denies that it is obligated to Claimant in any amount or under any theory, whether expressly pled or not. There is no legal basis whatsoever for this Claim, and accordingly, this Claim should be dismissed.

### BACKGROUND OF THE PARTIES

optionsXpress is an NASD member firm that provides a customized interface for online trading of stocks and options to its self-directed retail customers located throughout the United States and the world. optionsXpress has developed and maintains a website that permits customers to place orders for their accounts and manage their accounts electronically, via the internet. As a web-based discount brokerage firm, optionsXpress does not solicit customer orders, does not provide customers with tax, legal, or accounting advice, and does not discuss specific market strategies with, nor recommend securities to its customers.

Claimant is a self-directed customer of optionsXpress initiating stock and options transactions on a strictly unsolicited basis and at her own discretion, responsibility, and risk. On November 14, 2002, Claimant provided optionsXpress with her self-directed cash and option IRA and Trust Account Applications ("Applications") declaring "speculation" as her investment objective, and her signed acknowledgement that she had read, understood and agreed to be bound by optionsXpress' User/ Customer Agreement - Terms and Conditions ("User Agreement"). **Exhibit 1**.

Claimant transferred from Deutsche Bank to optionsXpress option and stock positions to open her IRA and Trust accounts ("Accounts"). The Accounts were valued at $141,896.01 at the end of the month of December 2002, the month in which the transfer occurred ("Opening Value"). **Exhibit 2**. Claimant previously traded options, was transferring in option positions and requested cash and option accounts declaring her investment objectives as speculation, and optionsXpress approved Claimants' accounts for level 2 trading[1]. **Exhibit 3** (providing a matrix of trading levels for cash and options accounts opened by optionsXpress). Along with her Applications, Claimant provided optionsXpress with a Fee Payment & Limited Trading Authorization ("LTA") for a third party, Mr. Tim Wise ("Wise"), authorizing Wise to trade her

---

[1] Level 2 trading allows Claimant to order opening and closing sales of put and call equity and index options, covered call writing, short stock sales, trading of stocks, bonds and mutual funds. That is all she was permitted to do – and Claimant concedes these are non-speculative option strategies.

1

account and otherwise act in the same manner and with the same force and effect as Claimant. **Exhibit 4.**

Over the course of activity in her Accounts, Claimant paid Wise management fees of $51,925.70 from her Accounts. **Exhibit 5.** In addition, Claimant withdrew $30,728.47 from her Accounts and incurred transaction fees of $13,045.90. **Exhibit 6.** Claimant currently maintains a balance of $17,473.04 in her Accounts, and an open option position of 32 contracts of Gen-Probe Incorporated (GPRO) February 2007 55 calls. **Exhibit 7.** Claimant seeks $200,000 in purported "losses" together with "punitive damages of at least "$1,000,000", fees, costs, and regulatory referral against optionsXpress for acting in accordance with the trading decisions she ordered for her Account.

## ANSWER

The Panel has the authority, and optionsXpress requests, that the Panel dismiss this Claim for failure to state a cause of action as a matter of law. In the alternative, optionsXpress denies any liability to Claimant in any amount or under any theory, whether expressly pled or not. Further, optionsXpress denies, generally and specifically, all material allegations set forth in the Claim, as detailed herein.

## ARGUMENT

Claimant seeks to blame optionsXpress for obeying the trading decisions she ordered in her self-directed Accounts. From the moment she transferred her option positions from Deutsche Bank to her optionsXpress Accounts, Claimant continued to purchase and sell put and call equity and index options, trade covered calls, protective puts and collars. Despite twice acknowledging that she "fully understands that option trading has a number of inherent risks. . . and [that she] is fully prepared financially to undertake such risks," Claimant asserts that optionsXpress should bear the responsibility for purported losses resulting from her trading decisions. **Exhibit 4.** It seems fairly obvious that it would be unreasonable to blame optionsXpress for permitting Claimant to engage in a pattern of self-directed options trading that began before she transferred her option positions to optionsXpress. Yet, Claimant's Statement of Claim attempts to do just that.

Claimant's allegation that she lost her "entire liquid net worth" blatantly disregards the $95,700.07 in debits and withdrawals from her account and the $17,473.04 that currently remains of the $141,896.01 Opening Value. Surely, Claimant is not seeking to hold optionsXpress liable for fees she chose to pay Wise, or the funds she withdrew from her accounts.

The Claimant tells a colorful tale of a "near retiree" "gambling" "away all of her money" and her "entire liquid net worth" because "reckless[ly]" optionsXpress did not stop her from her own "speculative" trading mania. This tale is nothing more than an attempt to blame someone else for her own choices. Although her Claim attempts to allege unsuitability, negligence, and violations of SRO Rules, her allegations are simply inapplicable to her self-directed account. Explicitly, optionsXpress makes no recommendations, and Claimant agreed. This Claim should be dismissed as a matter of law.

