# EXHIBIT I

LEXSEE 1991 U.S. DIST. LEXIS 1151

SHWE MING CHEE, M.D., individually and as trustee of SHWE MING CHEE PHYSICIAN P.C. EMPLOYEES' PENSION TRUST, Plaintiffs, v. MARINE MIDLAND BANK, N.A., OVEST BROKERAGE SERVICE, DIVISION OF MARINE MIDLAND SECURITIES, INC., OVEST FINANCIAL SERVICES, INC., OVEST SECURITIES, INC., Defendants

No. 88 Civ. 0557 Consolidated with Nos. 88 Civ. 0673, 88 Civ. 0813, 88 Civ. 1808, 88 Civ. 1867, 88 Civ. 2145

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

1991 U.S. Dist. LEXIS 1151; Fed. Sec. L. Rep. (CCH) P95,806

January 29, 1991, Decided
January 29, 1991, Filed

JUDGES: [*1] Jack B. Weinstein, United States District Judge.

OPINION BY: WEINSTEIN

OPINION

Memorandum and Order

These consolidated cases are before the court on defendants' motion for summary judgment. For the reasons stated, the motion for summary judgment must be granted.

The plaintiffs are five physicians and a pension trust. They lost money during the October 1987 stock market crash by engaging in high risk options trading at the direction of their independent investment adviser, Dr. George S. Lin. Dr. Lin is without assets.

Plaintiffs' claims resemble those of many other disappointed investors who experienced significant gains during the 1980s only to have those gains wiped out in the 1987 crash. They have sued the only solvent defendants available to them, OvestMarine Brokerage Service ("OvestMarine"), a division of Marine Midland Securities ("Marine Securities"), the discount brokerage service at which the options accounts were maintained, and Marine Midland Bank, N.A. ("Marine Midland"), its corporate parent, (collectively "Marine")

The complaints allege violations of all relevant federal securities statutes, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., the Racketeer [*2] Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq, and various state laws. Plaintiffs maintain that they were not aware of the risks of options trading, that their accounts were traded excessively, that trading options were unsuitable for investors in their situation, and that their pension trust agreements prohibited the trading of options.

The assets of OvestMarine's predecessor, Ovest Financial Services, were purchased by Marine Securities on March 3, 1987. Marine did not assume any liabilities upon purchase. An order granting partial summary judgment was entered on December 22, 1988 for all acts occurring prior to March 3, 1987. Ovest Financial Services and Ovest Securities have not been served nor have they appeared.

Each of the plaintiffs executed Trading Authorization forms which provided Dr. Lin with full trading authority, including the authority to trade on margin. The Trading Authorizations provided in pertinent part that plaintiffs appointed

George Lin (whose signature appears below as his

Case 1:08-cv-00179   Document 39-10   Filed 08/05/2008   Page 3 of 5

Page 2

1991 U.S. Dist. LEXIS 1151, *2; Fed. Sec. L. Rep. (CCH) P95,806

agent and attorney in fact to buy, sell (including short sales) and trade in stocks, bonds and any other securities and/or commodities and or contracts relating [*3] to the same on margin or otherwise .... The [plaintiff] agrees to indemnify and hold [OvestMarine] harmless from and to pay [OvestMarine] promptly on demand any and all losses .... In all such purchases sales or trades [OvestMarine is] authorized to follow the instructions of George Lin ....

All the plaintiffs also signed Options Information and Agreement Forms ("Options Forms") that granted Dr. Lin the authority to trade options. These Options Forms also included representations that the plaintiff

received from [OvestMarine] the most recent [Options Clearing Corporation] OCC prospectus and any supplement. [Plaintiff has] read and understands the information contained in that prospectus and affirms] specifically the following disclosures .... That both the purchase and the writing of options contracts involve a high degree of risk, are not suitable for many investors and, accordingly, should be entered into only by investors who understand the nature and extent of their rights and obligations and are fully aware of the inherent risk involved. ... That [plaintiff] should not purchase any option unless [plaintiff is] able to sustain a total loss of the premium and transaction [*4] costs .... [Plaintiff has] noted particularly those sections of the OCC prospectus which summarize the risk factors involved in options trading and [Plaintiff has] determined that in view of my financial situation and investment objectives options trading is not unsuitable for me. ...

OvestMarine made no recommendations regarding particular securities, trading strategies or markets in general. It did not have authority to trade for any of the plaintiffs' accounts. The plaintiffs dealt with OvestMarine exclusively through Dr. Lin and all transactions in plaintiffs' accounts were requested by Dr. Lin.