## THE USER AGREEMENT AND LTA BETWEEN CLAIMANT AND OPTIONSXPRESS BAR CLAIMANT'S REQUEST FOR RELIEF AND WARRANT DISMISSAL OF THIS CLAIM

Claimant ignores the specific and controlling language of the User Agreement that she entered into with optionsXpress. For each of her Accounts, Claimant acknowledged that she read, understood, and agreed to be bound by the User Agreement. **Exhibit 8.** In so doing, Claimant agreed that:

- optionsXpress does not provide advice or offer opinions regarding value or suitability of any particular securities transaction or investment strategy. (Exhibit 8 at Section 14).
- options contain a high degree of risk, and are often speculative in nature, and she is prepared to undertake the risk and withstand any losses, including in her IRA. (Exhibit 8, Appendix B, Sections 1 and 10).
- the authority she gave to Wise was at her sole risk. (Exhibit 8 at Section 15).
- she is responsible for reviewing and objecting to statements and confirmations within 48 hours. (Exhibit 8 at Sections 24 – 25).
- she is responsible for evaluating her own investment decisions, financial circumstances, and determining the suitability of her trades and strategy. (Exhibit 8 at Section 14).
- she is responsible for her decisions and she will not hold optionsXpress liable for losses incurred by her as a result. (Exhibit 8 at Section 16).

Claimant also ignores the language of the LTA (Exhibit 4) she provided to optionsXpress. In that LTA, Claimant:

- agrees to indemnify and hold optionsXpress harmless.
- ratifies and confirms transactions placed by Wise in her Accounts.
- agrees that she understands the inherent risks in option trading, and warrants her preparation to take short-term profits or losses.
- recognizes that optionsXpress provides no investment advice, is not responsible for investigating and selecting Wise, and confirms that Wise is not affiliated with, controlled, or employed by optionsXpress.
- agrees that optionsXpress has no duty to supervise or monitor trading by her or Wise and that she is responsible for reviewing and monitoring trading in her Accounts.

Claimant ignores her obligations and duties she agreed to uphold in both the User Agreement and LTA, and instead, in contravention of each of the above-cited provisions, seeks to hold optionsXpress liable.

There can be no dispute that Claimant agreed that she is responsible for, and agreed to indemnify and hold harmless optionsXpress from, claims and actions – including this Claim. Even if she argues she did not place the trades, Wise did[2], the effect under the LTA is the same. Claimant controlled the decisions made for her Accounts. Pursuant to the terms of her User Agreement and LTA, this Claim should be dismissed.

---

[2] Perhaps Claimant has filed her action against the wrong respondent. As Claimant's agent and attorney-in-fact for the Accounts, optionsXpress reserves the right to bring a Third-Party Claim against Wise in connection with this Claim.

3

**OPTIONSXPRESS OWED NO DUTY TO BAR CLAIMANT FROM TRANSFERRING IN OR CONTINUING TO TRADE OPTIONS.**

optionsXpress owed Claimant no duty supervise, restrict or prohibit her from transferring option positions into her self-directed Accounts. optionsXpress owed Claimant no duty to refuse to execute orders she placed. In fact, had it done so, that refusal may have subjected it to a different complaint. An ongoing suitability requirement is unsupported as a matter of law. Moreover, as further detailed below, suitability determinations on trades require recommendations – which Claimant agrees – optionsXpress does not make. (Exhibit 8 at Section 14).

optionsXpress has no duty to prohibit a customer from opening an account and trading that account as she wishes within the assigned trading level. Certainly, optionsXpress had no duty to prevent this Claimant from trading the options that she transferred from her former broker to optionsXpress and continued trading – for four years.

There is a volume of case law on point. It is well settled that a firm ordinarily has no duty to monitor suitability for a self-directed nondiscretionary account, or to give advice to such a customer on an ongoing basis. A nondiscretionary customer by definition keeps control over the account and has full responsibility for trading decisions. Without a duty, a negligence claim fails.

Claimant alleges that all of her own decisions were unsuitable and optionsXpress should be liable. The law does not impose such a duty on self-directed accounts of member firms. To so permit would result in a windfall to Claimant. Because optionsXpress owed no duty, this Claim must be dismissed.

**BECAUSE OPTIONSXPRESS MAKES NO RECOMMENDATIONS, CLAIMANT'S SUITABILITY CLAIM SHOULD BE DISMISSED.**

optionsXpress makes no recommendations, and Claimant agreed.

It is well settled that a firm does not undertake suitability obligations to a customer where it merely executes orders. Generally, courts have declined to hold broker-dealers accountable for the suitability of an unsolicited order from a customer. Suitability obligations exist only when a broker-dealer makes a recommendation to a customer. Where no recommendations are made, a claim for unsuitability fails as a matter of law.

Claimant fails to plead that optionsXpress made any recommendations because she cannot. Therefore, her allegation that the option orders she placed were unsuitable for her has no merit. As a matter of law, no liability may attach to optionsXpress. This Claim should be dismissed.