Dr. Lin was not employed by, nor did he receive compensation from, Marine. There is no evidence that OvestMarine exercised any control over Dr. Lin or the plaintiffs' accounts. In his deposition dated October 14, 1988, Dr. Lin testified that he was responsible for all investment decisions:

Q. Did these discount brokers that you dealt with for your clients ever offer investment advise [sic] or make recommendations concerning stocks?

A. No, they don't on any individual stocks.

Q. Deal with Ovest; did Ovest ever recommend an individual stock or option to you.

A. No.

Q. Did they ever [*5] give you any investment advice in terms of buying or selling particular securities?

A. No.

Q. Did they ever give you any investment advice in terms of investing in markets, particular markets?

A. No.

Q. Is it fair to say they gave you no investment advise [sic] whatsoever?

A. They don't give me any investment advice about any particular stocks, but they teach me a lot: how to cut down on the expenses, and to cut down on the prices that I give for the options.

. . .

Q. In an off the record discussion, Dr. Linn [sic] advised me that in placing orders with Ovest, on occasion he and the traders would discuss the state of the market, the liquidity of the market at the time; and that sometimes Ovest would make suggestions that the order be placed in a particular manner because of the state of the liquidity, is that correct?

A. At the particular place [price]?

Q. At the particular place [price]?

A. That's correct, sir.

Q. That was based upon their knowledge of the market at that time, is that correct?

A. That's correct.

Q. Just by way of making up an example, if you said you wanted to buy a particular option at the particular price, would they perhaps say to you, well, the spread between [*6] the bid and the asked is unusually high at the present time and maybe you ought to place an order in the middle?

Case 1:08-cv-00179    Document 39-10    Filed 08/05/2008    Page 4 of 5

Page 4
1991 U.S. Dist. LEXIS 1151, *9; Fed. Sec. L. Rep. (CCH) P95,806

Dr. Lin's activities. To establish an aiding and abetting claim, plaintiffs must prove "(1) a securities law violation by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) [*10] proof that the person sought to be charged substantially assisted in the primary wrongdoing." *Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); IIT, An International Inv. Trust v. Cornfeld, 619 F.2d 909, 922 (2d Cir. 1980).*

Even assuming the plaintiffs could establish a primary violation of Section 10(b) or *Rule 10b-5* by Dr. Lin and that Marine provided substantial assistance, there has been no evidence that any of the defendants had knowledge of Dr. Lin's wrongdoing. Dr. Lin was authorized to trade the accounts. Account statements were mailed regularly to the plaintiffs. No complaints were made about account activity prior to the 1987 crash. There was simply no reason for the defendants to be on notice of any alleged impropriety.

Plaintiffs seek to impose a duty on brokers to monitor the independent investment decisions of their clients. Similar policy-based claims have been rejected. *See Cumis Ins. Soc'y. Inc. v. E.F. Hutton & Co., 457 F. Supp. 1380, 1386-87 (S.D.N.Y. 1978)* (no aiding and abetting liability where brokerage firm lacked knowledge of investment adviser's wrongdoing); *see also Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983)* ("We [*11] are not prepared to hold that a broker who merely executes an investment manager's orders for improper purchases or sales can be held liable as an aider and abettor of the investment manager . . . ."). There is even greater reason to reject monitoring liability in the case of discount brokers whose admitted function is *not* to give advice so investors can save money on commissions.

The plaintiffs also allege that the defendants are liable as a "controlling person" of Dr. Lin's actions under Section 20(a) of the Exchange Act, *15 U.S.C. § 78t(a) (1988)*. A prerequisite for controlling person liability is proof of a relationship which gives the controlling person direct or indirect influence over the policy and decision-making process of the controlled person. In addition, the controlling person must be a culpable participant in the activities of the controlled person that are claimed to violate the securities laws. *See Gordon v. Burr, 506 F.2d 1080, 1085 (2d Cir. 1974); Lanza v. Drexel & Co., 479 F.2d 1277, 1299 (2d Cir. 1973).*

Plaintiffs cannot prove that any of the defendants directly or indirectly controlled Dr. Lin's actions. Dr. Lin was not employed by defendants [*12] nor did he receive any compensation from them. There is no evidence that Marine influenced Dr. Lin's trading decisions. Dr. Lin's deposition testimony reveals that he received, at most, some technical advice which enabled him to have orders filled at prices more advantageous to the plaintiffs. There is no evidence of any culpable conduct on the part of the defendants.