**BECAUSE NO PRIVATE CAUSE OF ACTION LIES FOR ALLEGED SRO RULE VIOLATIONS, THIS CLAIM SHOULD BE DISMISSED.**

Claimant's allegations of SRO rule violations should be dismissed as a matter of law. A volume of case law states that violations of SRO rules, including the NASD "suitability" rule, does not give rise to a private cause of action. There is no reason to depart from this well settled precedent. This Claim should be dismissed as a matter of law.

## AFFIRMATIVE DEFENSES

Alternatively, Claimant sets forth the following affirmative defenses:

**FIRST AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM)**
Claimant has not and cannot plead any set of facts entitling her to relief. As a matter of law, her Claim must be dismissed.

**SECOND AFFIRMATIVE DEFENSE (FAULT OF CLAIMANT)**
If Claimant suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused by and contributed to by the acts, omissions, activities, failures, conduct, carelessness, recklessness and/or negligence of Claimant, and not by optionsXpress.

**THIRD AFFIRMATIVE DEFENSE (FAULT OF OTHERS)**
If Claimant suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of other third parties – including Wise – and not by optionsXpress. Based on the foregoing, optionsXpress reserves the right to bring a Third-Party Claim against Wise in connection with this Claim.

**FOURTH AFFIRMATIVE DEFENSE (RATIFICATION)**
Claimant's failure timely to object constitutes ratification, and each transaction is enforceable against her.

**FIFTH AFFIRMATIVE DEFENSE (INTERVENING ACTS)**
The damages complained of are the result of the intervening actions of others and are not proximately caused by the actions or omissions of optionsXpress.

**SIXTH AFFIRMATIVE DEFENSE (CAUSATION)**
The Claim fails to show that any alleged acts or omissions of optionsXpress caused the injuries or damages alleged by Claimant.

**SEVENTH AFFIRMATIVE DEFENSE (FAILURE TO MITIGATE DAMAGES)**
Claimant has failed, in whole or in part, to mitigate her alleged damages.

**EIGHTH AFFIRMATIVE DEFENSE (WAIVER)**
Claimant has waived any and all claims, rights and demands she makes by failing to review and object to the activity giving rise to her claims.

**NINTH AFFIRMATIVE DEFENSE (ESTOPPEL)**
Claimant's claims are barred by the equitable doctrine of estoppel.

**TENTH AFFIRMATIVE DEFENSE (LACHES)**
Claimant's claims are barred by the equitable doctrine of laches.

**ELEVENTH AFFIRMATIVE DEFENSE (NO DUTY)**
Claimant's claims arise from activities in self-directed brokerage Accounts for which she assumes full responsibility, and over which optionsXpress has no discretion.

**TWELVETH AFFIRMATIVE DEFENSE (NO DAMAGES)**
Claimant did not incur any damage or loss as a result of any act or conduct by optionsXpress.

**THIRTEENTH AFFIRMATIVE DEFENSE (SPECULATIVE DAMAGES)**
Any alleged damage or loss would be speculative at best.

**FOURTEENTH AFFIRMATIVE DEFENSE (UNJUST ENRICHMENT)**
Claimant would be unjustly enriched if allowed to recover on this Claim.

**FIFTEENTH AFFIRMATIVE DEFENSE (BREACH OF CONTRACT)**
Claimant breached her User Agreement and LTA with optionsXpress. Therefore, Claimant cannot seek relief from optionsXpress.

**SIXTEENTH AFFIRMATIVE DEFENSE (HOLD HARMLESS/ NO LIABILITY)**
Claimant seeks relief from optionsXpress when she agreed, in her User Agreement and LTA, to indemnify and hold optionsXpress harmless from the very losses she seeks to recover.

## CONCLUSION

There should be no dispute that Claimant's action is harassment litigation to, on information and belief, extract a settlement from a "deep pocket". Nevertheless, Claimant continues to blame someone else for the losses that she incurred instead of the truly responsible party – herself.

It is beyond dispute that Claimant did not lose money because optionsXpress allowed the Accounts to be opened. Claimant lost money because she paid management fees, made withdrawals, and paid transaction fees for the trades that she placed, some of which ultimately were unsuccessful. The math is straightforward, and reveals that Claimant's alleged losses are attributable to her.

It is unfortunate that in hindsight, Claimant regrets the activity that she engaged in, but that does not make optionsXpress liable. Claimant's bears responsibility for the activity in her self-directed Accounts.

For the foregoing reasons, optionsXpress respectfully requests that the Panel:

a) Deny all relief requested by Claimant in her Claim;
b) Dismiss the Claim in its entirety, with prejudice;
c) Award optionsXpress fees, costs, and reasonable attorney's fees in connection with defending this Claim; and
d) Grant such other, further and different relief as the Panel deems just and proper.

Respectfully Submitted:
optionsXpress, Inc.

By: _____

Hillary Victor
Corporate Counsel
optionsXpress Holdings, Inc.
39 S. LaSalle Street, Suite 220
Chicago, IL 60603
Tel: (312)267-6627
Fax: (312)220-7069
hvictor@optionsxpress.com

6