Plaintiffs claims under Section 15(c) of the Securities Exchange Act of 1934, *15 U.S.C. § 78o(c)*, and *Section 17(a)* of the Securities Act of 1933, *15 U.S.C. § 77q(a)*, are dismissed for failure to state a claim. The Court of Appeals for the Second Circuit has held that no private right of action exists under Section 15(c). *See Asch v. Phillips, Appel & Walden, Inc., 867 F.2d 776 (2d Cir.), cert. denied, 110 S. Ct. 114 (1989).* The continued existence of a private right of action under *Section 17(a)* in the Second Circuit is doubtful. *See Wexner v. First Manhattan Co., 902 F.2d 169, 173-4 (2d Cir. 1990)* ("It is apparent that the vitality of our holding in *Kirshner* is in doubt, and the existence of a private right of action under *Section 17(a)* is in need of reexamination.")

In light of the Second Circuit's [*13] position, the overwhelming number of district courts in the Southern and Eastern Districts of New York have found that no private right of actions exists under *Section 17(a)*. *See, e.g., Dymm v. Cahill, 730 F. Supp. 1245, 1257--59 (S.D.N.Y. 1990); Deutsch v. Integrated Barter Int'l Inc., 700 F. Supp. 194, 201-02 (S.D.N.Y. 1988); Cohen v. Goodfriend, 665 F. Supp. 152, 156 (E.D.N.Y. 1987); Ackerman v. Clinical Data, Inc.,* [1985-1986]Fed. Sec. L. Rep. (CCH) para. 92,207 (S.D.N.Y. 1985); *see also In re Washington Public Power Supply System Sec. Litig., 823 F.2d 1349 (9th Cir. 1987) (en banc)* (holding no private right of action under *Section 17(a)*). In the instant case, it is not necessary to find that no private right of action exists under *Section 17(a)* because no violation can be shown.

Plaintiffs' ERISA claims proceed from the assumption that Marine was a fiduciary under ERISA. A person is a fiduciary to the extent he or she exercises any discretionary authority, renders investment advice for a fee or other compensation, or has any discretionary authority or discretionary responsibility in the administration of the plan. *See 29 U.S.C. § 1002(21)(A)* [*14] *(1988)*. A fiduciary is personally liable for any losses resulting from a breach of his or her duties. *See 29*

Case 1:08-cv-00179   Document 39-10   Filed 08/05/2008   Page 5 of 5

Page 5
1991 U.S. Dist. LEXIS 1151, *14; Fed. Sec. L. Rep. (CCH) P95,806

*U.S.C. § 1109 (1988).*

None of the factors which would support a finding that the defendants were fiduciaries under ERISA exists with respect to any of the plaintiffs. Only Dr. Sin had discretionary authority over the accounts, and he made all investment decisions. Brokers are not fiduciaries under these circumstances. *See Farm King Supply, Inc. v. Edward D. Jones & Co., 884 F.2d 288 (7th Cir. 1989)* (finding broker that recommended investments to the trustees not a fiduciary under ERISA).

Even if Marine were considered fiduciaries, an exception to *Section 1109* exists for brokerage firms that only execute trades and do not give investment advice. *See 29 C.F.R. § 2510.3-21(d)(1) (1990).* The broker/dealer exception facilitates investing in securities. Defendants would meet the criteria for the broker/dealer exception. They only provided Dr. Sin technical information on the liquidity of the markets he chose to invest in. This is not the type of investment advice that creates liability under ERISA.

Plaintiffs RICO claims are without merit. In the November 15, 1988 [*15] hearing on the original summary judgment motion, the court directed the plaintiffs to replead their RICO claims with respect to the "enterprise" requirement. The amended complaints suffer from the same defects on the "enterprise" requirement as their predecessors. There has been no evidence to support the existence of the predicate acts, a scheme to defraud or mail fraud.

Plaintiffs' state law claims for breach of fiduciary duty, fraud, conspiracy and negligence are an attempt to replead securities fraud. There has been no evidence presented to support any of these claims.

OvestMarine has asserted counterclaims against four of the plaintiffs for the margin deficits plus interest in their respective accounts. Attorneys fees are also sought pursuant to the indemnification provision in the Trading Authorizations. Liability for the margin deficits is not disputed. OvestMarine is entitled to judgment in the deficit amounts subject to verification.

The indemnification provisions are not sufficient to provide liability for defendants' attorneys fees. A "higher level of specificity is required when attorneys' fees are being assessed against a plaintiff suing for securities fraud." *Zissu* [*16] *v. Bear, Stearns & Co., 805 F.2d 75, 80 (2d Cir. 1986).* As in *2issu,* the plaintiffs agreed to indemnify OvestMarine against "all losses" arising from the debit balance. This general provision does not meet the required level of specificity to include a claim for attorneys fees.

Defendants shall submit an appropriate judgment within ten days. Should the parties not agree on the appropriate sum due from plaintiffs, the matter will be referred to the Magistrate Judge for computation. Fees and disbursements are awarded defendants.

So Ordered.